Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL SANDERS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>THE REALREAL, INC., JULIE WAINWRIGHT, MATT GUSTKE, STEVE LO, CHIP BAIRD, MAHA IBRAHIM, ROB KROLIK, MICHAEL KUMIN, STEFAN LARSSON, NIKI LEONDAKIS, JAMES MILLER, CREDIT SUISSE SECURITIES (USA) LLC, BOFA SECURITIES, INC., UBS SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., STIFEL, NICOLAUS & COMPANY, COWEN AND COMPANY, LLC, and RAYMOND JAMES & ASSOCIATES, INC.,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Michael Sanders, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by The RealReal, Inc. ("RealReal" or the "Company") with the United States Securities and Exchange Commission (the

"SEC"); (b) review and analysis of Defendants' public documents and press releases; and (c) information readily obtainable on the Internet. Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants (defined below) or are exclusively within their control.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all persons and entities, other than Defendants, who purchased RealReal common stock pursuant and/or traceable to the Company's Registration Statement (defined below) issued in connection with the Company's June 27, 2019 initial public offering (the "IPO"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") (the "Class").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

4. Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) as the alleged misleading public filings and press releases entered this district and the Company's headquarters are located in this district.

5. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased shares of RealReal common stock at artificially inflated prices pursuant and/or traceable to the Company's IPO and was damaged thereby.

Class Action Complaint for Violation of the Federal Securities Laws

7. Defendant RealReal purports to operate as an online marketplace for consigned luxury goods. The Company is a Delaware corporation with principal executive offices located at 55 Francisco Street, Suite 600, San Francisco, CA 94133. RealReal's common stock trades on NASDAQ under the ticker symbol "REAL."

8. Defendant Julie Wainwright ("Wainwright") is a founder of RealReal and served as its Chief Executive Officer ("CEO") and Chairperson of the Board of Directors (the "Board") at the time of the IPO. Defendant Wainwright signed or authorized the signing and issuance of the Registration Statement.

9. Defendant Matt Gustke ("Gustke") served as the Chief Financial Officer ("CFO") of RealReal at the time of the IPO. Defendant Gustke signed or authorized the signing and issuance of the Registration Statement.

10. Defendant Steve Lo ("Lo") served as Vice President and Corporate Controller of RealReal at the time of the IPO. Defendant Lo signed or authorized the signing and issuance of the Registration Statement.

11. Defendant Chip Baird ("Baird") served as a director of RealReal at the time of the IPO. Defendant Baird signed or authorized the signing and issuance of the Registration Statement.

12. Defendant Maha Ibrahim ("Ibrahim") served as a director of RealReal at the time of the IPO. Defendant Ibrahim signed or authorized the signing and issuance of the Registration Statement.

13. Defendant Rob Krolik ("Krolik") served as a director of RealReal at the time of the IPO. Defendant Blair signed or authorized the signing and issuance of the Registration Statement.

14. Defendant Michael Kumin ("Kumin") served as a director of RealReal at the time of the IPO. Defendant Kumin signed or authorized the signing and issuance of the Registration Statement.

15. Defendant Stefan Larsson ("Larsson") served as a director of RealReal at the time of the IPO. Defendant Larsson signed or authorized the signing and issuance of the Registration Statement.

16. Defendant Niki Leondakis ("Leondakis") served as a director of RealReal at the time of the IPO. Defendant Leondakis signed or authorized the signing and issuance of the Registration Statement.

17. Defendant James Miller ("Miller") served as a director of RealReal at the time of the IPO. Defendant Miller signed or authorized the signing and issuance of the Registration Statement.

18. Defendants Wainwright, Lo, Baird, Ibrahim, Krolik, Kumin, Larsson, Leondakis, and Miller are collectively referred to hereinafter as the "Individual Defendants."

19. Each of the Individual Defendants:

(a) Participated in the preparation of and signed (or authorized the signing of) the Registration Statement and/or an amendment thereto, and the issuance of the Registration Statement;

(b) directly participated in the management of the Company;

(c) was directly involved in the day-to-day operations of the Company at the highest levels;

(d) was privy to confidential proprietary information concerning the Company and its business and operations;

(e) was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(g) approved or ratified these statements in violation of the federal securities laws.

20. RealReal is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

21. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase RealReal common stock issued pursuant thereto.

22. Defendant BofA Securities, Inc. ("BoA") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase RealReal common stock pursuant thereto.

23. Defendant UBS Securities LLC ("UBS") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase RealReal common stock pursuant thereto.

24. Defendant KeyBanc Capital Markets Inc. ("KeyBanc") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase RealReal common stock issued pursuant thereto.

25. Defendant Stifel, Nicolaus & Company ("Stifel") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase RealReal common stock issued pursuant thereto.

26. Defendant Cowen and Company, LLC ("Cowen") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase RealReal common stock issued pursuant thereto.

27. Defendant Raymond James & Associates, Inc. ("Raymond James") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase RealReal common stock issued pursuant thereto.

28. Defendants Credit Suisse, BofA, UBS, KeyBanc, Stifel, Cowen, and Raymond James are referred to herein as the "Underwriter Defendants."

29. The Underwriter Defendants agreed to purchase and sell shares of RealReal common stock to the public as follows:

| Underwriter | Number of Shares |
|---|---|
| Credit Suisse Securities (USA) LLC | 4,500,000 |
| BofA Securities, Inc. | 4,200,000 |
| UBS Securities LLC | 3,300,000 |
| KeyBanc Capital Markets Inc. | 1,200,000 |
| Stifel, Nicolaus & Company | 1,050,000 |
| Cowen and Company, LLC | 450,000 |
| Raymond James & Associates, Inc. | 300,000 |
| Total | 15,000,000 |

Class Action Complaint for Violation of the Federal Securities Laws

30. The Underwriter Defendants had an option to sell an additional 2.25 million RealReal shares, which they exercised in full.

31. Defendants Credit Suisse, BofA, and UBS acted as underwriter representatives for the Underwriter Defendants.

32. The Underwriter Defendants and their agents and representatives met with potential investors and presented favorable, but materially incorrect and/or misleading, information about the Company, its business, products, plans, and financial prospects and/or omitted to disclose material information required to be disclosed under the federal securities laws. The Underwriter Defendants also purported to conduct an adequate and reasonable "due diligence" investigation into the Company's business, operations, products, plans, and prospects. During the course of their "due diligence" investigation, the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, operations, financial condition, products, plans, and prospects. Among other things, the Underwriter Defendants and/or their agents and representatives, including their counsel, had access to the Company's management, directors, top executives, and lawyers to determine: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which the Company's common stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what Company disclosures would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of the constant access and constant communications between the Underwriter Defendants and the Company's management, directors, top executives, and lawyers, at a minimum, the Underwriter Defendants should have known of the Company's then-existing but undisclosed problem relating to the Company's ability to monetize its existing user base and other risks that had already materialized and rendered the statements and omissions contained in the Registration Statement materially misleading, as detailed herein.

33. RealReal, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

34. RealReal describes itself as the world's largest online marketplace for authenticated, consigned luxury goods. The Company is based in San Francisco, California. Its common stock trades on the NASDAQ under the ticker symbol "REAL."

35. On May 31, 2019, RealReal filed a registration statement for the IPO on Form S-1, which, after several amendments, was declared effective on June 27, 2019 (the "Registration Statement"). On June 28, 2019, RealReal filed the prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement. By way of the Registration Statement, Defendants offered and sold 17.25 million shares at $20 per share for approximately $345 million in gross offering proceeds, which included the full exercise of the Underwriter Defendants' over-allotment option to sell an additional 2.25 million shares. According the Company, the proceeds from the IPO were to be used for general corporate purposes, including working capital, operating expenses and capital expenditures.

36. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

37. Specifically, the Registration Statement claimed that buyers trusted the Company because of its "rigorous authentication process." The Registration Statement stated the following, in pertinent part:

> Trust is the cornerstone of our online marketplace. Consignors trust us because we treat their items with the utmost care and quickly sell them at the optimal price. ***Buyers trust us because we have a rigorous authentication process.*** We believe the trust and personal relationships that we have built with both consignors and buyers over the past eight years cannot be easily replicated.
>
>       \*   \*   \*
>
> We grow our business by attracting and retaining buyers. ***We attract and retain buyers by offering highly coveted, authenticated, pre-owned luxury goods at***

> *attractive values and delivering a high-quality, luxury experience*. We measure our success in attracting and retaining buyers by tracking buyer satisfaction and purchasing activity over time. We have experienced high buyer satisfaction, as evidenced by our net promoter score of 74 as of February 2019. If we fail to continue to attract and retain our buyer base to our online marketplace, our operating results would be adversely affected.

(Emphasis added.)

38. The Registration Statement downplayed the risk that the authentication process was inadequate:

> Our success depends on our ability to accurately and cost-effectively determine whether an item offered for consignment is an authentic product, a genuine gemstone or piece of jewelry or a validated work of art. From time to time we receive counterfeit goods for consignment. While we have invested heavily in our authentication processes and we reject any goods we believe to be counterfeit, we cannot be certain that we will identify every counterfeit item that is consigned to us. As the sophistication of counterfeiters increases, it may be increasingly difficult to identify counterfeit products. We refund the cost of a product to a buyer if the buyer questions its authenticity and returns the item. The sale of any counterfeit goods may damage our reputation as a trusted online marketplace for authenticated, pre-owned luxury goods which may impact our ability to attract and maintain repeat consignors and buyers. Additionally, we may be subject to allegations that a pre-owned luxury item we sold is not authentic despite our confirmed authentication of such item. Such controversy could negatively impact our reputation and brand and harm our business and operating results.

39. The statements contained in ¶¶34-38 were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's employees received little training on how to spot fake items; (2) the Company's strict quotas on its employees exacerbated product authentication issues; (3) consequently, the potential for counterfeit or mislabeled items to make it through Company's authentication process was higher than disclosed; and (4) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

40. On November 5, 2019, CNBC published an investigate report that showed that the Company's authentication process was not as robust as it led consumers to believe. CNBC spoke with "nearly three dozen former employees and obtained internal company documents that show not everything is authenticated by an expert and employees work under strict quotas that lead to fakes being sold on the site."

41. CNBC's investigative report also found that copywriters, who received "little training on how to spot fakes and were hired to write descriptions of the items to post on the website," were tasked with authenticating items that went on the Company's site. CNBC also found "internal company documents clearly spell out strict quotas that employees have been expected to meet or face discipline."

42. On this news, the Company's share price fell $3.80 or over 19% over the next two trading days to close at $19.37 on November 6, 2019.

43. Since the IPO, and as a result of the disclosure of material adverse facts omitted from RealReal's Registration Statement, RealReal's stock price has fallen below its IPO price, damaging Plaintiff and Class members

**CLASS ACTION ALLEGATIONS**

44. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired shares or RealReal common stock in its IPO or purchased RealReal common stock thereafter in the stock market pursuant and/or traceable to the Company's Registration Statement issued in connection with the IPO and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and Individual Defendants' and Sequoia Capital Defendants' legal representatives, heirs, successors or assigns and any entity in which the officers and directors of the Company have or had a controlling interest.

45. The members of the Class are so numerous that joinder of all members is impracticable. There were 17.25 million shares were sold in the IPO. Since the IPO, the Company's securities have actively traded on NASDAQ. While the exact number of Class members is unknown

to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by RealReal or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

49. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the Securities Act was violated by Defendants as alleged herein;

(b) Whether the Registration Statement were negligently prepared and contained materially misleading statements and/or omitted material information required to be stated therein;

(c) the extent to which members of the Class have sustained damages and the proper measure of damages

(d) A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members

of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM**
**Violation of Section 11 of**
**The Securities Act Against RealReal, Individual Defendants, and the Underwriter Defendants**

51. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

52. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Defendants.

53. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

54. RealReal is the registrant for the IPO. Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

55. As issuer of the shares, RealReal is strictly liable to Plaintiff and the Class for the misstatements and omissions.

56. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

57. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

58. Plaintiff acquired shares of RealReal's common stock pursuant and/or traceable to the Registration Statement for the IPO.

59. Plaintiff and the Class have sustained damages. The value of RealReal common stock has declined substantially subsequent to and due to Defendants' violations.

## SECOND CLAIM
### Violation of Section 12(a)(2) of
**The Securities Act Against RealReal, Individual Defendants, and the Underwriter Defendants**

60. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein.

61. This Count does not sound in fraud. Any proceeding allegations of fraud, fraudulent conduct, or improper motive are specifically excluded from this Count. Plaintiff does not allege that Defendants had scienter or fraudulent intent, which are not elements of this claim.

62. Defendants offered, sold and/or solicited a security, namely shares of RealReal's common stock by means of the IPO identified above, or were-controlling persons of RealReal or of those who offered and sold RealReal common stock. The Registration Statement contained untrue and/or misleading statements of material fact that the Defendants in the exercise of reasonable care should have known were false.

63. Defendants actively solicited the sale of RealReal common stock to serve their own financial interests.

64. At the time of purchase of RealReal's common stock, Plaintiff and other members of the Class did not know that the representations made to them by the Defendants in connection with the distribution of shares and the matters described above were untrue, and did not know the above described omitted material facts, were not disclosed.

65. As a result, Plaintiff and Class members are entitled to tender RealReal they purchased and receive from Defendants the consideration paid for those shares with interest thereon, less the amount of any income received thereon, or damages resulting from Defendants' conduct.

66. Defendants are liable to Plaintiff and Class members pursuant to Section 12(a)(2) of the Securities Act, as seller of the securities in connection with the IPO.

67. This Action is brought within three years from the time that the securities upon this Count is brought were sold to the public, and within one year from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

**THIRD CLAIM**
**Violation of Section 15 of**
**The Securities Act Against Individual Defendants and the Sequoia Capital Defendants**

68.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

69.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

70.     The Individual Defendants were each control persons of RealReal by virtue of their positions as directors, senior officers, major shareholders and/or authorized representatives of RealReal. Individual Defendants had the power and influence and exercised the same to cause RealReal to engage in the acts described herein. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of RealReal.

71.     RealReal and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

72.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: November 25, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws