Lisa R. Bugni (SBN 323962)
lbugni@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 1000
San Francisco, CA 94105
Telephone: +1 415 318 1234
Facsimile: +1 415 318 1300

*Attorneys for The RealReal, Inc. and Individual Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL SANDERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE REALREAL, INC., et al.,<br><br>Defendants. | Case No.  5:19-cv-07737-EJD-VKD<br><br>**THE REALREAL, INC. AND INDIVIDUAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Assigned to: Honorable Edward J. Davila<br><br>Date:   August 27, 2020<br>Time:  9:00 a.m.<br>Courtroom 4, 5th Floor |

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

PLEADING STANDARD................................................................................................................2

ARGUMENT ..................................................................................................................................3

I.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 11 .................................3

    A.    The Statements About AOV Were Not False or Misleading...................................3

        1.    The Reported AOV Results Were All Accurate .........................................3

        2.    There Was No Known Trend to Disclose ....................................................4

        3.    The Risk Factors Were Not Misleading.......................................................5

    B.    The Statements About Authentication Were Not False or Misleading...................6

        1.    TRR's Authentication Process Was (and Is) Demonstrably "Rigorous," and TRR Disclosed the Risk of Counterfeits.......................................................6

        2.    TRR's Use of the Term "Expert" Was Not False or Misleading.................7

        3.    The FEs Are Not Reliable and Do Not Demonstrate Falsity.......................9

        4.    The Cited Media Reports Do Not Demonstrate Falsity.............................10

II.   PLAINTIFFS FAIL TO PLEAD A VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT.........................................................................................................11

    A.    Plaintiffs Have Not Pled Falsity as to the Additional Challenged Statements ......11

    B.    Plaintiffs Have Not Pled Scienter .......................................................................12

    C.    Plaintiffs Have Not Pled Loss Causation.............................................................14

III.  PLAINTIFFS FAIL TO STATE A SECURITIES ACT SECTION 15 CLAIM OR EXCHANGE ACT 20(a) CLAIM ...................................................................................15

CONCLUSION..............................................................................................................................15

## TABLE OF AUTHORITIES

CASES                                                                                      PAGE(S)

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) ...................................................................7

*In re Apollo Group, Inc. Sec. Litig.*,
    No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010).......................................14

*Bao v. Solarcity Corporation*,
    No. 14-cv-01435, 2016 WL 4192177 (N.D. Cal. 2016) ..............................................9

*Barilli v. Sky Solar Holdings, Ltd.*,
    389 F. Supp. 3d 232 (S.D.N.Y. 2019)......................................................................12

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    No. 17-CV-4846, 2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) ...............................5

*Bonanno v. Cellular Biomedicine Group, Inc.*,
    No. 15-cv-01795, 2016 WL 2937483 (N.D. Cal. May 20, 2016)............................14

*Brand Mktg. Grp., LLC v. Intertek Testing Servs. NA, Inc.*,
    No. 12CV1572, 2013 WL 3854461 (W.D. Pa. July 23, 2013)...................................8

*Bricklayers and Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
    866 F. Supp. 2d 223 (S.D.N.Y. 2012)..................................................................11, 12

*City of Edinburgh Council v. Pfizer, Inc.*,
    754 F.3d 159 (3d Cir. 2014)..................................................................................10

*In re Convergent Techs. Sec. Litig.*,
    948 F.2d 507 (9th Cir. 1991) ..................................................................................3

*In re Countrywide Fin. Corp. Derivative Litig.*,
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) ................................................................10

*Cozzarelli v. Inspire Pharm. Inc.*,
    549 F.3d 618 (4th Cir. 2008) ..................................................................................2

*Fadia v. FireEye, Inc.*,
    No. 5:14-cv-05204, 2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) ........................10

*In re Kalebios Pharmaceuticals, Inc. Sec. Litig.*,
    258 F. Supp. 3d 999 (N.D. Cal. 2017) ..................................................................12

*Kinda Wood USA v. MGV Enterprises LLC*,
    No. 2:07-cv-1137, 2009 WL 649793 (S.D. Ohio Mar. 10, 2009) ............................8

ii

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
   114 F. Supp. 3d 852 (N.D. Cal. 2015) ................................................................................7

*McGovney v. Aerohive Networks, Inc.*,
   367 F. Supp. 3d 1038 (N.D. Cal. 2019) ..............................................................................9

*McGovney v. Aerohive Networks, Inc.*,
   No. 19-CV-00435, 2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ....................................12, 13

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...........................................................................10

*Miller v. Thane International, Inc.*,
   519 F.3d 879 (9th Cir. 2008) ............................................................................................3

*Pirani v. Slack Techs., Inc.*,
   No. 19-cv-05857, 2020 WL 1929241 (N.D. Cal. Apr. 21, 2020).........................................5

*In re PMA Capital Corp. Sec. Litig.*,
   No. 03-6121, 2005 WL 1806503 (E.D. Pa. July 27, 2005) ................................................8

*Reitman v. Champion Petfoods USA, Inc.*,
   No. CV181736, 2019 WL 1670718 (C.D. Cal. Feb. 6, 2019) ...........................................11

*In re Restoration Robotics, Inc. Sec. Litig.*,
   417 F. Supp. 3d 1242 (N.D. Cal. 2019) ............................................................................4

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ......................................................................................2, 6

*In re Stac Electronics Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ............................................................................................3

*In re Toronto-Dominion Bank Sec. Litig.*,
   No. 17-1665, 2018 WL 6381882 (D.N.J. Dec. 6, 2018)...................................................10

*In re Turkcell Iletisim Hizmetler, A.S. Secs.*,
   202 F. Supp. 2d 8 (S.D.N.Y. 2001) ..................................................................................4

*In re VeriFone Sec. Litig.*,
   784 F.Supp. 1471 (N.D. Cal. 1992) ...............................................................................3, 4

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ..........................................................................................13

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) .......................................................................10, 11

iii

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) ...................................................................................7

**STATUTES AND RULES**

15 U.S.C. § 77k (Section 11) ....................................................................................1, 2, 3, 15

15 U.S.C. § 77o (Section 15) .................................................................................................15

15 U.S.C. § 78j (Section 10(b)) ................................................................................1, 2, 3, 15

15 U.S.C. § 78t (Section 20(a)).............................................................................................15

Fed. R. Civ. P. 8.....................................................................................................................2

Fed. R. Civ. P. 9(b) ...............................................................................................................2

THE REALREAL, INC. AND INDIVIDUAL DEFENDANTS' REPLY ISO MOTION TO DISMISS;
CASE NO. 5:19-CV-07737-EJD-VKD

**INTRODUCTION**

Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp.") (ECF 36) demonstrates that the Complaint[1] should be dismissed because Plaintiffs offer no plausible rebuttal to the fundamental flaws in their two alleged theories.

Plaintiffs first allege that the TRR Defendants' accurate reporting of the AOV operating metric is somehow actionable under both Section 11 and Section 10(b) because it was not accompanied with disclosure of a purported trend that AOV would decrease in the quarters following the IPO. Plaintiffs, however, offer no response whatsoever to the dispositive fact that there was no decrease to be disclosed – AOV was flat in Q2 2019, the first quarter following the IPO, and then increased in Q3 2019, the second quarter following the IPO. In a tacit admission that their original theory was without merit, Plaintiffs abandon the prior allegation that the Registration Statement "failed to disclose that the Company's AOV for the second quarter of 2019 had decreased." Compl., ¶ 149. They now contend that it is a trend in depressed pricing, not AOV, that the TRR Defendants should have disclosed. Opp. at 18. That allegation fails as well because Plaintiffs fail to allege what the purported trend was, which of the TRR Defendants knew about it and when, or whether it was reasonably likely to have a material effect on the Company's operating results (which it plainly did not). These facts are prerequisites for Plaintiffs' claims, and their absence is dispositive. Plaintiffs' morphing AOV theory should be dismissed.

Plaintiffs next allege that the TRR Defendants' accurate description of the authentication process and counterfeit risk is somehow actionable under both Section 11 and Section 10(b) based on a handful of reports from former employees ("FEs") and the media. Plaintiffs have no meaningful response to the central flaw in this theory – that the former employee accounts are entirely consistent with TRR's statements. According to the FEs, every item consigned on TRR was analyzed for authenticity, and the individuals performing the authentication did receive initial and ongoing training. The fact that the authentication process is not perfect and that a counterfeit item

---

[1] Capitalized terms used herein have the same meaning as set forth in the TRR Defendants' Motion to Dismiss (ECF 32) ("Motion" or "Mot.").

might deceive authenticators is precisely what TRR publicly disclosed.  Moreover, as alleged in the Complaint, the instances of counterfeits were in the mere "hundreds" out of 9.4 million items sold since inception.  The paucity of counterfeit goods establishes the authentication process worked.

Beyond the failure to allege any sustainable theory of false statements, which requires dismissal of the Section 11 and Section 10(b) claims, the Section 10(b) claims should be dismissed for the additional reasons that Plaintiffs fail to plead any facts giving rise to a strong inference of scienter.  Nor can Plaintiffs plead loss causation beyond the first alleged corrective disclosure.

## PLEADING STANDARD

Trying to avoid the heightened pleading requirements of Rule 9(b), Plaintiffs contend that their Section 11 claim must meet only a "minimal pleading burden" under Rule 8 for two different reasons.  Opp. at 8-10.  Plaintiffs are wrong on both counts.

*First*, Plaintiffs contend their Section 10(b) claim includes challenged statements that are not alleged to violate Section 11.  Opp. at 9-10.  But Plaintiffs ignore the applicable standard.  Where the "complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).  Here, the Section 10(b) claim expressly incorporates all of the same factual allegations that purportedly support the Section 11 claim.  Compl., ¶ 271 (Section 10(b) claim incorporating ¶¶ 1-168).  Indeed, Plaintiffs' Opposition cites to allegations in the Section 11 section of the Complaint in purported support of their Exchange Act claims.  Opp. at 14 (citing ¶ 141); 15 (citing ¶¶ 128-131); 21 (citing ¶¶ 148, 157).  The same challenged statements in the Registration Statement that are alleged to violate Section 11 are likewise alleged to violate Section 10(b).  Compl., ¶ 273 ("including the statements contained in the Registration Statement"); *see Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (Rule 9(b) applies where complaint alleges Registration Statement violates both Section 11 and Section 10(b)).  The Section 11 and Section 10(b) claims include the same factual allegations.

*Second*, Plaintiffs assert that their mere disclaimer of fraud in the Section 11 part of the Complaint renders Rule 8 applicable.  Opp. at 9.  But as the Ninth Circuit has noted, "these nominal

efforts are unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims levied at the Prospectus." *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996). Plaintiffs' superficial disclaimer does not change that Plaintiffs' Section 11 and Section 10(b) claims include the same allegations and are grounded in fraud. Plaintiffs must plead their Section 11 claim with particularity.

## ARGUMENT

### I.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 11

#### A.      The Statements About AOV Were Not False or Misleading

The TRR Defendants established in the Motion to Dismiss that Plaintiffs' allegations regarding AOV fail to state a claim because (1) the AOV results in the Registration Statement accurately reported TRR's historical AOV through the quarter that closed prior to the filing of the Registration Statement; (2) Item 303 did not require disclosure of any downward trend because there was no such trend to disclose; and (3) the risk factors relating to AOV were not misleading. Mot. at 9-11. As explained below, Plaintiffs' response to each fails to show any actionable misstatement regarding AOV, and, thus, the challenged statements regarding AOV should be dismissed.

#### 1.      The Reported AOV Results Were All Accurate

Plaintiffs do not contest that the Registration Statement truthfully and accurately disclosed the AOV operating metric for each quarter of 2018 and the first quarter of 2019. Rather, citing *Miller v. Thane International, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008), Plaintiffs contend that reported AOV metrics, even though "literally true[,] may nonetheless be misleading, due to their context and manner of presentation." Opp. at 17. But *Thane* involved statements implying that the company would list its shares on the NASDAQ, not reports about historical results like those at issue here. 519 F.3d at 886. And where reported historical results are at issue, it is clear that a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data. *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512–13 (9th Cir. 1991). Indeed, the disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future. *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1484–85 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993). TRR's accurate reporting of its AOV operating

3

metrics is not actionable under the securities laws.  *Id.*

## 2.  There Was No Known Trend to Disclose

The TRR Defendants established that Item 303 did not require disclosure of any downward trend because there was no such trend to disclose – AOV was flat year-over-year in the second quarter of 2019 after the IPO and, in the next quarter, it recovered to an increase year-over-year. Mot. at 9.  In response, Plaintiffs pivot to contend the trend TRR failed to disclose was actually depressed *pricing* that started in the first quarter of 2019.  Opp. at 18.  But the Complaint fails to allege any particulars about this purported trend that come remotely close to alleging a duty to disclose under Item 303.

A disclosure duty under Item 303 "exists where a trend, demand, commitment, event or uncertainty is *both* [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation."  *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1262-63 (N.D. Cal. 2019).  The Complaint does not allege that the purported unspecified depressed pricing – if it existed at all – was "known to management." *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 202 F. Supp. 2d 8, 13 (S.D.N.Y. 2001) (noting that Item 303 "requires that plaintiffs allege that defendants know of the material nonpublic information at issue" and, while "section 11 claims do not generally require a showing of scienter" Item 303 "does, in effect, require such a showing").  And, the Complaint does not – and cannot – allege that the purported depressed pricing was "reasonably likely to have material effects" on AOV. *Restoration Robotics*, 417 F. Supp. 3d at 1263.  AOV did not suffer as a result of any depressed pricing.  Rather, as accurately reported in the Registration Statement and the Form 10-Qs for the first two quarters following the IPO, AOV, on a year-over-year basis, increased in Q1 2019, remained flat in Q2 2019,[2] and *increased* in Q3 2019.  ECF 34-2 at p. 23; ECF 34-2 at p. 22.  There was no

---

[2]  Plaintiffs repeatedly cite AOV as decreasing in Q2 2019 because it went from $453.32 in Q2 2018 to $452.61 in Q2 2019.  But both numbers round to $453, and as the Complaint also alleges, "AOV was flat year-over-year in the quarter at $453."  Compl., ¶ 157.  In any event, a decrease in AOV of $0.71, or 0.16%, is not a material effect on TRR's AOV operating metric.

4

known pricing trend reasonably likely to have material effects on TRR's AOV operating metric that TRR needed to disclose under Item 303.

The two cases that Plaintiffs cite do not change this conclusion. In *Pirani v. Slack Techs., Inc.,* No. 19-cv-05857, 2020 WL 1929241 (N.D. Cal. Apr. 21, 2020), the undisclosed adverse trend was that for seven out of twelve months, Slack, a company offering a cloud-based platform, failed to meet its guaranteed availability and that the frequent outages would have an unfavorable impact on revenues due to the strict terms of Slack's customer agreements requiring credits be paid for outages. *Id.* at *13. Here, the Complaint does not allege either an adverse trend or a reasonably likely material effect resulting from the purported trend. In *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846, 2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020), the complaint alleged both that management was aware of construction delays plaguing a fulfillment facility and that the ongoing delays at the facility were reasonably likely to have material effects on the company given the importance of the facility that management regularly discussed. *Id.* at *9. Again, the Complaint here pleads neither a known trend nor one that was likely to have material effects. Item 303 did not require disclosure of any purported depressed pricing.

### 3.    The Risk Factors Were Not Misleading

The risk factor relating to AOV was not misleading under any reading because it specifically disclosed that "we have experienced a reduction in our GMV in the past due to fluctuations in the price of new luxury goods sold by retailers and brands, and we anticipate similar reductions and fluctuations in the future." Mot. at 10. Plaintiffs assert in response that the risk factor was misleading because of the "then-current depressing pricing pressures affecting GMV." Opp. at 18. But the Complaint is completely devoid of any allegations that there was then-existing depressed pricing affecting GMV. Indeed, Plaintiffs' only citation in support of this argument is to the risk factor itself. *Id.* (citing ¶ 159). Moreover, GMV *increased* year-over-year from $158 million in Q1 2018 to $224 million in Q2 2019 and from $163 million in Q2 2018 to $228 million in Q2 2019. Compl., ¶ 148; ECF 34-2 at p. 23. Because the Complaint does not allege any then-current pricing pressure affecting GMV, the risk factor is not alleged to be misleading and Plaintiffs' claim based on it should be dismissed from the Complaint.

5

## B.   The Statements About Authentication Were Not False or Misleading

The TRR Defendants established in the Motion to Dismiss that Plaintiffs fail to state a claim for alleged misstatements regarding authentication because (1) TRR's authentication process was accurately described in the Registration Statement; (2) TRR's use of the term "expert" was not false or misleading; (3) the FE allegations do not demonstrate falsity; and (4) the media reports likewise do not demonstrate falsity.  As explained below, Plaintiffs' response fails to rebut any of these points, and, thus, the challenged statements regarding authentication should be dismissed.

### 1.   TRR's Authentication Process Was (and Is) Demonstrably "Rigorous," and TRR Disclosed the Risk of Counterfeits

The Company's accurate statements describing its authentication process as rigorous, albeit necessarily imperfect, are inactionable for three reasons.  Mot. at 12-13.

*First*, the TRR Defendants demonstrated in the opening brief that TRR disclosed the risk of counterfeits being sold.  In response, Plaintiffs cite an incomplete excerpt from the risk factor disclosure and contend that the entire risk factor is misleading because it speaks to as-yet unrealized, future risks.  Opp. at 13.  But the actual language of the Registration Statement, not Plaintiffs' mischaracterization, governs.  *See Rubke*, 551 F.3d at 1164 (dismissing Securities Act claim where "allegations simply misconstrue the language in the registration statement").  And, the actual language in the Registration Statement disclosed the ongoing risk that counterfeits could be missed, stating: "[f]rom time to time *we receive* counterfeit goods for consignment. While we have invested heavily in our authentication processes and we reject any goods we believe to be counterfeit, *we cannot be certain that we will identify every counterfeit item*."  Compl., ¶ 88 (emphasis added).  The risk factor further disclosed that "we refund the cost of a product to a buyer if the buyer questions its authenticity and returns the item."  *Id.*  Of course, there would be no need to issue a refund if questions as to authenticity never arose.  The Registration Statement disclosed the realized risk of receiving counterfeit goods.

*Second*, in further support of the Registration Statement's description of the rigorous authentication process, allegations in Plaintiffs' own Complaint support the veracity of TRR's representations.  As alleged in the Complaint, in Q1 2019, a mere 137 items were identified as counterfeit out of 498,000 orders.  Compl., ¶¶ 141, 148.  As further alleged in the Complaint,

THE REALREAL, INC. AND INDIVIDUAL DEFENDANTS' REPLY ISO MOTION TO DISMISS;
CASE NO. 5:19-CV-07737-EJD-VKD

"*hundreds* of counterfeit items were processed and sold to RealReal customers," not thousands or tens of thousands. *Id.* at ¶ 9 (emphasis added).  Hundreds of items out of the 9.4 million item sales since inception is, at best, 0.01%.  Not having any meaningful response to these figures, Plaintiffs assert with no support in the law that the percentage of items listed is irrelevant.  Opp. at 13.  To the contrary, the high success rate shows the authentication process works as described in the Registration Statement.

*Third*, to the extent Plaintiffs wish to divorce the word "rigorous" from all context, it becomes inactionable puffery.  Mot. at 13, n. 7.  Plaintiffs disagree and cite several cases for their assertion that the descriptor "rigorous" can never be puffery.  But, unsurprisingly, the cases do not support so stark a proposition.  On the contrary, each case holding a representation of rigorousness to be actionable explicitly connects the word "rigorous" with some qualifier or objectively-measurable standard.  *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 557–58 (N.D. Cal. 2019) (noting the description of "rigorous" testing "that simulated customers' experience" was more than puffery); *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) (finding that characterization of background checks as "more rigorous than what is required to become a taxi driver" was more than puffery); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 851 (N.D. Cal. 2018) (noting that description of "rigorous" production standards and practices is more than puffery).  Here, however, "rigorous" was not connected to any objectively-measurable standard, and, thus, standing alone, it does constitute inactionable puffery.  *See* Mot. at 13, n.7.

Of course, when "rigorous" is considered in the context of the Registration Statement's extensive disclosures pertaining to counterfeit risk – as it must be – the description of the authentication process is that it is rigorous, but not perfect.  Therefore, Plaintiffs' authentication claims fail.

### 2.    TRR's Use of the Term "Expert" Was Not False or Misleading

TRR's use of the term "expert" to describe the individuals authenticating items is not actionable because the term is puffery under the law and, in any event, as alleged in the Complaint, the training that employees received rendered them experts as disclosed.  Plaintiffs' responses on these two points are unavailing.

7

*First*, as TRR's Motion explains, the word "expert," standing alone, is mere puffery.  Mot. at 13.  Plaintiffs contend that "expert" is not puffery, but two of the cited cases are inapposite because they address use of the word expert in the context of advertising and contracting, not under the securities laws.  Opp. at 12 (citing *Brand Mktg. Grp., LLC v. Intertek Testing Servs. NA, Inc.*, No. 12CV1572, 2013 WL 3854461, *5 (W.D. Pa. July 23, 2013) (addressing use of the term in advertising); *Kinda Wood USA v. MGV Enterprises LLC*, No. 2:07-cv-1137, 2009 WL 649793, *3 (S.D. Ohio Mar. 10, 2009) (addressing use of the term in contracting)).  The third case is a securities case, but it supports dismissal here.  *In re PMA Capital Corp. Sec. Litig.*, No. 03-6121, 2005 WL 1806503, at *16 (E.D. Pa. July 27, 2005).  In *PMA*, the court held that statements regarding underwriting and actuarial experience were actionable because the company failed to disclose that it had a series of control deficiencies.  *Id.*  Here, however, TRR specifically disclosed that "we cannot be certain that we will identify every counterfeit item that is consigned to us."  Compl., ¶ 88.  Under *PMA*, the description of the present counterfeit risk renders use of the term expert not misleading.

*Second*, use of the term "expert" was not misleading because it was true.  As the Complaint itself alleges, the employees conducting authentication had far more knowledge than the average person on the subject.  They were, by definition, experts.  Mot. at 14.  In particular, the individuals performing authentication did have responsibility for authenticating each item (Compl., ¶¶ 94, 100, 101, 123); they could send questionable items to even more experienced authenticators (*id.*, ¶ 136); they received training using real examples of counterfeits (*id.*, ¶¶ 128-131); they had biweekly meetings that included training (*id.*, ¶ 129); they were assigned to specific categories of items and reviewed hundreds of items each week, adding to their expertise (*id.*, ¶¶ 109, 122); the Company made written manuals on identifying counterfeit goods available to the authenticators (*id.*, ¶ 129); and, products identified as high-risk for counterfeiting were sent to more experienced authenticators such as gemologists for gems, etc. (*id.*, ¶ 101).

Plaintiffs attempt to downplay the very allegations in the Complaint by likening copywriters to "[a] brand new paralegal who watches a one-hour PowerPoint presentation" and then is billed as "a 'highly trained, experienced expert'" at writing appellate briefs.  Opp. at 11.  This is a false comparison.  Instead, based on the allegations in the Complaint, copywriters are more like paralegals

8

who, after receiving training on how to use ECF, are tasked with filing briefs. Then, after some experience and additional training, they may begin assisting with cite checks and Bluebooking of draft briefs. But whenever the paralegal comes across a citation they cannot decipher or an ambiguous ECF option, they check with the attorney who drafted the brief. Such a system ensures both accuracy and efficiency, but does not guarantee perfection. It is this type of system, not Plaintiffs' inapposite example, that is analogous to TRR's authentication process. The Registration Statement accurately described as "experts" the individuals conducting and overseeing the authentication process.

### 3. The FEs Are Not Reliable and Do Not Demonstrate Falsity

The Complaint's allegations regarding thirteen former TRR employees do not demonstrate falsity of any of the challenged statements because (a) ten left TRR before the IPO; (b) the remaining three present a subjective view of a small fraction of more than two hundred copywriters at the Company; and (c) the allegations actually support the truth of the challenged statements. Mot. at 15-18. Tellingly, Plaintiffs offer no response to the argument that the FEs support the truth of the Registration Statement. And, the three arguments Plaintiffs do make about the FEs all fail, as explained below.

*First*, Plaintiffs quibble with the TRR Defendants' challenges to the FEs' "credibility," as opposed to their "reliability." Opp. at 16. Semantics aside, the fact remains that ten of the thirteen FEs left TRR before the IPO, and, thus, are not a *reliable* source under the law. *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1053 (N.D. Cal. 2019); *Bao v. Solarcity Corporation*, No. 14-cv-01435, 2016 WL 4192177, at *9 (N.D. Cal. 2016) ("CWs who were not present during the Class Period simply cannot bear out Plaintiffs' . . . focus on Individual Defendants' contemporaneous knowledge."). Plaintiffs have no response to the substance of this argument.

*Second*, Plaintiffs try to overcome the glaring deficiency that ten of the FEs were not employed at the Company at the time of the IPO by relying on the purported numerosity of confidential witnesses across the Complaint and alleged media reports. Opp. at 16. Plaintiffs contend there are total of "over fifty former employees," but that assumes none of the FEs in the

9

Complaint or the media reports overlap.  And, of course, that is impossible to know because they are all confidential.  In any event, mere numerosity is not enough.  Indeed, all of the cases Plaintiffs cite require far more detail than that provided in the Complaint.  *See In re Toronto-Dominion Bank Sec. Litig.*, No. 17-1665, 2018 WL 6381882, at *6 (D.N.J. Dec. 6, 2018) (refusing to consider confidential witnesses' statements when "a time period" for those statements "cannot be discerned"); *Fadia v. FireEye, Inc.*, No. 5:14-cv-05204, 2016 WL 6679806, at *5 (N.D. Cal. Nov. 14, 2016) (rejecting confidential witness when it was not clear from the pleadings "what statements [the witness] made" or why his or her input was relevant); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1058 (C.D. Cal. 2008) (noting that confidential witnesses' accounts were corroborated by *non*-confidential witnesses whose bona fides were publicly available).

　　　　***Third***, without citing any support whatsoever, Plaintiffs baldly contend that the three FEs employed at the time of the IPO offer more than their subjective views.  Opp. at 17.  Plaintiffs' conclusory assertion does not change the fact that the allegations from the three FEs criticize the adequacy of their training and quarrel with the propriety of daily quotas.  "But the disagreement of [three] employees … does not render defendants' decisions unreasonable or their statements false." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 171 (3d Cir. 2014).  In other words, the perceptions of the three employees regarding the sufficiency of their training does not change the fact that they were trained and the Company did consider them to be experts.  The FE allegations fail to demonstrate falsity, and the challenged statements regarding authenticity should be dismissed.

### 4.　　The Cited Media Reports Do Not Demonstrate Falsity

　　　　In response to the TRR Defendants' argument that the confidential witness accounts in the alleged media reports are not reliable, Plaintiffs contend the veracity of news reports should be assumed on a motion to dismiss.  Opp. at 17 (citing *Toronto-Dominion Bank*, 2018 WL 6381882, at *6).  But "'newspaper articles should be credited only to the extent that other factual allegations would be—if they are sufficiently particular and detailed to indicate their reliability.'" *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1172 (C.D. Cal. 2007), quoting *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000).  Where the article does not provide dates that would corroborate the confidential sources' statements, the reliability is brought into

10

question. *Id.* at 1172-73. Here, the Complaint fails to allege any corroborating information from the cited media reports to demonstrate foundational facts or relevance to the time period at issue. Compl., ¶¶ 92-114. The confidential witness accounts in the media reports thus lack reliability and, in any case, do not demonstrate falsity of any of the challenged statements.

## II.    PLAINTIFFS FAIL TO PLEAD A VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT

### A.    Plaintiffs Have Not Pled Falsity as to the Additional Challenged Statements

In addition to all the reasons set forth above as to why Plaintiffs fail to state a claim regarding the authentication process, the TRR Defendants established in the Motion that the additional challenged statements made after the IPO are not actionable because they were true, constituted puffery, and could not be misleading as they were made after the first alleged corrective disclosure. Mot. at 18-21.

Regarding the truth of the statements, Plaintiffs simply reiterate that the post-IPO statements misrepresented the lack of training and extent of copywriter authentication. Opp. at 15-16. To the contrary, the post-IPO statements (1) detailed the training that the copywriters received ("minimum of 30 hours of training, including onboarding, job shadowing, daily training and quizzes" and "ongoing daily and weekly training sessions to discuss the latest counterfeiting trends"); and (2) described that "low risk" items reviewed by copywriters were "contemporary brands with clear authenticity markers" as opposed to "high risk" items like an Hermès Birkin bag such that a review of the items on TRR's website would indicate the number of items copywriters were authenticating. *See* ECF 34-6; *see also* ECF 34-5.

As to the puffery argument, Plaintiffs first cite an inapposite consumer class action case. Opp. at 15 (citing *Reitman v. Champion Petfoods USA, Inc.*, No. CV181736, 2019 WL 1670718, *4 (C.D. Cal. Feb. 6, 2019)). The one securities case they cite is easily distinguished. *Id.* (citing *Bricklayers and Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223 (S.D.N.Y. 2012)). In *Transocean*, plaintiffs alleged that the company's statement that it conducted extensive training and safety programs was actionable in light of the allegation that the failure to provide the necessary training violated numerous federal regulations and resulted in the

11

worst oil spill in U.S. history. *Id.* at 233, 244.  Here, however, statements about the "deep training" provided is more akin to the statement of a "rigorous" transaction review that was held to be inactionable puffery because the board of directors did review the transaction and plaintiff failed to identify any particular standards of review that were not followed.  *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 266 (S.D.N.Y. 2019).

Finally, as to the fact that all of the additional challenged statements were made after the Fashionista article, Plaintiffs merely assert that the argument is baseless without explanation.  Opp. at 16.  But where the market is aware of information that Plaintiffs allege should have been disclosed, it is proper to grant a motion to dismiss.  *In re Kalebios Pharmaceuticals, Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1008 (N.D. Cal. 2017).  Although the inquiry can be fact-specific and improper at the pleadings stage, that is not true here because the Complaint actually alleges that the Fashionista article disclosed to the market the purported information that was allegedly omitted. Compl., ¶¶ 92-97.  Paragraph 94 alleges that the Fashionista article reported that "copywriters, rather than professional authenticators, were responsible for 'authenticating' the majority of the Company's items" and that the "former copywriters explained that the authentication training they received was minimal." *Id.* at ¶ 94. Because Plaintiffs themselves allege that the market was aware of this information *prior* to the TRR Defendants' post-IPO statements, those statements should be dismissed from the Complaint.

**B.     Plaintiffs Have Not Pled Scienter**

In response to the argument that Plaintiffs failed to plead the requisite strong inference of scienter because the Complaint alleges only that Wainwright and Gustke knew how the authentication process worked and received regular reports regarding AOV, Plaintiffs simply repeat the allegations in the Complaint that the TRR Defendants already addressed in the Motion.  Mot. at 21-23; Opp. at 19-21.  Repetition of the allegations does not make them adequate to state a claim.  It remains that the Complaint fails to allege scienter for three overriding reasons.

***First***, Plaintiffs have failed to allege scienter because they failed to allege that any of the TRR Defendants made any false and misleading statements.  *McGovney v. Aerohive Networks, Inc.*, No. 19-CV-00435, 2019 WL 8137143, at *22 (N.D. Cal. Aug. 7, 2019) ("the Court cannot find it

12

would be 'absurd' to assume the Individual Defendants did not know their statements are false and misleading because their statements are not in fact false or misleading").

*Second*, the voluntary disclosure in the Registration Statement that TRR (1) "from time to time [] receive[s] counterfeit goods" and "cannot be certain that [it] will identify every counterfeit item that is consigned to [it]" (Compl., ¶ 88) and (2) has "experienced a reduction in our GMV in the past due to fluctuations in the price of new luxury goods sold by retailers and brands" and "anticipate[s] similar reductions and fluctuations in the future" (*id.*, ¶ 155), "undermines an inference of deliberate omission." *McGovney*, 2019 WL 8137143, at *23.

*Third*, when viewed holistically, the Complaint simply does not allege a strong inference of deliberate recklessness or "'an extreme departure from the standards of ordinary care, which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Webb v. Solarcity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018).

On the AOV theory, all Plaintiffs have alleged is receipt of unspecified regular reports. But even if Wainwright and Gustke did receive daily, detailed reports on pricing, it would not support an inference that they knew there was a danger of misleading investors about either the GMV or AOV operating metrics for the simple reason that there is no allegation that the reported operating metrics were false. As to the assertion that AOV was about to decline, that likewise cannot support a strong inference of scienter because it did not decline – it remained flat for the first quarter after the IPO and then increased in the second quarter after the IPO. The far more compelling inference is the non-fraudulent one that Wainwright and Gustke accurately reported GMV and AOV, accurately described the risk of fluctuations in price, and did not warn of a decrease in AOV for the Q2 2019 because there was no decrease.

On the authentication theory, at best, Plaintiffs have alleged that three FEs did receive training and did authenticate items, but disagreed with management's view at the time of the IPO that copywriters' training gave them expertise to authenticate low-risk items. The subjective views of three FEs simply do not make it an extreme departure from the standards of ordinary care to describe the authentication process as it was in the Registration Statement or in the post-IPO statements. Again, the much more compelling inference is the non-fraudulent one that Wainwright

13

and Gustke knew TRR was authenticating every item in the manner described in their public statements. All of the supporting data that Wainwright and Gustke had supports the belief that the statements were true. Over 80% of GMV came from repeat buyers (ECF 34-1 at p. 3), which would not happen if TRR were selling counterfeit goods. As alleged in the Complaint, at most, there were "hundreds" of counterfeit goods sold on TRR's website (Compl., ¶ 9), but that is out of 9.4 million items sold since inception. The infinitesimal fraction of counterfeit goods sold shows that the authentication process was "rigorous" and had to be conducted by "experts," as described. There is not a single fact alleged to be known by Wainwright or Gustke that is contrary to the statements they made about the authentication process.

In sum, the Complaint has not alleged that the danger of misleading investors was so "obvious" that Wainwright or Gustke must have been aware of it because no false statements were made and the risks as to authentication and fluctuations in pricing were both disclosed. The Complaint should be dismissed for failure to allege a strong inference of scienter.

### C.    Plaintiffs Have Not Pled Loss Causation

The Complaint should also be dismissed for failure to allege loss causation as to the three articles published after the first alleged corrective disclosure, the Fashionista article, because the subsequent articles did not disclose anything new and corrective. Mot. at 23-24. "New information is critical to demonstrating loss causation." *Bonanno v. Cellular Biomedicine Group, Inc.*, No. 15-cv-01795, 2016 WL 2937483, *5 (N.D. Cal. May 20, 2016). In response, Plaintiffs contend the subsequent articles did not have to disclose anything new and that they did disclose new information. Plaintiffs are wrong on both fronts.

*First*, the unpublished memorandum opinion that Plaintiffs cite contains a one sentence holding that "[t]he jury could have reasonably found that the UBS reports following various newspaper articles were 'corrective disclosures' providing additional or more authoritative fraud-related information that deflated the stock price." *In re Apollo Group, Inc. Sec. Litig.*, No. 08-16971, 2010 WL 5927988, at *1 (9th Cir. June 23, 2010). No reasonable interpretation of that holding does away with the requirement that, to be a corrective disclosure, the article must disclose new information because, as the court notes, the subsequent articles provided "additional" information.

14

*Second*, as to the proper inquiry of whether the subsequent articles here disclosed new and corrective information, Plaintiffs are wrong in stating that they did. Opp. at 24. Plaintiffs contend the Forbes article disclosed that the copywriters have less training than authenticators with little or no experience. This was disclosed in the Fashionista article. Compl., ¶ 94 (Fashionista article disclosed that "RealReal copywriters, rather than professional authenticators, were responsible for 'authenticating,'" "they didn't feel it was appropriate for them to be authenticating," and "the authentication training they received was minimal"). Plaintiffs also contend that the CNBC articles disclosed the quota and that counterfeit goods made it onto TRR's website. This too was disclosed in the Fashionista article. Compl., ¶ 95 (the "Fashionista article also revealed that copywriters were subject to intense quota requirements" and "a lot of fake items slipped through the cracks").

The alleged corrective disclosures after the Fashionista article did not disclose anything new and corrective, and, thus, do not allege loss causation under the law. Plaintiffs have not and cannot plead loss causation (or establish a class period) beyond the Fashionista article.

## III.    PLAINTIFFS FAIL TO STATE A SECURITIES ACT SECTION 15 CLAIM OR EXCHANGE ACT 20(a) CLAIM

Because Plaintiffs fail to allege a Section 11 or Section 10(b) violation for the reasons set forth above and in the TRR Defendants' Motion, Plaintiffs' Section 15 and Section 20(a) claims likewise fail. Mot. at 24-25.

### CONCLUSION

For the foregoing reasons and those set forth in the Motion to Dismiss, the TRR Defendants respectfully request the Court dismiss the Complaint and grant such other and further relief as the Court deems just and proper.

Dated:  July 30, 2020

KING & SPALDING LLP
By: *Lisa R. Bugni*
　　Lisa R. Bugni

*Attorneys for The RealReal, Inc. and Individual Defendants*

15