1  **THE ROSEN LAW FIRM, P.A.**
2  Laurence M. Rosen (SBN 219683)
   355 South Grand Avenue, Suite 2450
3  Los Angeles, CA 90071
   Telephone: (213) 785-2610
4  Facsimile: (213) 226-4684
   Email: lrosen@rosenlegal.com
5
6  *Lead Counsel for Plaintiffs and the Class*
7  *[Additional Counsel on Signature Page]*

8              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10  MICHAEL SANDERS, Individually and on behalf of all others similarly situated, | Case No: 5:19-cv-07737-EJD |
| 11 | CLASS ACTION |
| 12      Plaintiff, | **PLAINTIFFS' NOTICE OF UNOPPOSED** |
| 13      v. | **MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 14  THE REALREAL, INC., *et al.*, | **THEREOF** |
| 15 | |
| 16      Defendants. | Hearing Date: March 24, 2022 |
| 17 | Time: 9:00 a.m.<br>Location: Courtroom 4 – 5th Floor |
| 18 | Judge: Edward J. Davila |

19
20
21
22
23
24
25
26
27
28

## NOTICE OF UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 16, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, Lead Plaintiff Michael Sanders and named plaintiffs Nubia Lorelle and Garth Wakeford ("Plaintiffs") will hereby move the Honorable Edward J. Davila, District Judge, located in Courtroom 4 – 5th Floor, 280 South 1st Street, San Jose, CA 95113, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") submitted herewith, which: (i) grants preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement and exhibits thereto, dated as of November 5, 2021 ("Stipulation"); (ii) preliminarily certifies the Settlement Class, appointing Plaintiffs as class representative of the Settlement Class, and appointing Lead Counsel as class counsel for the Settlement Class; (iii) approves the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iv) sets a hearing date to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and expenses and Compensatory Award to Plaintiffs should be approved.[1]

In support of this Motion, Plaintiffs submit the following memorandum, the Baker Declaration and exhibits thereto, including the Stipulation and further exhibits thereto, all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation, which is attached, together with its exhibits, as Exhibit 1 to the Declaration of Joshua Baker Support of Preliminary Approval of Settlement ("Baker Declaration"). Unless otherwise noted all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Baker Declaration.

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................................1

II.    SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY ...............................2

III.   THE SETTLEMENT ..........................................................................................3

IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ....................................4

       A.    Standards for Preliminary Approval ..................................................4

       B.    The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2)
             and Ninth Circuit Factors ....................................................................5

             1.    Plaintiffs and Lead Counsel Have Provided Adequate Representation
                   ....................................................................................................5

             2.    The Settlement is the Product of Arm's-Length Negotiations
                   Overseen by an Experienced Mediator .......................................6

             3.    The Settlement is a Favorable Result for the Settlement Class in Light
                   of its Benefits and the Risks of Continued Litigation ................7

                   (a)   The Strength of Plaintiffs' Case and the Risk, Expense,
                         Complexity, and Likely Duration of Continued Litigation............7

                   (b)   Risk of Maintaining Class Action Status Throughout Trial...........9

             4.    The Remaining Rule 23(e)(2)(C) Factors Support Approval...................9

                   (a)   The Methods of Distributing Relief and of Processing Claims
                         ....................................................................................................9

                   (b)   Proposed Attorneys' Fees.............................................................10

                   (c)   Identification of Other Agreements...............................................10

             5.    The Proposed Settlement Does Not Unjustly Favor Any Settlement
                   Class Members, Including Plaintiffs .........................................11

             6.    The Remaining Hanlon Factors Favor Preliminary Approval .................11

                   (a)   The Amount Offered in Settlement ...............................................12

                   (b)   The Extent of Discovery and the Stage of Proceedings ................13

                   (c)   Recommendation of Experienced Counsel ...................................14

V.     THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES........14

A.    The Settlement Class is Sufficiently Numerous ........................................ 15

B.    The Settlement Class Shares Common Questions of Law and Fact ........................... 16

C.    Plaintiffs' Claims Are Typical of Other Settlement Class Members ........................ 16

D.    Plaintiffs and Lead Counsel Adequately Represent the Settlement Class ................. 17

E.    The Settlement Class Meets Rule 23(b)(3) Requirements .......................................... 17

      1.    Predominance is Satisfied .......................................................................... 17

      2.    Superiority is Satisfied .............................................................................. 18

VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ........................................ 19

VII.    THE NOTICE PLAN SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA ........... 21

A.    The Method of Notice is Adequate .................................................................... 21

B.    The Content of the Notice Is Adequate ............................................................. 22

VIII.    THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND PLAINTIFFS' EXPENSES .................................................................................. 23

IX.    THE PROPOSED CLAIMS ADMINISTRATOR ............................................................... 24

X.    CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................................................ 18, 19

*Ang v. Bimbo Bakeries USA, Inc.,*
  No. 13-CV-01196-HSG, 2020 WL 2041934 (N.D. Cal. Apr. 28, 2020) ...................................... 4

*Barani v. Wells Fargo Bank, N.A.,*
  No. 12CV2999-GPC KSC, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) .................................. 21

*Barnes v. AT&T Pension Benefit Plan,*
  270 F.R.D. 488 (N.D. Cal. 2010) ........................................................................................... 15

*Beckman v. KeyBank, N.A.,*
  293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................................... 24

*Bellinghausen v. Tractor Supply Co.,*
  306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................................... 24

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ................................................................................................. 15

*Booth v. Strategic Realty Tr., Inc.,*
  No. 13-CV-04921-JST, 2015 WL 3957746 (N.D. Cal. June 28, 2015) ................................ 4, 19

*Christine Asia Co. v. Yun Ma,*
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................... 10

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ............................................................................................... 20

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ........................................................................................ passim

*Hodges v. Akeena Solar, Inc.,*
  274 F.R.D. 259 (N.D. Cal. 2011) ........................................................................................... 16

*In re "Agent Orange" Prod.* Liab. Litig.,
  597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................................ 12

*In re Anthem, Inc. Data Breach Litig.,*
  327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................................. 3

*In re Biolase, Inc. Sec. Litig.,*
  No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ......................... 20

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
　No. 12-CV-1737 JM JLB, 2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ................................... 17

*In re Celera Corp. Sec. Litig.*,
　No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ...................... 7, 12, 21

*In re Cooper Companies Inc. Sec. Litig.*,
　254 F.R.D. 628 (C.D. Cal. 2009) ................................................................ 18

*In re Diamond Foods, Inc., Sec. Litig.*,
　295 F.R.D. 240 (N.D. Cal. 2013) ................................................................ 17

*In re High-Tech Emp. Antitrust Litig.*,
　985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................................................ 16

*In re Hyundai & Kia Fuel Econ. Litig.*,
　926 F.3d 539 (9th Cir. 2019) ................................................................ 19

*In re Juniper Networks, Inc. Sec. Litig.*,
　264 F.R.D. 584 (N.D. Cal. 2009) ................................................................ 16

*In re KaloBios Pharms., Inc. Sec. Litig.*,
　No. 5:15-cv-05841-EJD, 2017 WL 574444 (N.D. Cal. Jan. 20, 2017) ................................ 25

*In re Mego Fin. Corp. Sec. Litig.*,
　213 F.3d 454 (9th Cir. 2000) ................................................................ 8, 11

*In re Mut. Funds Inv. Litig.*,
　No. 04-MD-15861CCB, 2010 WL 2342413 (D. Md. May 19, 2010) ................................... 22

*In re Netflix Priv. Litig.*,
　No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................ 6

*In re Nuvelo, Inc. Sec. Litig.*,
　No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ........................................ 23

*In re Omnivision Tech., Inc.*,
　559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 9, 14, 23

*In re Rent-Way Sec. Litig.*,
　305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................................ 9

*In re Syncor ERISA Litig.*,
　516 F.3d 1095 (9th Cir. 2008) ................................................................ 4

*In re Tableware Antitrust Litig.*,
　484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................ 12

*In re Twitter Inc. Sec. Litig.*,
　326 F.R.D. 619 (N.D. Cal. 2018) ................................................................ 15

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................ 8

*In re VeriSign, Inc. Sec. Litig.*,
   No. C 02-02270 JW, 2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ........................... 15

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) .............................................................................. 8

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008) ............................................................................ 16

*In re Zynga Inc. Sec. Litig.*,
   No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................ 18, 19, 21

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ............................ 13

*Jaffe v. Morgan Stanley & Co.*,
   No. C 06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ............................... 15

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................................... 6

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .................................................................................. 13

*Mild v. PPG Indus., Inc.*,
   No. 2:18CV04231RGKJEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ............................ 6

*Moore v. PetSmart, Inc.*,
   No. 5:12-CV-03577-EJD, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) ................................. 24

*Moshogiannis v. Sec. Consultants Grp., Inc.*,
   No. 5:10-CV-05971 EJD, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012) ....................... 14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................ 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006) ............................................................................ 18

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ............................................................................ 19

*Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .................................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................ 6, 24

*Rosenburg v. I.B.M.*,
    No. CV06-00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ........................................ 20

*Satchell v. Fed. Express Corp.*,
    No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................ 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .......................................................................................................... 23

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) .................................................................................................. 24

*Stratton v. Glacier Ins. Admin'rs, Inc.*,
    No. 1:02CV06213 OWWDLB, 2007 WL 274423 (E.D. Cal. Jan. 29, 2007) ........................... 22

*Vataj v. Johnson*,
    No. 19-CV-06996-HSG, 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ................................... 16

*Vikram v. First Student Mgmt., LLC*,
    No. 17-CV-04656-KAW, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ................................... 12

*Vinh Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................ 11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................................................ 24

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .................................................................................................. 15, 16

*Wong v. Arlo Techs., Inc.*,
    No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ..................... 5, 6, 7, 16

**Statutes**

15 U.S.C. §78u-4(a)(4) ............................................................................................................................ 24

15 U.S.C. § 78u-4(a)(7)(A)-(F) ............................................................................................................. 23

28 U.S.C. §1715 ...................................................................................................................................... 22

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................................... 9, 20, 21

Fed. R. Civ. P. 23(a)(1) ........................................................................................................................... 15

Fed. R. Civ. P. 23(a)(2) ........................................................................................................................... 16

Fed. R. Civ. P. 23(a)(4) ........................................................................................................................... 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 17, 18

Fed. R. Civ. P. 23(c)(2) ........................................................................................................ 22

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................... 22

Fed. R. Civ. P. 23(e) ................................................................................................... 4, 5, 21

Fed. R. Civ. P. 23(e)(1) .......................................................................................................... 4

Fed. R. Civ. P. 23(e)(2); and (ii) ................................................................................. 4, 5, 11

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................... 5, 6, 11

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................... 6, 11

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................. 7, 9

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) ...................................................................................... 9

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................................. 11

Fed. R. Civ. P. 23(e)(3); and (D) .......................................................................................... 5

Fed. R. Civ. P. 23(h)(1) ...................................................................................................... 23

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the proposed $11,000,000 cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Settlement Class.

2.  Whether the Settlement Class should be preliminarily certified for purposes of the Settlement.

3.  Whether Plaintiffs should be certified as Class Representatives of the Settlement Class for purposes of the Settlement.

4.  Whether Lead Counsel should be appointed Class Counsel for the Settlement Class for purposes of the Settlement.

5.  Whether the proposed Notice of Pendency and Proposed Settlement of Class Action, Summary Notice of Pendency and Proposed Settlement of Class Action, and Postcard Notice (collectively, "Notice"), and the Proof of Claim and Release Form ("Proof of Claim") and the proposed plan for dissemination of the Notice and Proof of Claim to the Settlement Class ("Notice Plan") should be approved.

6.  Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of attorneys' fees and expenses and Compensatory Award to Plaintiffs.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

ix

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement of this Action that resolves all claims against Defendants in exchange for a cash payment of $11,000,000. Lead Plaintiff Michael Sanders and named plaintiffs Nubia Lorelle and Garth Wakeford ("Plaintiffs") submit that the proposed Settlement is a fair, reasonable, and adequate result for the Settlement Class and warrants preliminary approval.

The Parties reached the proposed Settlement after litigating this Action for nearly two years, which entailed: (i) a comprehensive investigation by Lead Counsel before filing the initial complaint and the Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC"); (ii) fully briefing the motion to dismiss the FAC; (iii) further investigation and filing a comprehensive Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC"); and (iv) engaging in a mediation with the Honorable Layn R. Phillips (Ret.). Plaintiffs were consistently involved in the litigation, reviewing the complaints, evaluating the benefits of continuing this Action on behalf of the Settlement Class, and approving the Settlement.

The Parties engaged an experience mediator in Judge Phillips to help resolve this Action and reach the Settlement. Prior to the mediation, the Parties exchanged detailed mediation statements and responsive statements. Although the Parties were unable to resolve the matter at the mediation on June 28, 2021, they continued settlement discussions for several weeks under Judge Phillip's guidance. The Parties accepted a mediator's proposal to resolve the Action and executed a term sheet on July 26, 2021. Thereafter, the Parties negotiated and executed the Stipulation.

The $11 million Settlement is the result of arm's-length negotiations conducted by experienced counsel, with the assistance of an experienced mediator, and with sufficient information to evaluate the sufficiency of the Settlement in light of the risks and uncertainties of continued litigation. The Settlement compares favorably with similar securities class actions with respect to the percentage of the maximum estimated damages that the Settlement recovers. As set forth herein, the Court should preliminarily approve the Settlement, direct notice be disseminated to members of the Settlement Class via the forms and methods proposed, and schedule a Settlement Hearing.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

1

## II.    SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY

This Action was brought on behalf of a class consisting of all persons and entities who purchased The RealReal, Inc. ("TRR" or "Company") common stock from June 27, 2019 through November 20, 2019, both dates inclusive ("Settlement Class Period"), for alleged violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

Michael Sanders filed the initial complaint with this Court on November 25, 2019. Dkt. No. 1. On February 12, 2020, the Court appointed Mr. Sanders as Lead Plaintiff and approved Lead Plaintiff's selection of The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 27. On March 31, 2021, Mr. Sanders, along with the other Plaintiffs, filed the FAC. Dkt. No. 31. Among other things, the FAC alleged that Defendants made false and misleading statements in the offering documents issued in connection with TRR's June 27, 2019 initial public offering ("IPO"), and in additional public statements made after the IPO. On May 15, 2021, TRR and the Individual Defendants filed a motion to dismiss the FAC, which the Underwriter Defendants joined. Dkt. Nos. 32 and 35. Defendants' motion was fully briefed by July 20, 2020. Dkt. Nos. 36, 40-41.

On March 31, 2021, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss, and granted Plaintiffs leave to amend. Dkt. No. 43. The Court granted the motion to dismiss with respect to the Exchange Act claims and some Securities Act claims, but denied the motion as to some of the Securities Act claims. *Id.* Plaintiffs filed the SAC on April 30, 2021, again alleging claims under both the Securities Act and the Exchange Act. Dkt. No. 46. On June 14, 2021, TRR and the Individual Defendants filed a motion to dismiss the Exchange Act Claims of the SAC. Dkt. No. 52.

On June 28, 2021, the Parties participated in an all-day private mediation with the Honorable Layn R. Phillips (Ret.). In connection with the mediation, the Parties exchanged detailed mediation statements and responses to the opposing parties' mediation statements. Although the Parties were unable to resolve the matter at the mediation, they continued settlement discussions under Judge Phillips's guidance over the next several weeks. Eventually, the Parties accepted a mediator's proposal from Judge Phillips to resolve the Action. The Parties reached an agreement in principle

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

2

and executed a term sheet on July 26, 2021. As part of the Term Sheet, the Parties agreed to conduct informal discovery to confirm the reasonableness and adequacy of the Settlement. On July 28, 2021, the Parties filed a stipulation and proposed order, which the Court entered, notifying the Court of the settlement in principle and staying the pending deadlines in the litigation while the Parties worked to formalize the Settlement. Dkt. Nos. 55 and 56.

The Parties engaged in informal discovery beginning in August 2021. Defendants produced, and Lead Counsel reviewed, over 1,000 pages of internal documents, consisting of TRR Board meeting minutes, personnel policies, training materials, and other documents concerning the Company's authentication process. Lead Counsel also conducted two interviews with members of TRR's management team knowledgeable on the subject matter of Plaintiffs' allegations. Based in part on the information gleaned through this informal discovery process, the Parties confirmed their agreement in principle to settle the Action upon the terms of the Stipulation.

## III.    THE SETTLEMENT

The Settlement provides that upon the Court's preliminary approval of the Settlement, TRR will pay or cause to be paid $11 million into an interest-bearing escrow account for the Settlement Class. The Settlement Amount, plus accrued interest, and after deduction of (i) the Fee and Expense Awards; (ii) Administrative Costs; (iii) Taxes and Tax Expenses; (iv) any Compensatory Award; and (v) other fees and expenses authorized by the Court is the "Net Settlement Fund." The Net Settlement Fund will be distributed among Settlement Class Members who submit valid a Proof of Claim in accordance with the proposed Plan of Allocation.

The Settlement Class is defined as all persons and entities who purchased TRR common stock from June 27, 2019 through November 20, 2019, both dates inclusive and were damaged thereby. Stipulation ¶1.34. This class definition matches the class alleged in the SAC.

In exchange for the Settlement Amount, Settlement Class Members will release the Released Claims defined in the Stipulation (¶1.29). The scope of this release is reasonable because it is limited to claims relating to the purchase of TRR common stock during the Settlement Class Period that were or could have been alleged in this Action. The release of unknown claims and other claims that "could have been asserted" in this Action is appropriate. *See, e.g., In re Anthem, Inc. Data*

*Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (noting that courts in this District approve releases with similar language and approving release similar to the released claims here). Thus, the claims released in the Settlement and the claims alleged in the SAC are substantially similar. Moreover, the Settlement does not release any claims to enforce the Settlement, or orders or judgments issued by the Court in connection with this Settlement.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Standards for Preliminary Approval

As a matter of public policy, courts encourage parties in complex class actions to resolve cases through settlement. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Rule 23(e) requires court approval for settlement of a class action. The Court first determines whether a proposed settlement deserves preliminary approval, and then, after notice is given to class members, whether final approval is warranted. Fed. R. Civ. P. 23(e). "The Court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *Booth v. Strategic Realty Tr., Inc.*, No. 13-CV-04921-JST, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015).[2]

Courts grant preliminary approval where the settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-HSG, 2020 WL 2041934, at *4 (N.D. Cal. Apr. 28, 2020). Preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(e)(2)—which governs final approval—requires courts evaluating a settlement to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness

---

[2] Emphasis is added and internal quotations and citations are omitted unless otherwise noted.

> of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

The Rule 23(e)(2) factors focus on core concerns of procedure and substance of a settlement but are not intended to displace factors previously adopted to evaluate settlements. *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021). The Ninth Circuit has also identified factors for evaluating whether a settlement "falls within the range of possible approval" and should be preliminarily approved: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Wong*, 2021 WL 1531171, at *6 (recognizing that Rule 23(e)'s considerations "overlap with certain *Hanlon* factors"). The "governmental participant" factor is inapplicable here as no governmental entity played any role in prosecuting the allegations on this Action. Additionally, it is not possible to evaluate the Settlement Class Members' reaction to the Settlement at this time as notice has not yet been disseminated. Plaintiffs will address this factor in their motion for final approval. The remaining Rule 23(e)(2) and *Hanlon* factors support preliminary approval of the Settlement.

**B.      The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) and Ninth Circuit Factors**

**1.      Plaintiffs and Lead Counsel Have Provided Adequate Representation**

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Courts must resolve two questions to determine adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs and Lead Counsel have adequately represented the Settlement Class. Plaintiffs have no interests antagonistic to other Settlement Class Members and their interest in obtaining the largest possible recovery for TRR investors is aligned with the interests of other Settlement Class Members. *Mild v. PPG Indus., Inc.*, No. 2:18CV04231RGKJEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Plaintiffs worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for the Settlement Class.

Plaintiffs retained highly experienced securities litigation counsel with a successful track record of representing investors in similar cases. *See* Dkt. No. 9-4 (Rosen Law Firm Resume); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"). In this Action, Lead Counsel has prosecuted the Settlement Class's claims vigorously by, among other things: conducting a pre-complaint investigation; filing an initial complaint; conducting a further independent investigation and filing the FAC; defeating in part Defendants' motion to dismiss the FAC; conducting further investigation and filing the SAC; drafting a mediation statement and reviewing and responding to Defendants' mediation statement; participating in the mediation, negotiating the Settlement; conducting informal discovery; negotiating the Stipulation; selecting a claims administrator and formulating the Notice Plan and Plan of Allocation; and filing the instant motion for preliminary approval of the Settlement.

### 2. The Settlement is the Product of Arm's-Length Negotiations Overseen by an Experienced Mediator

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Wong*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026). In the Ninth Circuit, courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *In re Netflix Priv.*

*Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms-length negotiations conducted by capable and experienced counsel"). Further, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Lead Counsel engaged in rigorous settlement negotiations with counsel for Defendants, guided both during and after the mediation session by a well-respected mediator in Judge Phillips, who has years of experience mediating securities class actions such as this one. Prior to the mediation session, the Parties exchanged mediation statements and responses. Although the mediation did not end in an agreement, the Parties continued negotiations through Judge Phillips and eventually accepted a mediator's proposal. *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) (Davila, J.) (preliminarily approving settlement mediated by Judge Phillips, finding "the mediation process must have assisted the parties to gain a better understanding of their respective strengths and weaknesses to litigate this case.").

### 3. The Settlement is a Favorable Result for the Settlement Class in Light of its Benefits and the Risks of Continued Litigation

The Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor); and the risks of maintaining class action status through the trial (third factor). *Wong*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026). Each of these factors supports preliminary approval of the Settlement.

### (a) The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

7

afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), *as amended* (June 19, 2000).

The risks of continued litigation in this case were significant. In considering the Settlement, Plaintiffs and Lead Counsel weighed the risks inherent in establishing all the elements of the claims, as well as the likely further expense and duration of the Action. Here, the risks were immediately present as the Court had already dismissed the Exchange Act claims in the FAC. Dkt. No. 43. Although Plaintiffs believed the SAC cured the pleading deficiencies identified by the Court in the FAC with respect to these claims, there was a significant risk that the Court would grant Defendants' motion to dismiss. Moreover, there were also substantial risks to Plaintiffs' success at class certification, summary judgment and trial.

Defendants deny any wrongdoing and would have presented a multi-pronged defense to Plaintiffs' claims, as previewed in their motions to dismiss. Plaintiffs and Lead Counsel believe that the case has substantial merit but recognize the significant risk and expense necessary to successfully prosecute Plaintiffs' claims through the pending motion to dismiss, a contested motion for class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays that complex litigation like this entails. *See, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"). Likewise, the determination of damages, like the determination of liability, is a complicated and uncertain process, involving conflicting expert testimony. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Continued litigation would be complex, uncertain, costly, and lengthy, requiring depositions, expert reports and testimony, briefing and arguing motions for summary judgment, and an expensive and risky trial. Any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

8

By contrast, the $11 million Settlement provides a substantial and immediate recovery and eliminates the risk, delay, and expense of continued litigation. While continued litigation always bears the theoretical possibility of generating a higher recovery, valuating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all settling parties, as "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

### (b)     Risk of Maintaining Class Action Status Throughout Trial

The Parties agreed to the Settlement before Plaintiffs moved for class certification. While Plaintiffs believe that class certification would be appropriate (*see* Section V, *infra*), success on such a motion cannot not be assured, and Rule 23 allows a class certification order to be altered or amended at any time before a decision on the merits. *See e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"). "While this may not be a particular weighty factor, on balance it somewhat favors approval of the proposed Settlement." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506–07 (W.D. Pa. 2003).

### 4.     The Remaining Rule 23(e)(2)(C) Factors Support Approval

Courts also must consider whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). The Settlement provides adequate relief for the Settlement Class, thus this factor weighs in support of preliminarily approving the Settlement. Of note, this is not a claims-made settlement. Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the Claims submitted. Stipulation ¶9.4.

### (a)     The Methods of Distributing Relief and of Processing Claims

The method for distributing relief and for processing Settlement Class Members' claims includes standard, well-established, and effective procedures. Lead Counsel selected Strategic Claims Services ("SCS") as the Claims Administrator, subject to Court approval. If approved, SCS will issue notice to the Settlement Class as directed by the Court, process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure any deficiencies or request the Court

review a denial of their Claim(s), and distribute to Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation. The method of distribution proposed here is both effective and necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required to distribute the Net Settlement Fund without soliciting claim submissions.

### (b)    Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees not to exceed 25% of the Settlement as compensation for the services Lead Counsel rendered on the Settlement Class's behalf. An award of attorneys' fees of up to 25% of the Settlement Fund is the benchmark award in the Ninth Circuit, and is reasonable in light of the work required to reach the Settlement and awards granted to counsel in similar cases. *See* Section VIII, *infra.* Approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. Stipulation ¶10.3**.**

### (c)    Identification of Other Agreements

The Parties have also entered a standard supplemental agreement providing that if Settlement Class Members opt such that the number of shares opting out equals or exceeds a certain amount, TRR shall have the option to terminate the Settlement. Stipulation ¶5.4. As is standard practice in securities class actions, the supplemental agreement is identified in the Stipulation, but its terms are confidential to avoid creating incentives for a small group of Settlement Class Members to opt out solely to leverage the threshold to exact an individual settlement. *See Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."). The Parties have no other agreements outside of the Stipulation and this Supplemental Agreement.

1

2

       **5.**      **The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Plaintiffs**

3

      Courts must also evaluate whether the settlement treats class members equitably relative to

4

one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any

5

Settlement Class Member, any segment of the Settlement Class, or Plaintiffs. The Plan of Allocation

6

provides for distribution of the Net Settlement Fund to Settlement Class Members who suffered

7

losses on their TRR common stock transactions during the Settlement Class Period, based on when

8

they purchased, acquired, and/or sold shares of TRR common stock. This ensures that Settlement

9

Class Members' recoveries are based upon their relative losses. *Vinh Nguyen v. Radient Pharms.*

10

*Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement

11

in a securities class action case can be reasonable if it 'fairly treats class members by awarding a

12

pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based

13

upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the

14

timing of purchases of the securities at issue.'").

15

      Plaintiffs will receive a distribution from the Net Settlement Fund in accordance with the

16

Plan of Allocation in the same manner as all other Settlement Class Members. Plaintiffs will also

17

seek reimbursement of costs (including lost wages) incurred as a result of their representation of the

18

Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

19

*Hefler*, 2018 WL 4207245, at *10; *see also Mego*, 213 F.3d at 454 (affirming reimbursement to

20

class representative in securities class action).

21

          **6.**      **The Remaining *Hanlon* Factors Favor Preliminary Approval**

22

      Certain of the *Hanlon* factors are not co-extensive with Rule 23(e)(2)'s newer requirements.

23

These factors, viewed in light of Rule 23(e)(2)'s requirements, also support preliminary approval.

24

Although Rule 23(e)(2)(A)-(B)'s requirements overlap to an extent with certain *Hanlon* factors,

25

such as the extent of discovery completed and the experience and view of counsel, these factors are

26

briefed separately below.

27

28

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

11

**(a)    The Amount Offered in Settlement**

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'" *Hefler*, 2018 WL 4207245, at *9 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *Vikram v. First Student Mgmt., LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019) ("This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount.").

The $11 million Settlement Amount is within the range of reasonableness and warrants preliminary approval. The estimated recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, is approximately $0.27 per damaged share. ¶23. The estimated Net Settlement Fund after deducting each of these estimated costs is approximately $7.84 million, or $0.19 per damaged share. ¶25. Given the estimated claims rate of 33%, the estimated amount that Authorized Claimants will receive will be approximately $0.58 per share. *Id.* Thus, approximately 71% of the Settlement Amount will be distributed to Settlement Class Members. *Id.*; *Celera*, 2015 WL 1482303, at *6 (that 73% of settlement fund would be distributed to class members weighs in favor of approving the settlement).

The Settlement recovers approximately 10.5% of estimated maximum damages of $104.7 million potentially available under Plaintiffs' best-case scenario, which assumes: (i) the Court certifies the same class period as the Settlement Class Period; (ii) Plaintiffs defeat Defendants' motion to dismiss the SAC, succeed at summary judgment, then prove liability to a jury; and (iii) the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation. Anything less than a complete victory would decrease or potentially eliminate recoverable damages, and Defendants contested each element. Moreover, Plaintiffs' Exchange Act claims—facing a pending motion to dismiss—accounted for more than half of the maximum estimated damages.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

12

The Settlement's recovery percentage compares favorably to other securities class action settlements with similar total damages. According to Cornerstone Research, between 2011-2020, the median recovery in cases alleging claims under both Section 11 and Rule 10b-5 was approximately 5.4% of estimated damages. Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2020 Review and Analysis (Cornerstone Research), at 7, *Available* at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13–*14 (N.D. Cal. Oct. 25, 2016)). That the $11 million Settlement compares favorably to settlements in similar cases further supports preliminary approval.

### (b)    The Extent of Discovery and the Stage of Proceedings

In considering a class action settlement, courts look for indications that the parties carefully investigated the claims before reaching a resolution. *E.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (noting that formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing TRR's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning TRR; (iii) reviewing research reports by securities analysts; (iv) retaining a private investigator to conduct interviews with over a dozen former TRR employees; (v) reviewing over 1,000 pages of internal documents produced by TRR during confirmatory discovery; (vi) conducting two video interviews with members of TRR management knowledgeable on the subject matter of the allegations of the SAC; and (viii) retaining an economic expert to conduct a damages analysis.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

13

1    Lead Counsel's efforts allowed them to make an informed assessment of the strengths and

2    weaknesses of this Action, essential to evaluating and negotiating the Settlement on behalf of the

3    Settlement Class. The Parties' mediation statements, responses, and settlement negotiations further

4    informed Lead Counsel about the strengths and weaknesses of the claims in this Action and

5    Defendants' defenses. As a result, the Parties and their counsel have a sufficient basis to make

6    informed decisions about the fairness of the Settlement. *See Moshogiannis v. Sec. Consultants Grp.,*

7    *Inc.*, No. 5:10-CV-05971 EJD, 2012 WL 423860, at *5 (N.D. Cal. Feb. 8, 2012) (Davila, J.) (finding

8    proposed settlement was fair where it was "reached after the parties conducted a significant amount

9    of informal discovery in the form of document exchange and interviews").

10                      **(c)      Recommendation of Experienced Counsel**

11    Courts give weight to the opinion of experienced and informed counsel supporting the

12    settlement. *Omnivision*, 559 F. Supp. 2d at 1043 ("[t]he recommendations of plaintiffs' counsel

13    should be given a presumption of reasonableness"); *Nat'l Rural Telecommunications Coop. v.*

14    *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the

15    recommendation of counsel, who are most closely acquainted with the facts of the underlying

16    litigation"). Lead Counsel have extensive securities litigation experience and obtained a thorough

17    understanding of the Action's merits and risks. Lead Counsel's belief in the fairness and

18    reasonableness of this Settlement supports preliminary approval of the Settlement. Defendants are

19    represented by skilled securities practitioners at King & Spalding LLP and Paul Hastings LLP.

20    Defense Counsel is at least as well-informed regarding the case, and their representation of

21    Defendants was no less vigorous than Lead Counsel's representation of the Settlement Class.

22    Preliminary approval is warranted because the Settlement is the product of serious, informed, and

23    non-collusive negotiations among experienced counsel and a highly-qualified mediator.

24    **V.      THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**

25    This Action and the Settlement Class are suitable for class certification. The proposed

26    Settlement Class consists of "all persons and entities who purchased TRR common stock from June

27    27, 2019 through November 20, 2019, both dates inclusive and were damaged thereby." Stipulation

28    ¶1.34 (detailing specific inclusions and exclusions as alleged in the SAC). At the preliminary

approval stage, and solely for the purpose of the Settlement, the Court must consider whether the certification of the Settlement Class is appropriate. *Hanlon*, 150 F.3d at 1019; *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008). Rule 23(a) includes four requirements for class certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the Court must find that at least one of the three conditions of Rule 23(b) is satisfied. *Id*. Under subsection (b)(3), the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id*.; *Jaffe*, 2008 WL 346417, at *7.

The Ninth Circuit has recognized that securities fraud actions are generally amenable to class action treatment. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005); *In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

### A.    The Settlement Class is Sufficiently Numerous

Numerosity requires that the Settlement Class is so large that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1) "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 n.2 (N.D. Cal. 2010). Courts routinely find that the trading of stock on a national exchange supports class certification in putative securities class actions. *See e.g., In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 626 (N.D. Cal. 2018) ("The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, the numerosity requirement is met."). TRR common stock traded on the NASDAQ throughout the Settlement Class Period. The number of potential Settlement Class Members here is likely in the thousands, and they are located throughout

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

15

the United States. A Settlement Class this large and geographically diverse supports class action

treatment. *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011).

### B.    The Settlement Class Shares Common Questions of Law and Fact

A proposed settlement class satisfies the commonality requirement where there are

substantial questions of law and fact common to the class. *See Wolin*, 617 F.3d at 1172. Rule

23(a)(2) should be construed permissibly, such that "[a]ll questions of fact and law need not be

common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. A class has sufficient commonality where

there are "shared legal issues with divergent factual predicates" or "a common core of salient facts

coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Here, questions common to the proposed Class include: (i) whether Defendants' alleged acts

violated the federal securities laws; (ii) whether Defendants' public statements during the Class

Period misrepresented material facts about TRR; (iii) whether the price of TRR's common stock

was artificially inflated during the Class Period; and (iv) to what extent the members of the Class

have sustained damages and the proper measure of such damages. Securities actions containing such

common questions are prime candidates for class certification. *See, e.g., Vataj v. Johnson*, No. 19-

CV-06996-HSG, 2021 WL 1550478, at *5 (N.D. Cal. Apr. 20, 2021); *Wong*, 2021 WL 1531171, at

*4. Because the core complaint of all class members is that they purchased TRR common stock at

artificially inflated prices and suffered damages as a result of Defendants' alleged

misrepresentations, the commonality requirement of Rule 23(a)(2) is satisfied. *See In re Wireless

Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 635 (S.D. Cal. 2008) (finding "core issue" in a securities

litigation to be plaintiff's acquisition of "[defendant's] common stock at artificially inflated prices");

*In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("misrepresentations

by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)").

### C.    Plaintiffs' Claims Are Typical of Other Settlement Class Members

A representative's claims are "typical if they are reasonably co-extensive with those of

absent class members; they need not be substantially identical." *In re High-Tech Emp. Antitrust

Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013). Typicality is routinely satisfied in securities

fraud actions where, as here, "plaintiffs have bought and sold stock for investment purposes, subject

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

16

to the same information and representations as the market at large." *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-CV-1737 JM JLB, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015).

Like other Settlement Class Members, Plaintiffs purchased TRR securities during the Settlement Class Period and were damaged thereby. Similarly, Plaintiffs' interests in obtaining a favorable settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members. Under the proposed Plan of Allocation, Plaintiffs will receive a *pro rata* share of the Settlement Fund, as will the rest of the Settlement Class. Accordingly, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-cv-1737 JM (JLB), 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### D. Plaintiffs and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This focuses on "(1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class" and also "factors in competency and conflicts of class counsel." *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013). Plaintiffs have prosecuted this Action, negotiated with Defendants through counsel, and approved the Settlement for the benefit of all Settlement Class Members. Moreover, Plaintiffs are represented by qualified counsel with extensive experience in litigating securities class actions. *See* Section IV(B)(1), *supra*. Thus, the requirements of Rule 23(a)(4) are met.

### E. The Settlement Class Meets Rule 23(b)(3) Requirements

Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3). A class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3). Here, both requirements are satisfied.

#### 1. Predominance is Satisfied

Predominance requires "that the adjudication of common issues will help achieve judicial economy." *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *7 (N.D.

Cal. Oct. 27, 2015). Predominance is "readily met" in securities fraud cases. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) and 625 (1997).

Here, no question exists that issues surrounding Defendants' alleged misconduct, such as whether their statements were false or misleading, whether they acted with requisite scienter, and whether their conduct caused damages to Plaintiffs and the Settlement Class, are common to each member of the Settlement Class. Predominance is satisfied where a plaintiff alleges that, as here, "many purchasers have been defrauded over time by similar misrepresentations." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006). Allegations arising under the federal securities laws typically support a finding of predominance as they arise out of common questions and issues. *Zynga*, 2015 WL 6471171, at *7 (for securities class actions, the "same set of operative facts and a single proximate cause applies to each proposed class member."). While the amount of damages may differ among Settlement Class Members, liability and the proper measure of damages can be determined on a class-wide basis. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009) ("[T]he critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class members' claims. … Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy"). Thus the Settlement Class satisfies predominance.

### 2. Superiority is Satisfied

Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiffs' and the Settlement Class Members' claims. Fed. R. Civ. P. 23(b)(3). For a settlement class, superiority is more easily established. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial").

Other superiority factors also support certification. As the Supreme Court has recognized, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. Many of the Settlement Class Members are individuals for whom prosecution of an individual action for relatively minor damages is not a realistic or efficient

alternative. Four individual plaintiffs alleged parallel Securities Act claims in a series of California state court cases, which were each consolidated into *In re The RealReal, Inc. Sec. Litig.*, Lead Case No. CIV1903516 (Marin County Superior Court) ("State Court Action"), and stayed in favor of this litigation. On August 14, 2020, the court stayed the State Court Action in favor of this Action, holding that (a) "[t]here is no reason to believe the federal court cannot fairly determine the rights of the parties and Plaintiffs will not be prejudiced while the federal action proceeds forward" and (b) "should there be a settlement in the federal action the state putative class members will have the opportunity to challenge it or opt-out of the proceeding." *See* Ex. 3 (order granting stay) at 7-8. Otherwise, no Settlement Class Members have brought separate claims, which would likely be consolidated into this Action or stayed. A class action avoids the duplication of efforts and inconsistent rulings. *Zynga*, 2015 WL 6471171, at *7. By efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement.

The Ninth Circuit has also recognized that certification of settlement classes requires "heightened attention to the definition of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019). A class definition is approvable "if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). For securities class actions settlements there are rarely any definitional issues as proposed classes for these types of actions are definite and ascertainable. *See Booth*, 2015 WL 3957746, at *3 (finding the class definition "satisfies the ascertainability requirement, as the class consists of individuals who purchased [company] stock within a discrete time period."). Here, the proposed Settlement Class is clearly defined as persons who purchased publicly traded TRR common stock during the finite Settlement Class Period. Thus, the class definition is suitable for certification.

## VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Plaintiffs also seeks preliminary approval of the Plan of Allocation, which is set forth in the Long Notice (Ex. A-1 to the Stipulation, at 6-10). Lead Counsel drafted the proposed Plan of Allocation with the assistance of Plaintiffs' damages expert. The Plan of Allocation closely tracks the form of plans of allocation commonly approved in similar securities class action settlements.

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

19

1   The Plan of Allocation allocates the Net Settlement Fund among Settlement Class Members who

2   submit a valid Proof of Claim (or whose Proof of Claim is otherwise accepted by the Court) on a

3   *pro rata* basis based on the amount of each Claimant's Recognized Loss. The formula for

4   determining each Authorized Claimant's Recognized Loss is based on an out-of-pocket measure of

5   damages consistent with Plaintiffs' allegations, and takes into consideration when each Claimant

6   purchased and/or sold TRR common stock, whether their purchases can be traced to the IPO, and

7   the relative strength of the claims alleged, namely that the Exchange Act claims faced a pending

8   motion to dismiss at the time of the Settlement and the SAC's Securities Act claims did not.

9         A plan of allocation in a class action under Rule 23 is governed by the same standards of

10   review applicable to the settlement as a whole—it must be fair and reasonable. *Class Plaintiffs v.*

11   *City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). The objective of a plan of allocation is to

12   provide an equitable basis upon which to distribute the settlement fund among eligible class

13   members. The plan must be "rationally related to the relative strengths and weakness of the case."

14   *Rosenburg v. I.B.M.*, No. CV06-00430PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007).

15         Lead Counsel developed the Plan of Allocation, which reflects the theories of causation and

16   damages Plaintiffs would have presented at trial and the strengths of the various claims alleged, and

17   provides an equitable basis to allocate the Net Settlement Fund among all Settlement Class Members

18   who submit a valid Proof of Claim. If a Claimant has an overall gain from their transactions in TRR

19   common stock during the Settlement Class Period, or if they purchased shares during the Settlement

20   Class Period but did not hold any shares through at least one of the alleged corrective disclosures,

21   their recovery will be zero, as any loss would not have been caused by the revelation of the alleged

22   fraud. The Plan of Allocation thus represents a fair and equitably distribution of the Net Settlement

23   Fund   among   Settlement   Class   Members. *In   re   Biolase,   Inc.   Sec.   Litig.*, No.

24   SACV131300JLSFFMX, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding a plan that

25   awarded a *pro rata* share of the net settlement fund to be "a fair and reasonable method of

26   distributing settlement proceeds").

27         If any funds remain after the initial distribution from the Net Settlement Fund to Authorized

28   Claimants, SCS will conduct a second distribution to Authorized Claimants who would receive at

least $10.00 from such a re-distribution as long as the second distribution is cost effective. Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund after such distribution(s). *See Zynga*, 2015 WL 6471171, at *11. Any residual funds, if any, will be distributed to the Investor Justice and Education Clinic ("IJEC") at Howard University School of Law as an appropriate *cy pres* recipient of such funds. The IJEC provides law students with the opportunity to represent clients in securities cases against securities broker-dealers. The IJEC also provides investor education and outreach programs for underserved investing communities, providing investment protection education, including a basic understanding of financial markets and professionals and financial products, and the rights of investors. *See* ¶¶57-60.

## VII.    THE NOTICE PLAN SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA

### A.    The Method of Notice is Adequate

Rule 23(e) requires that notice of the proposed Settlement shall be given to Settlement Class Members in such manner as the Court directs. Fed. R. Civ. P. 23(e). The proposed Notice Plan includes emailing links to a Settlement-dedicated website on which the Long Notice, Proof of Claim, and Stipulation will be posted, or if no email address can be obtained, mailing the Long Notice to Settlement Class Members who can be identified with reasonable effort. Settlement Class Members will be able to submit their claims electronically on the website. Upon request, SCS will also mail additional copies of the Notice and/or Proof of Claim. Additionally, the Claims Administrator will publish the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*.

Courts, including this Court, routinely find these methods of notice sufficient to satisfy due process and Rule 23 in securities class actions. *See, e.g., Celera*, 2015 WL 1482303, at *7 (finding that a substantially similar notice plan "satisfactory and meets due process"); *Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of mailing and online notice in consumer class action); *In re Mut. Funds Inv. Litig.*, No. 04-MD-15861CCB, 2010 WL 2342413, at *6–*7 (D. Md. May 19, 2010) (combination of mailing, posting summary notice, and online hosting "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements"). Thus, the proposed notice program is "the best notice that is practicable

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

21

under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Defendants will also provide notice under the Class Action Fairness Act, 28 U.S.C. §1715 *et seq*. within ten days of this motion. Stipulation ¶7.6.

Plaintiffs also propose a schedule of events relating to the Notice Plan and claims administration process, up to and including the Settlement Hearing, which is reflected in Preliminary Approval Order and set forth in a table in the Baker Declaration. ¶62.

### B.    The Content of the Notice Is Adequate

As required by Rule 23(c)(2), the Notice will inform Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and the right of Settlement Class Members to opt out or object to the Settlement, or otherwise object to the Plan and/or the proposed attorneys' fees and expenses. *See Stratton v. Glacier Ins. Admin'rs, Inc.*, No. 1:02CV06213 OWWDLB, 2007 WL 274423, at *14 (E.D. Cal. Jan. 29, 2007) ("Notice is satisfactory in the context of settlement if it fairly apprises class members of the terms of the settlement in sufficient detail to afford them the opportunity to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement.").

The proposed Long Notice includes all the information required by the PSLRA, the Federal Rules of Civil Procedure, and due process. In plain English, the proposed Long Notice provides: (a) the rights of Settlement Class Members, including the manner in which objections may be lodged and exclusions may be requested; (b) the nature, history, progress, and status of the litigation; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) a description of the proposed Plan of Allocation; (f) the maximum amount of fees and expenses to be sought by Lead Counsel; (g) the definition of the Court-certified Settlement Class and who it excludes; (h) the reasons the Parties have proposed the Settlement; (i) the estimated average recovery per damaged share; (j) the Settlement Class's claims and issues; (k) the Parties' disagreement over damages and liability; and (l) the date, time and place of the Settlement Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F). The Long Notice also provides contact information for Lead Counsel, SCS, and the Court. The Notice will provide the time, date, and location of the Settlement Hearing, and also states that the date of the hearing may change without further notice, advising Settlement Class Members to check the Settlement website or PACER to confirm that the date has not changed.

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The Notice satisfies this requirement as it alerts Class members that Lead Counsel will apply to the Court for attorneys' fees in an amount not to exceed 25% of the total Settlement and for reimbursement of litigation expenses up to $75,000 to be paid from the Settlement Fund. The Notice also includes the application for a Compensatory Award of no more than $17,000 to Plaintiffs.

## VIII.     THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND PLAINTIFFS' EXPENSES

The Notice explains that Lead Counsel intends to seek an award of attorneys' fees of up to 25% of the Settlement Amount, or $2,750,000, and reimbursement of litigation costs and expenses up to $75,000. Lead Counsel will provide more detailed information in support of its application for attorneys' fees and expenses upon a motion prior to the Settlement Hearing. The anticipated fee request matches the "benchmark" often used by the courts in the Ninth Circuit. *E.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This Circuit has established 25% of the common fund as a benchmark award for attorney fees."). Lead Counsel intends to seek an award of attorneys' fees at the benchmark. Courts in the Ninth Circuit routinely grant similar fees awards in similar size settlements, especially in complex securities fraud cases such as this one. *See, e.g., Omnivision*, 559 F. Supp. 2d at 1049 (awarding 28% of $13.75 million); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (awarding 30% of $8.9 million).

Lead Counsel has not yet completed a final review of its time dedicated to this Action, and will spend additional time supervising execution of the Notice Plan and the claims administration process and seeking final approval of the Settlement. To date, Lead Counsel's lodestar is approximately $388,473.75, based on 563 hours billed. ¶53. Based on this lodestar to date, a fee award of 25% would result in a multiplier of 7.08. *Id.* The lodestar will increase and the multiplier will decrease between now and the time of Lead Counsel's actual fee application. As Lead Counsel will more fully explain in their fee application, a multiplier in this range is reasonable and does not merit a downward departure from the benchmark. *See Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; Case No. 5:19-cv-07737-EJD

23

allowed"); *See also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (awarding fee of one third of $4.9 million settlement, resulting in lodestar multiplier of 6.3 because the fee award "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where [] the settlement amount is substantial.") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002)). If preliminary approval is granted, Lead Counsel will present its total lodestar with its fee application.

Lead Counsel also intends to seek reimbursement of Lead Counsel's litigation expenses in an amount not to exceed $75,000, which includes the substantial costs of retaining experts, mediator fees, and investigator fees. ¶54. Lead Counsel will provide appropriate detail in support of any request for reimbursement of litigation expenses with its fee application at final approval.

Lead Counsel also intends to seek an award of up to $17,000 for Plaintiffs (up to $9,000 for Lead Plaintiff and up to $4,000 each for the named Plaintiffs), pursuant to 15 U.S.C. §78u-4(a)(4), as reimbursement for their time and expenses in representing the Settlement Class. These types of "awards are fairly typical in class action cases … and are intended to compensate class representatives for work done on behalf of the class" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *See also Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL 5439000, at *13 (N.D. Cal. Aug. 4, 2015) (Davila, J.) (granting service awards up to $10,000 to lead and named plaintiffs). Lead Counsel believes the requested compensatory amounts are supported by the work that Plaintiffs did throughout the Action, which will be further detailed to the Court in connection with Plaintiffs' request for reimbursement. These amounts represent approximately 0.2% of the Settlement Amount, and are in line with similar awards granted in this District, which "typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015).

## IX.   THE PROPOSED CLAIMS ADMINISTRATOR

Plaintiffs request the Court appoint SCS as the Claims Administrator. SCS is a highly respected and experienced claims administrator, with experience administrating many large and complex securities litigation matters. *See* Ex. 2 (Declaration of Paul Mulholland) ("Mulholland Decl.") ¶2. *See also In re KaloBios Pharms., Inc. Sec. Litig.*, No. 5:15-cv-05841-EJD, 2017 WL

574444, at *3 (N.D. Cal. Jan. 20, 2017) (Davila, J.) (approving SCS as claims administrator in securities class action settlement). Lead Counsel selected SCS after requesting proposals from four reputable claims administrators and receiving two responses, each proposing substantially similar plans for dissemination of notice and claims payment. SCS's proposal was the cheapest, and SCS has a superior track record of effective claims administration. ¶¶35-36. Lead Counsel's history of engagements with SCS over the last two years is outlined in the Baker Declaration ¶37.

SCS's fees for administration of the Settlement are charged on a per-claim basis and expenses will be billed separately (including expenses for printing and mailing the Long Notice, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline). ¶38. At this time, only a rough estimate of the total Notice and Administration Costs can be provided as the costs are highly dependent on how many Long Notices are ultimately mailed and how many Claims are received and processed. SCS estimates, based on its past experience with securities settlements of a similar size and companies with similar market capitalization, and the length of the Settlement Class Period, that between 55,000 and 75,000 Long Notices will be mailed and that 33%, or between 18,150 to 24,750, Settlement Class Members will file claims. Mulholland Decl. ¶¶13, 14. Based on these estimates, SCS estimates that the total Notice and Administration Costs for the Action will range from $265,000 to $375,000. *Id.* ¶16. These costs are necessary in order to provide adequate notice and distribute the Net Settlement Fund. At approximately 2.4% to 3.4% of the total Settlement Amount, or $0.006 to $0.009 per damaged share, these costs are reasonable in relation to the value of the Settlement. ¶40. If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund. Results of a recent notice program and claims administration from a prior class settlement overseen by Lead Counsel is outlined in the Baker Declaration. ¶66.

## X.    CONCLUSION

For the foregoing reasons, the Court should (i) grant preliminary approval of the proposed Settlement and Plan of Allocation; (ii) preliminarily certify the Settlement Class; (iii) approve the proposed form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iv) schedule a Settlement Hearing and establish related deadlines.

1

2    Dated: November 5, 2021                    Respectfully submitted,

3                                              **THE ROSEN LAW FIRM, P.A**.

4                                              By: */s/ Laurence M. Rosen*_____
                                               Laurence M. Rosen (SBN 219683)
5                                              355 S. Grand Avenue, Suite 2450
                                               Los Angeles, CA 90071
6                                              Telephone: (213) 785-2610
                                               Facsimile: (213) 226-4684
7                                              Email: lrosen@rosenlegal.com

8
                                               and
9
                                               Phillip Kim (*pro hac vice*)
10                                             Joshua Baker (*pro hac vice*)
                                               101 Greenwood Avenue, Suite 440
11                                             Jenkintown, PA 19046
                                               Telephone: (215) 600-2817
12                                             Facsimile: (212) 202-3827
                                               Email: pkim@rosenlegal.com
13                                                      jbaker@rosenlegal.com

14
                                               *Lead Counsel for Plaintiffs*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

3

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 S. Grand

4

Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

5

On November 5, 2021, I electronically filed the foregoing PLAINTIFFS' NOTICE OF

6

UNOPPOSED    MOTION    FOR    PRELIMINARY    APPROVAL    OF    SETTLEMENT;

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF with the Clerk of

8

the Court using the CM/ECF system which sent notification of such filing to counsel of record.

9

Executed on November 5, 2021.

10

                                        */s/ Laurence M. Rosen*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28