**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL SANDERS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE REALREAL, INC., *et al.*,<br><br>Defendants. | Case No: 5:19-cv-07737-EJD<br><br>CLASS ACTION<br><br>**DECLARATION OF JOSHUA BAKER**<br><br>Hearing Date: March 24, 2022<br>Time: 9:00 a.m.<br>Location: Courtroom 4 – 5th Floor<br>Judge: Edward J. Davila |

I, Joshua Baker, hereby declare and state as follows:

1. I am an attorney duly licensed to practice in the State of New York and admitted *pro hac vice* in the above-captioned action. I am an attorney at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Michael Sanders and counsel for named Plaintiffs Nubia Lorelle and Garth Wakeford (collectively, "Plaintiffs") and the proposed Settlement Class in the above-captioned action. I have personal knowledge of the facts set forth herein and if called upon to testify, I could and would do so truthfully and accurately. I submit this declaration, together with the attached exhibits, in support of Plaintiffs' Unopposed Motion for Preliminarily Approval of Settlement.

## I. HISTORY AND BACKGROUND OF THE LITIGATION

2. Michael Sanders filed the initial complaint in this Action on November 25, 2019, alleging violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") against Defendant The RealReal, Inc. ("TRR" or "Company"), Defendants Julie Wainwright, Matt Gustke, Steve Lo, Chip Baird, Maha Ibrahim, Rob Krolik, Michael Kumin, Stefan Larsson, Niki Leondakis, and James Miller ("Individual Defendants"); and Defendants Credit Suisse Securities (USA) LLC, BofA Securities, Inc., UBS Securities LLC, KeyBanc Capital Markets Inc., Stifel, Nicolaus & Company, Cowen and Company, LLC, and Raymond James & Associates, Inc. ("Underwriter Defendants," and collectively with TRR and the Individual Defendants, "Defendants"). Dkt. No. 1.

3. Mr. Sanders moved for appointment as lead plaintiff and approval of lead counsel on January 24, 2020. Dkt. No. 8. On February 12, 2020, the Court entered an Order appointing Mr. Sanders as Lead Plaintiff and Rosen Law as Lead Counsel. Dkt. No. 27.

4. On March 31, 2021, Mr. Sanders, together with the other named Plaintiffs, filed the Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC"). Dkt. No. 31. Among other things, the FAC alleged that Defendants made false and misleading statements in the offering documents issued in connection with TRR's June 27, 2019 initial public offering ("IPO"), and in additional public statements made after the IPO, alleging violations of Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

5. On May 15, 2021, TRR and the Individual Defendants filed their motion to dismiss the FAC, which the Underwriter Defendants joined. Dkt. Nos. 32 and 35. The motion to dismiss was fully briefed by July 20, 2020. Dkt. Nos. 36, 40-41.

6. On March 31, 2021, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss, and granted Plaintiffs leave to amend. Dkt. No. 43. The Court granted the motion to dismiss with respect to the Exchange Act claims and some Securities Act claims, but denied the motion as to some of the Securities Act claims. *Id.*

7. Plaintiffs filed the SAC on April 30, 2021, again alleging claims under both the Securities Act and the Exchange Act. Dkt. No. 46. On June 14, 2021, TRR and the Individual Defendants filed a motion to dismiss the Exchange Act Claims of the SAC. Dkt. No. 52.

8. On June 28, 2021, the Parties participated in an all-day private mediation with the Honorable Layn R. Phillips (Ret.). In connection with the mediation, the Parties exchanged detailed mediation statements and responses to the opposing parties' mediation statements.

9. Although the Parties were unable to resolve the matter at the mediation, they continued settlement discussions under Judge Phillips's guidance over the next several weeks. Eventually, the Parties accepted a mediator's proposal from Judge Phillips to resolve the Action. The Parties reached an agreement in principle and executed a term sheet on July 26, 2021.

10. The Term Sheet set forth, among other things, the agreement between the Parties to settle and release all claims asserted against Defendants in the Action in return for a cash payment of $11,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary formal stipulation and agreement of settlement and related papers.

11. As part of the Term Sheet, the Parties agreed to conduct informal discovery to confirm the reasonableness and adequacy of the Settlement.

12. On July 28, 2021, the Parties filed a stipulation and proposed order, which the Court entered, notifying the Court of the settlement in principle and staying the pending deadlines in the litigation while the Parties worked to formalize the Settlement. Dkt. Nos. 55 and 56.

13. The Parties engaged in informal discovery beginning in August 2021. Defendants produced, and Lead Counsel reviewed, over 1,000 pages of internal documents, consisting of TRR

Board meeting minutes, personnel policies, training materials, and other documents concerning the Company's authentication process. Lead Counsel also conducted two interviews with members of TRR's management team knowledgeable on the subject matter of Plaintiffs' allegations. Based in part on the information gleaned through this informal discovery process, the Parties confirmed their agreement in principle to settle the Action upon the terms of the Stipulation.

14. On November 5, 2021, the Parties executed the Stipulation of Settlement ("Stipulation"), a true and correct copy of which is attached hereto as Exhibit 1.[1] Annexed as exhibits to the Stipulation are the following documents:

| Exhibit | Description |
| --- | --- |
| A | [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") |
| A-1 | Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") |
| A-2 | Proof of Claim and Release Form ("Claim Form") |
| A-3 | Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice") |
| B | [Proposed] Order and Final Judgment |

15. Four individual plaintiffs alleged parallel Securities Act claims in a series of California state court cases, which were each consolidated into *In re The RealReal, Inc. Sec. Litig.*, Lead Case No. CIV1903516 (Marin County Superior Court) ("State Court Action"), and stayed in favor of this litigation. On August 14, 2020, the court in the State Court Action stayed the case in favor of this Action. *See* Exhibit 3.

## II. INFORMATION ABOUT THE SETTLEMENT

### A. Settlement Class Definition

16. Under the terms of the Settlement, the Parties agreed, subject to Court approval, to certification of a Settlement Class defined as: all persons and entities who purchased TRR common stock from June 27, 2019 through November 20, 2019, both dates inclusive and were damaged

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation.

thereby. Included in the Settlement Class are all Persons who purchased TRR common stock pursuant to and/or traceable to TRR's Registration Statement issued in connection with TRR's June 27, 2019 IPO and all persons and entities who purchased TRR common stock during the Settlement Class Period at artificially inflated prices and were damaged thereby. Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time. Stipulation ¶1.34.

17. There are no substantive differences between the class definition proposed in the SAC (Dkt. No. 46 ¶135) and the Settlement Class definition.

**B.  The Releases**

18. In the proposed Settlement, the Parties agreed that Plaintiffs and each of the other Settlement Class Members shall waive and release the Released Claims Against Defendants and the other Released Parties in exchange for a payment by or on behalf of Defendants of $11,000,000 in cash.

19. "Released Claims" is defined in the Stipulation (¶1.29) as "any and all Claims and "Unknown Claims" (as defined in ¶ 1.40) that have been or could have been asserted by or on behalf of any of the Releasing Parties, in any capacity, which arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of TRR common stock during the Settlement Class Period, including but not limited to any claims alleged in the Action and any claims related to the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, related to, set forth, alleged or referred to in the Action. Notwithstanding the foregoing, "Released Claims" does not include claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.

20. Released Parties are defined in the Stipulation (¶1.30) as "Defendants and each and all of their Related Parties, their respective families, parent entities, associates, affiliates or

subsidiaries, and each and all of their respective past, present or future officers, directors, stockholders, agents, representatives, employees, attorneys, financial or investment advisors, advisors, consultants, accountants, investment bankers, commercial bankers, trustees, engineers, agents, insurers, co-insurers and reinsurers, heirs, executors, general or limited partners or partnerships, personal or legal representatives, estates, administrators, predecessors, successors and assigns."

21. Related Parties are defined in the Stipulation (¶1.28) as "with respect to each Released Party, the immediate family members, employees, officers, directors, attorneys, legal representatives, accountants, insurers, reinsurers, and agents of each of them, and any person or entity which is or was related to or affiliated with any Released Party or in which any Released Party has a controlling interest, and their present and former parents, subsidiaries, variable interest entities, divisions, affiliates, employees, officers, directors, attorneys, legal representatives, insurers, reinsurers, and agents, and the predecessors, heirs, administrators, successors and assigns of the foregoing.

22. The scope of this release is reasonable as it is limited to claims related to "the purchase, acquisition, holding, sale, or disposition of TRR common stock during the Settlement Class Period, including but not limited to any claims alleged in the Action and any claims related to the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, related to, set forth, alleged or referred to in the Action." Stipulation ¶1.29.

**C.  The Anticipated Recovery Under the Settlement**

23. The $11,000,000 cash Settlement Amount amounts to an estimated average recovery of approximately $0.27 per damaged share (based on the approximately 40.85 million damaged shares traded during the Settlement Class Period as estimated by Plaintiffs' damages expert) before the deduction of Court-approved fees and expenses and costs of notice and claims administration, pursuant to the proposed Plan of Allocation.

24. Based on the proposed Claims Administrator's experience, Lead Counsel estimates the total costs of the notice and claims administration process are estimated to range between $265,000 and $375,000.[2] Lead Counsel intends to request attorneys' fees of up to 25% of the Settlement Fund, reimbursement of up to $75,000 in litigation expenses, and a Compensatory Award to Plaintiffs of $17,000 total.

25. After deduction of the requested attorneys' fees, reimbursement of litigation expenses, Compensatory Award to Plaintiffs, and total notice and claims administration costs, the total estimated Net Settlement Fund distributed to Authorized Claimants will be approximately $7,838,000, or an average recovery per damaged share of approximately $0.19 per damaged share. Thus, approximately 71% of the Settlement Amount will be distributed to Settlement Class Members. Given the estimated claims rate of 33%, Mulholland Decl. ¶14, the estimated amount that Authorized Claimants will receive will be approximately $0.58 per share.

26. If Plaintiffs had successfully defeated TRR and the Individual Defendants' pending motion to dismiss the Exchange Act claims in the SAC, obtained certification of a class co-extensive with the Settlement Class, fully prevailed in each of their claims at summary judgment and after a jury trial, if the Court and jury awarded Plaintiffs' damages—*i.e.*, Plaintiffs' best-case scenario— estimated total maximum damages would have been approximately $104,700,000. Thus, the $11,000,000 Settlement Amount represents approximately 10.5% of the maximum recoverable damages potentially available in this Action. This percentage of recovery compares favorably to other securities class action settlements with similar total damages. According to Cornerstone Research, between 2011-2020, the median recovery in cases alleging claims under both Section 11 and Rule 10b-5 was approximately 5.4% of estimated damages. Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2020 Review and Analysis (Cornerstone Research), at 7, *available* at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis.

---

[2] *See* Declaration of Paul Mulholland Regarding Notice Plan ("Mulholland Declaration" or "Mulholland Decl."), attached hereto as Exhibit 2, at ¶16.

27. Prior to agreeing to the Settlement, Lead Counsel considered several factors, supporting Lead Counsel's belief that the percentage of recovery is reasonable, including:

    a. Lead Counsel's extensive investigation, factual discovery, and legal research of the claims asserted in this Action, which helped to evaluate the understanding of the strengths and weaknesses of these claims, including: (i) reviewing TRR's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning TRR; (iii) reviewing research reports by securities analysts; (iv) retaining a private investigator to conduct interviews with over a dozen former TRR employees; (v) reviewing over 1,000 pages of internal documents produced by TRR during confirmatory discovery; (vi) conducting two video interviews with members of TRR management knowledgeable on the subject matter of the allegations of the SAC; and (viii) retaining an economic expert to conduct a damages analysis.

    b. The Court granted Defendants' motion to dismiss the Exchange Act claims in the FAC, and TRR and the Individual Defendants had moved again to dismiss the amended Exchange Act claims from the SAC, presenting a significant risk to the Exchange Act claims and the damages tied to those claims, which represented a majority of Plaintiffs' maximum available damages.

    c. The difficulty, potential for success, and time required to defeat motions for summary judgment, have the class certified, conduct discovery, and prevail at trial.

**D.    The Proposed Plan of Allocation of the Settlement Fund**

28. The Plan of Allocation is detailed in the Long Notice at pp. 5-9. The Long Notice will be posted online at a Settlement-dedicated website maintained by the Claims Administrator, is downloadable, and will be emailed (via a link to the Settlement-dedicated website), or if no email address can be obtained, mailed to Settlement Class Members who can be identified with reasonable effort.

DECLARATION OF JOSHUA BAKER; Case No. 5:19-cv-07737-EJD
7

29.     Under the proposed Plan of Allocation, each Authorized Claimant will receive their *pro rata* share of the Net Settlement Fund, which is the Settlement Fund (*i.e.,* the $11,000,000 Settlement Amount plus any and all interest earned thereon) less any: (i) Taxes; (ii) Notice and Administration Costs; (iii) attorneys' fees awarded by the Court; (iv) litigation expenses awarded by the Court; and (v) Compensatory Award to Plaintiffs awarded by the Court. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

30.     The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on a "Recognized Loss" formula that is based on the timing of the purchases and sales of TRR common stock and the declines that occurred in the price of the stock, as alleged in the SAC.

31.     An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of TRR common stock the Claimant purchased, acquired, or sold during the Settlement Class Period. If a Claimant purchased and sold shares prior to a corrective disclosure, the Claimant's recovery under the Plan of Allocation will be zero. This is a widely accepted approach to the fair distribution of settlement funds in securities class action settlements. Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members who submit valid claims.

### E.     Estimate of Claims Rate

32.     As explained more fully in the attached Mulholland Declaration, Exhibit 2, Strategic Claims Services ("SCS" or the "Claims Administrator") estimates that, based on TRR's trading history during the Settlement Class Period, there are likely between 55,000 and 75,000 Settlement Class Members. Mulholland Decl. ¶13. Based on SCS's significant experience in notification and claims administration in private securities litigation matters, SCS estimates a claims rate of 33%. *Id*. ¶14. Thus, SCS expects to receive and process between 18,150 to 24,750 claims from Settlement Class Members. *Id*.

### F. There Are No Reversions to the Defendants

33. Pursuant to the Stipulation, this is not a claims-made Settlement. Once the Settlement is final and the time for any appeal has expired, or the Settlement has been affirmed on appeal, no portion of the Settlement Amount will revert to any defendant. Stipulation ¶9.4.

### III. CLAIMS ADMINISTRATOR SELECTION PROCESS

34. Lead Counsel retained SCS to: (i) provide notice of the proposed Settlement to investors who make up the Settlement Class; and (ii) administer the claims process.

35. Lead Counsel engaged SCS after soliciting bids and proposals from four reputable claims administrators with experience administrating securities class action settlements, and receiving proposals from SCS and one other firm.

36. Lead Counsel based its decision on multiple factors. First, SCS's proposal was the least expensive on an apples-to-apples comparison. Second, Lead Counsel has had consistent positive experiences with SCS serving as claims administrator in settlements both large and small. In selecting SCS, Lead Counsel carefully considered SCS's estimated cost to administer the entire Settlement, the cost of the notice program and the cost of each processed Claim, as well as certain fixed costs associated with the administration of the Settlement.

37. In the past two years, SCS administered, or is currently administrating, the following settlements in which Rosen Law served as Lead Counsel or Co-Lead Counsel: *Skiadas v. Acer Therapeutics Inc., et al.*, 1:19-cv-06137-GHW (S.D.N.Y.); *Hashem v. NMC Health plc, et al.*, 2:20-cv-02303-CBM-MAA (C.D. Cal.); *He v. China Zenix Auto International Limited*, 2:18-cv-15530-KM-JSA (D.N.J.); *Chan, et al., v. New Oriental Education & Technology Group Inc., et al.*, 2:16-cv-09279-KSH-CLW (D.N.J.); *In re Akazoo S.A. Securities Litigation*, 1:20-CV-01900-BMC (E.D.N.Y.); *Whiteley, et al, v. Zynerba Pharmaceuticals, Inc., et al.*, Case 2:19-cv-04959-NIQA (E.D. Pa.); *Rupp, et al., v. Momo Inc., et al.*, 1:19-cv-04433-GBD (S.D.N.Y.); *Davis, et al., v. Katanga Mining Limited, et al.*, 2:17-cv-12188-CCC-JBC (D.N.J.); *Kumar, et al., v. SAExploration Holdings, Inc., et al.*, 4:19-cv-03089 (S.D. Tex.); *In re Jumia Technologies AG Securities Litigation*, 19-cv-4397-PKC (S.D.N.Y.); *In re Spectrum Pharmaceuticals, Inc. Securities Litigation*, 2:16-cv-02279-RFB-EJY (D. Nev.); *Puddu, et al., v. 6D Global Technologies, Inc., et al.*, 15-cv-8061-AJN

(S.D.N.Y.); *Patton v. Rosen, et al.*, 1:19-cv-05362-PGG (S.D.N.Y.); *Li v. Aeterna Zentaris, Inc., et al.*, 3:14-cv-07081-PGS-TJB (D.N.J.); *Mikhlin v. Oasmia Pharmaceuticals AB, et al.*, 1:19-cv-04349-NGG-RER (E.D.N.Y.); *Luo v. Sogou Inc., et al.*, 1:19-cv-00230-LJL (S.D.N.Y.); *Feierstein v. Correvio Pharma Corp., et al.*, 1:19-CV-11361-VEC (S.D.N.Y.); *Pepe v. Cocrystal Pharma, Inc., et al.*, 2:18-cv-14091-KM-JBC (D.N.J.); *Christine Asia Co., Ltd. et al., v. Jack Yun Ma, et al.*, 1:15-md-02631-CM-SDA (S.D.N.Y.); *Hartman v. Verb Technology Company, et al.*, 2:19-cv-05896-GW-MAA (C.D. Cal.); *Byrne v. Westpac Banking Corporation, et al.*, 3:20-cv-00171-AC (D. Or.); *In re USA Technologies, Inc. Securities Litigation*, 2:19-cv-04565-JHS (E.D. Pa.); *Weinstein v. RMG Networks Holding Corporation, et al.*, 2018-0210-AGB (Del. Chancery Ct.); *In re Silver Wheaton Corp. Securities Litigation*, 2:15-cv-05146-CAS-PJW (C.D. Cal.); *Allen, et al., v. PixarBio Corporation, et al.*, 2:17-cv-00496-CCC-SCM (D.N.J.); *Zubriski, et al., v. Bioamber Inc., et al.*, 2:17-cv-01531-ADS-AKT (E.D.N.Y.); *Brendon, et al., v. Allegiant Travel Company, et al.*, 2:18-cv-01758-APG-BNW (D. Nev.); *Hrasok v. Kraton Corporation, et al.*, 4:18-cv-00591 (S.D. Tex.); *In re Akers Biosciences, Inc. Securities Litigation*, 2:18-cv-10521-ES-CLW (D.N.J.); *Hull v. Global Digital Solutions, Inc., et al.,* 3:16-cv-05153-FLW-TJB (D.N.J.); *Meyer v. Concordia International Corp., et al.*, 1:16-cv-06467-RMB-KNF (S.D.N.Y.); and *In re Stemline Therapeutics, Inc. Securities Litigation*, 1:17-cv-00832-PAC (S.D.N.Y.).

38. SCS's fees for administration of the Settlement will be charged on a per-claim basis and expenses will be billed separately (such as expenses for printing and mailing the Long Notices, and upon request, the Claim Form, publishing the Summary Notice, establishing and maintaining the website dedicated to the Settlement, and establishing and operating the toll-free telephone helpline).

39. At this time, SCS estimates that the Notice and Administration Costs, *i.e.*, the anticipated costs to administer the notice program, process Claims, and distribute the Net Settlement Fund, among other tasks, will generate professional service fees and expenses of approximately between $265,000 and $375,000.[3] Mulholland Decl. ¶16.

---

[3] Based on the estimate of between 55,000 to 75,000 potential Settlement Class Members and approximately 18,150 to 24,750 Claims processed. *See* Mulholland Decl. ¶¶13-14.

40. These costs are necessary in order to provide notice of the Settlement in the manner generally accepted and to properly administer the claims received in response. At approximately 2.4% to 3.4% of the total Settlement Amount, or about $0.006 to $0.009 per damaged share, these costs are reasonable as they are a function of the significant number of shares traded during the eligibility period under the Plan of Allocation. If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund. Stipulation ¶3.4.

## IV. THE NOTICE PROGRAM

### A. The Notice Distribution Plan

41. In accordance with the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith, Lead Counsel will cause the Claims Administrator to: (1) email links to the location of the Long Notice and Claim Form to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses, substantially in the form annexed to the Stipulation as Exhibit A-1 and Exhibit A-2; and (2) mail the Long Notice, substantially in the form annexed to the Stipulation as Exhibit A-1, if no email address can be obtained, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator. As explained above, in consultation with the Class Administrator, Lead Counsel estimates that there are between 55,000 and 75,000 potential Settlement Class Members. *See* Mulholland Decl. ¶13.

42. Prior to the mailing of the Long Notice and emailing links to the location of the Long Notice and Claim Form, Lead Counsel will cause the Claims Administrator to post downloadable copies of the Long Notice and Claim Form on a website dedicated to the Settlement, maintained by the Claims Administrator. The Claims Administrator will also mail copies of the Long Notice and/or Claim Form to Settlement Class Members upon request.

43. Additionally, the Claims Administrator will publish the Summary Notice over the *GlobeNewswire* and in *Investor's Business Daily*.

44. Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement and represents the best notice practicable under the circumstances.

45. Courts routinely find that these methods of notice are sufficient to satisfy due process and Rule 23. *Barani v. Wells Fargo Bank, N.A.*, No.12CV2999-GPC (KSC), 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of mailing and online notice in consumer class action); *In re Mut. Funds Inv. Litig.*, No. 04-md-15861-CCB, 2010 WL 2342413, at *6-*7 (D. Md. May 19, 2010) (combination of mailing, posting summary notice, and online hosting "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements").

### B. The Notice Contents Are Adequate

46. As more fully explained in the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, filed concurrently herewith, the notice program satisfies the requirements of due process, Rule 23(c)(2) of the Federal Rule of Civil Procedures, and the PSLRA (15 U.S.C. § 78u-4(a)(7)), and does so in easily understandable language.

47. The notice program also includes the following information required by the Northern District of California's Procedural Guidance for Class Action Settlements ("Class Settlement Guidance"): (i) the contact information for Lead Counsel to answer questions (*see* Long Notice, p. 3; Summary Notice, p. 3); (ii) the settlement website address (*see* Long Notice, pp. 5-6, 10, 13; Summary Notice, p. 2), which will be maintained by SCS and which will contain links to the Notice, the motions for preliminary approval and final approval of settlement; and (iii) instructions on how to access the case docket via PACER or in person using the language suggested in item 3 of the preliminary approval Class Settlement Guidance (*see* Long Notice, pp. 13-14).

48. Once the Court sets the date for the Final Approval Hearing, Lead Counsel will fill in the blank placeholders found in the Long Notice, Claim Form, Summary Notice, and Postcard Notice so the documents are finalized prior to mailing and publication.

### V. EXCLUSION REQUESTS

49. The notice program instructs potential Settlement Class Members who wish to opt out from the Settlement Class to send such a request to the Claims Administrator so that it is received by the required deadline. The notice program also clearly advises potential Settlement Class

Members of the deadline to opt out, the method to opt out, and the consequences of opting out. *See* Long Notice, p. 11, Summary Notice, pp. 2-3.

50. These instructions set forth the information needed to be properly identified and to opt out of the Settlement. *Id*. The identification of TRR common shares that each potential Settlement Class Member requesting exclusion purchased or acquired during the Settlement Class Period is required, to identify if such person or entity would otherwise be a Settlement Class Member.

**VI. OBJECTIONS**

51. The notice program instructs potential Settlement Class Members how to, if they wish, object to the Settlement, the proposed Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, and/or the Compensatory Award. *See* Long Notice, pp. 12-13, Summary Notice, p. 3. The Long Notice instructs any potential objector to send their written objection to the Court, and clearly states that the Court can only approve or deny the Settlement. Long Notice, pp. 12-13. The instructions in the Long Notice substantively follow the suggested language in the Class Settlement Guidance.

**VII. ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY AWARD**

52. For their efforts on behalf of the Settlement Class, Lead Counsel will apply for a percentage of the common fund fee award as compensation for the services rendered on the Settlement Class's behalf. Lead Counsel anticipates applying to the Court for an award of attorneys' fees in an amount not to exceed 25% of the $11,000,000 Settlement Fund (or up to $2,750,000 plus interest earned at the same rate as the Settlement Fund).

53. Lead Counsel's total current lodestar is approximately $388,473.75, based on 563 hours billed. Based on this lodestar to date, a fee award of 25% would result in a multiplier of 7.08. The lodestar will increase and the multiplier will decrease between now and the time of Lead Counsel's actual fee application, as Lead Counsel's current total lodestar does not include, among other things, time that will be spent in connection with supervising execution of the Notice Plan and

the claims administration process, seeking final approval of the Settlement, and moving for and overseeing the distribution of the Net Settlement Fund.

54. Lead Counsel will also apply for reimbursement of litigation expenses from the Settlement Fund in an amount not to exceed $75,000. These litigation expenses are paid or incurred in connection with the institution, prosecution, and resolution of the claims against Defendants, and they include the substantial costs of retaining experts, mediator fees, and investigator fees.

55. Lead Counsel will also apply for a Compensatory Award in an amount up to $17,000 total (up to $9,000 for Lead Plaintiff and up to $4,000 each for the two named Plaintiffs) as reimbursement for Plaintiffs' time and expenses in representing the Settlement Class.

**VIII. *CY PRES* AWARD**

56. The Net Settlement Fund will be distributed to Authorized Claimants, and if any funds remain after the initial distribution (for example, due to uncashed or returned checks), a second distribution to Authorized Claimants who would receive at least $10.00 from such a re-distribution will be conducted as long as it is cost effective.

57. Lead Counsel proposes the Investor Justice and Education Clinic ("IJEC") at Howard University School of Law (http://law.howard.edu/content/investor-justice-and-education-clinic-ijec) as the *cy pres* recipient of any residual funds that may remain after one or more distributions of the Net Settlement Fund to Authorized Claimants.

58. The IJEC is a clinic at the Howard University School of Law that provides law students with the opportunity to represent clients in securities cases against securities broker-dealers. The IJEC also provides investor education and outreach programs for under-served investing communities to provide investment protection education including a basic understanding of financial markets and professionals, and products, as well as their rights as investors.

59. Given the IJEC's dedication to investor education and protection, it is an appropriate *cy pres* recipient. In addition, the Parties and their counsel do not have any relationship with IJEC other than designating it as a *cy pres* recipient in past settlements.

60. Due to the potential multiple rounds of distributions, it is likely that only a small amount of funds, if any, from the Net Settlement Fund will be directed to IJEC.

1  **IX. PROPOSED SCHEDULE OF EVENTS**

2     61.    In connection with preliminary approval of the Settlement, Plaintiffs are requesting
3  that the Court establish: (i) dates by which notice of the Settlement will be distributed to Settlement
4  Class Members; (ii) a date by which Settlement Class Members may exclude themselves from the
5  Settlement; (iii) a date by which Settlement Class Members who wish to object to any aspect of
6  Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of litigation
7  expenses, and Compensatory Award to Plaintiffs must submit that objection; and (iv) a date on
8  which the Court will hold the Final Approval Hearing.

9     62.    The following is a proposed schedule which is reflected in the dates contained in the
10 proposed Preliminary Approval Order. The schedule is similar to those used in similar class action
11 settlements and provides due process for potential Settlement Class Members with respect to their
12 rights concerning the Settlement. If this schedule is not convenient for the Court, Plaintiff requests
13 the Court use at least the same or greater intervals between each event listed in the schedule to allow
14 sufficient time to comply with the Preliminary Approval Order.

| Event | Deadline for Compliance |
|---|---|
| Deadline for mailing the Long Notice and/or emailing links to location of Long Notice and Claim Form to Settlement Class Members | Within 30 days after entry of Preliminary Approval Order<br>(Preliminary Approval Order ¶14) |
| Posting the Stipulation, Long Notice, and Claim Form and Preliminary Approval Order on Claims Administrator's website | Within 16 days after entry of the Preliminary Approval Order<br>(Preliminary Approval Order ¶17) |
| Publication of Summary Notice | Within 10 days after mailing of Long Notice or emailing links of the Long Notice and Claim Form<br>(Preliminary Approval Order ¶18) |
| Deadline for Lead Plaintiff to file papers in support of final approval and application for fees and expenses | 35 days prior to the Settlement Hearing<br>(Preliminary Approval Order ¶30) |
| Deadline for submitting objections and for requesting exclusion | 21 days prior to the Settlement Hearing<br>(Preliminary Approval Order ¶¶ 22, 26) |
| Deadline for submitting Claim Forms | 30 days prior to the Settlement Hearing<br>(Preliminary Approval Order ¶20(a)) |
| Deadline to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | 14 days prior to the Settlement Hearing<br>(Preliminary Approval Order ¶31) |

| | |
|---|---|
| Settlement Hearing | 100-110 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

63. Plaintiffs request that the Settlement Hearing be scheduled for at least 100-110 days after entry of the Preliminary Approval Order to allow sufficient time for Settlement Class Members to file claims, request exclusion from or submit objections to the Settlement, and for Plaintiffs to file their motion papers in support of final approval of the Settlement and the Fee and Expense application.

64. Under this proposed schedule, potential Settlement Class Members would have well over 35 days to opt out or object to the Settlement and/or motion for attorneys' fees and reimbursement of litigation expenses and Compensatory Award.

## X. CLASS ACTION FAIRNESS ACT ("CAFA") NOTICE

65. Defendants will provide notice pursuant to CAFA (28 U.S.C. § 1715 *et seq.*) and will file with the Court at least seven days before the Settlement Hearing an affidavit or declaration regarding compliance with the CAFA notice requirements. Stipulation ¶7.6.

## XI. PAST DISTRIBUTIONS

66. The Class Settlement Guidance requests information regarding a previous distribution for at least one of Rosen Law's past comparable class action settlements. The following chart represents the requested information for another class action settlement for violations of the federal securities laws in which Rosen Law served as sole Lead Counsel:

| Matter | *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CASPJWx (C.D. Cal.) |
|---|---|
| **Total Settlement Fund** | $41,500,000.00 |
| **Method of Notice** | Mailed Postcard Notice and Summary Notice published in *Investor's Business Daily* and disseminated on a newswire over the internet |
| **Total Number of Notices Sent[4]** | At least 482,778 |

---

[4] Lead Counsel is unable to provide the total number of class members, because, as explained further in the Mulholland Declaration (¶6), most securities are held under a "street name" system in which the vast majority of investors hold their securities through a brokerage firm, institution, or other third-party nominee and do not actually purchase and hold securities under their own names.

DECLARATION OF JOSHUA BAKER; Case No. 5:19-cv-07737-EJD
16

| | |
|---|---|
| **Number of Claim Forms Submitted** | 100,480 |
| **Claims Forms Submitted as Percentage of Notices Sent** | 20.81% |
| **Number of Acceptable (In Whole or In Part) Claim Forms Submitted** | 10,559 |
| **Average Recovery per Claimant (based on number of Acceptable Claims)** | $3,930.29 |
| ***Cy Pres* Recipient** | No *cy pres* distribution made |
| **Amount Distributed to *Cy Pres* Recipient** | |
| **Administration Costs** | $1,269,231.32 |
| **Attorneys' Fees** | $12,450,000.00 |
| **Litigation Expenses** | $1,090,186.76 |

## XII. LIST OF EXHIBITS

67. Attached as Exhibit 1 is a true and correct copy of the Stipulation of Settlement, executed on November 5, 2021, with its attached exhibits.

68. Attached as Exhibit 2 is a true and correct copy of the Declaration of Paul Mulholland Regarding Notice Plan, executed on November 5, 2021.

69. Attached as Exhibit 3 is a true and correct copy of the Order entered on August 14, 2020 in the action styled *In re The RealReal, Inc. Sec. Litig.*, Lead Case No. CIV1903516 (Marin County Superior Court).


I declare under the penalty of perjury under the laws of the United State of America that the foregoing is true and correct. Executed on November 5, 2021.


                                     */s/ Joshua Baker*

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

On November 5, 2021, I electronically filed the foregoing DECLARATION OF JOSHUA BAKER with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on November 5, 2021.

                */s/ Laurence M. Rosen*