# EXHIBIT 3

**FILED**

AUG 1 4 2020

JAMES M. KIM, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: J. Berg, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MARIN

| | |
|---|---|
| In re THE REALREAL, INC. SECURITIES LITIGATION | Lead Case No. CIV 1903516 (consolidated with CIV 1903820 and CIV 1903789) |
| | **CLASS ACTION** |
| This Document Relates To: | **ORDER STAYING CASE** |
| ALL ACTIONS. | |



ORDER STAYING CASE, CASE NO. CIV 1903516

Defendants filed a Motion to Stay and a Demurrer and Motion to Strike that was set for hearing on Tuesday, August 4, 2020 at 1:30 p.m. in Department A, the Honorable Stephen P. Freccero presiding.  A tentative ruling was issued prior to the hearing and was unopposed. Having reviewed and considered the written submissions of all parties and being fully advised, the court adopts the tentative ruling as follows:

The court GRANTS the motion to stay the proceedings filed by defendant The RealReal, Inc. and Individuals, and joining defendants Credit Suisse Securities (USA) LLC, BofA Securities, Inc., UBS Securities LLC, Keybanc Capital Markets, Inc. Stifel, Nicolaus & Company, Cowen and Company, LLC, and Raymond James & Associates, Inc. ("Underwriter Defendants") until the conclusion of the pending federal action entitled *Sanders v. The RealReal, Inc. et al.*, Case No. 5:19-cv-07737-EJD. (*See Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 804.) At the conclusion of the federal action the court will entertain a motion to lift the stay so it may address any remaining claims.

In light of the stay, a ruling on the demurrer and motion to strike is deferred.

### *Allegations and Procedural History*

This is a putative securities class action filed on behalf of "all persons who purchased The RealReal, Inc. Class A common stock pursuant or traceable to the Registration Statement and incorporated Prospectus issued in connection with the Company's initial public offering that closed on July 2, 2019 ("IPO").

Defendant, The RealReal, Inc.[1] operates an online marketplace for consigned luxury goods. In contrast to other online resellers, RealReal actually takes possession of the goods sold on its website. According to its Registration Statement, after taking possession an expert at RealReal puts the item through a "rigorous, multi-point authentication process." Because of the prevalence of counterfeit items, this authentication process was claimed to be a major competitive advantage over other luxury resellers. Buyers could "trust" The RealReal.

---

[1]  Defendant The RealReal, Inc. is referred to as "RealReal," "REAL," the "Company," or "TRR." The court uses this nomenclature interchangeably, largely following the descriptions in the various filings.

ORDER STAYING CASE, CASE NO. CIV 1903516

According to the amended consolidated complaint filed on January 10, 2020,[2] after an investigation it was discovered that there was no alleged "rigorous process" overseen by experts. Instead, the authentication process was for the most part "conducted by over-worked and stressed copywriters who had little to no training authenticating items." (Consolidated Class Action Complaint, Exhibit A to the Declaration of Jaime Bartlett, p. 2:4-6.) As a result, many counterfeit items made it through the "almost non-existent authentication process and complaints about counterfeit items became a material issue for the Company."

The complaint also asserts that the Registration Statement made other misleading statements regarding the "average order value" ("AOV"), a metric described as a "key driver of [RealReal's] operating leverage." (Complaint, ¶ 4.) "The Registration Statement touted in multiple places the Company's increasing AOV." (Id.) Contrary to representations, however, the complaint alleges that RealReal's AOV was actually stagnant because competing retailers and promotional activity compelled RealReal to drop its own prices prior to its IPO. (Complaint ¶ 5.)

The complaint alleges that pursuant to the misleading Registration Statement, RealReal and Underwriter Defendants sold 17.25 million shares of RealReal common stock to the investing public at $20 per share, generating $345 million in gross offering proceeds. (Complaint ¶ 6.) Embroiled in scandal and media reported problems regarding failures in their authentication process and misrepresentations in its Prospectus to investors, RealReal's stock price closed at a low of $12.80 per share on August 27, 2019, representing a decline of 36% from the IPO price with the stock still trading below the IPO price to this day. (Complaint ¶¶ 7-9.)

After consolidation with other state court cases, the operative amended complaint alleges a putative securities class action for violations of the Securities Act of 1933. In particular, the complaint alleges causes of action for:

1) Violation of Section 11 of the Securities Act;

_____

[2] On September 10, 2019 a putative securities class action was filed in San Mateo county against the RealReal, Inc. and the underwriters of the IPO (the "Underwriter Defendants" all collectively "Defendants"). Two nearly identical actions were filed in this court on September 16, 2019 and October 7, 2019. The San Mateo action was dismissed and later refiled in this court. By stipulation, the three actions were consolidated (collectively now referred to as the "State Action") and the Robbins Geller firm was appointed lead plaintiffs' counsel. (See December 26, 2019 Stipulation and Order.)

ORDER STAYING CASE, CASE NO. CIV 1903516

2) Violation of Section 12(a)(2) of the Securities Act; and

3) Violation of Section 15 of the Securities Act.

On November 25, 2019 a putative class action asserting violations of the Securities Act was filed in the United States District Court for the Northern District of California entitled *Sanders v. The RealReal, Inc. et al.*, Case No. 5:19-cv-07737-EJD (the "federal action"). In addition to Securities Act claims, the federal action also asserts violations of the Exchange Act of 1934. Michael Sanders was appointed lead plaintiff and The Rosen Firm was appointed lead counsel. On March 31, 2020, lead plaintiff in the federal action filed an amended complaint (the "federal complaint"). The complaint alleges the following counts:

1) Violation of Section 11 of the Securities Act;

2) Violation of Section 15 of the Securities Act;

3) Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder; and

4) Violation of Section 20(a) of the Exchange Act.

RealReal and joining Underwriter Defendants (collectively "Defendants") now move to stay this state court action pending resolution of the putative securities class action in the United District Court for the Northern District of California.

### Discussion

In the present circumstances the decision in *Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800 is instructive. In *Caiafa* the court of appeals set out the following principles to guide a court's decision whether to grant a stay:

> It is black letter law that, when a federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion but not the obligation to stay the state court action. [Citations omitted.]
>
> "In exercising its discretion the court should consider the importance of discouraging multiple litigation designed solely to harass an adverse party, and of avoiding unseemly conflicts with the courts of other jurisdictions. It should also consider whether the rights of the patties can best be determined by the court of the other jurisdiction because of the nature of the subject matter, the availability of witnesses, or the stage to which the proceedings in the other court have already advanced." [Citation omitted.] The California Supreme Court also has isolated

another critical factor favoring a stay of the state court action in favor of the federal action, a factor which happens to be present in this case-the federal action is pending in California not some other state. [Citation omitted.]

(*Caiafa, supra*, 15 Cal.App.4th at p. 804.)

Here, Defendants contend the state and federal actions are essentially identical and thus this action should be stayed pending resolution of the federal action. Plaintiffs, on the other hand, emphasize the differences between this action and the federal action and argue against a stay. The arguments of the parties can be summarized as follows.

Plaintiffs assert the following differences:

a. <u>Different Claims</u>

- Plaintiffs' claims are exclusively non-fraud, strict liability claims under sections 11, 12(a)(2), and 15 of the 33 Act against REAL, the underwriters of the IPO, and certain REAL officers and directors (¶¶ 85-105.)[3] Specifically the section 11 claim is against REAL, the underwriters of the IPO, and certain REAL officers and directors who solicited the IPO (¶¶ 18-20, 49-77, 97), oral communication claims against REAL and certain officers who made the roadshow presentation ahead of the IPO (¶¶ 19-20, 53, 63, 98); *respondeat superior* sections 11 and 12(a)(2) claims against REAL for the conduct of its employee agents (¶¶ 18, 85-102); and section 15 claims against REAL for its control over certain REAL officers and directors. (¶¶ 103-105).

- Plaintiffs' claims relate solely to purchases of REAL common stock issued pursuant to the IPO and arising from specific misrepresentations and omissions contained in the offering documents (¶ 85) and oral communications during roadshows promoting the IPO (¶ 98) all of which were issued before the IPO.

- The federal action alleges only a subset of the section 33 Act claims coupled with distinct open-market fraud claims under sections 10(b) and 20(a) for the 34 Act, thus resulting in claims that turn on different legal elements (e.g. scienter, reliance) and are subject to different pleading standards (heightened particularity requirements under Fed.

---

[3] These references are to the consolidated state amended complaint attached as Exhibit A to the Bartlett Declaration.

4

R. Civ. P. 9(b)), applied to different statements (subsequent SEC filings and conference calls not limited to the time period of the IPO) and entirely different purchases (made on the open market, not pursuant to the IPO) of distinct REAL securities (such as untraceable common stock, derivatives, and options).

b. Different Parties

- Plaintiffs assert they are not parties to the federal action because no class has been certified. Further even if a federal class had been certified, Plaintiffs could opt-out. According to Plaintiffs, any ruling in the federal court would have no binding effect on the state court Plaintiffs.

c. Different Putative Classes/Different Securities/Different Time Periods

- The state action is limited to a small subset of REAL investors: those who purchased the limited number of new REAL common stock shares issued pursuant to and traceable to the July 2019 IPO (¶ 1). In contrast the federal action "purports to encompass all purchases of any and all REAL common stock (traceable or not) and potentially different classes of REAL securities (e.g., bonds, preferred stock, options derivative of open market common stock, and so on) at any time and by any means between June 27, 2019 and November 20, 2019." (Oppo. p. 16:15-19.)

d. Different Misrepresentations/Omissions

- This action has a limited set of written and oral misrepresentations and omissions issued ahead of the IPO limiting the measure of falsity and materiality in this action as of July 2019, the time of the IPO.

- The federal action alleges statements and omissions communicated in a variety of other channels such as press releases, websites, conference calls, and media interviews, which post-date and are not in connection with the IPO or the Registration Statement, Prospectus, or roadshows at issue in this proceeding.

e. Different Legal Theories

- Plaintiff asserts that the non-fraud claims in this action are for misstatements as of a single IPO effective date whereas the federal action must establish the specific "who,

5

ORDER STAYING CASE, CASE NO. CIV 1903516

what, when" of many distinct statements throughout the entire extended class period.

- In this state court action damages will be mechanically determined whereas the federal action will require analysis of issues such as market efficiency and price impact, which are not relevant here.

f.  Different Legal Standards

- Plaintiffs contend that even if subsets of claims overlap in the two actions, those claims will be measured against "markedly different standards under different controlling law." (Oppo. p. 18:3-5.) Plaintiffs' exclusively non-fraud 33 Act claims require only a statement of the facts constituting a cause of action in ordinary concise language whereas the federal action has claims sounding in fraud. "[E]ven the 33 Act claims will be subject to heightened partcularity standards under the federal PSLRA and Rule 9(b)." (Oppo. p. 18:9-10.)

Conversely, Defendants present the similarities between the state and federal actions. They argue that both actions arise from the same common nucleus of facts. Defendants provide cross-references to the allegations in both the state and federal complaints as follows:

- June 2019 TRR issued a Registration Statement in connection with its initial public offering ("IPO") (See State Amended Complaint filed January 10, 2020, ¶¶ 18, 47; Federal Amended Complaint filed March 31, 2020, ¶¶ 62, 162.)

- The Registration Statement is alleged to contain material false or misleading statements regarding the trajectory of the "average order value" ("AOV") and RealReal's process for authenticating items sold through its marketplace.  (Ex. A, ¶¶ 54-58, Ex. B, ¶¶ 71-73.)

- With respect to the AOV, both actions allege that early discounting from luxury retailers forced TRR to reduce prices and that it was misleading for the Company to disclose its accurate historical AOV without disclosing that the post-IPO quarter AOV would flatten.  (Ex. A, ¶¶ 66-67; Ex. B, ¶¶ 147-153, 155, 159.)

- The amended complaint in this action now contains allegations from the amended complaint in the federal action that challenge TRR's description of their authentication

6

process as "rigorous" and asserts that contrary to TRR's disclosures, most items were allegedly authenticated by untrained copywriters subject to purportedly debilitating review quotas.  (Ex. A, ¶¶ 203, 55-60; Ex. B, ¶¶ 77-85.)

- Both actions assert that the Registration Statement's risk disclosures for both categories of challenged statements were inadequate and misleading.  (Ex. A, ¶¶ 88-89; Ex. B, ¶¶ 81, 83, 159-160.)

- Both actions cite the same document demonstrating a prevalence of counterfeits in TRR' s marketplace and rely on assertions of former employees published in the same CNBC report.  (Ex. A, ¶¶ 58, 76-78; Ex. B, ¶¶ 103-119.)

Defendants argue that there is no practical way to disentangle these cases or to permit them to proceed on parallel tracks without significant waste and risk of contradictory rulings. Moreover, Defendants argue that the Exchange Act claims advanced in the federal action can only be heard in federal court. (See 15 U.S. C. 78aa [conferring exclusive federal jurisdiction over claims arising under the Exchange Act]; see also *Cyan, Inc. v. Beaver County Employees Retirement Fund* (2018) 138 S. Ct. 1061, 1066.)

In considering the appropriate factors, the court finds that on balance they favor the issuance of a discretionary stay. The court finds that the state action contains substantially the same parties as the federal court action. It is correct that the named representative plaintiffs are different. However, both actions are brought "on behalf of all other persons similarly situated" who purchased RealReal Class A common stock pursuant or traceable to the Registration Statement and the incorporated Prospectus issued in connection with the Company's initial public offering that closed on July 2, 2019 ("IPO") (Bartlett Decl. Ex. A), or purchased RealReal common stock pursuant or traceable to the Registration Statement from June 27, 2019 through November 20, 2019 (Bartlett Decl. Ex. B). The fact the putative federal class is broader (not narrower) and includes the class members proposed in this state action, means that Plaintiffs' interests will be preserved during any stay. As Defendants note, should there be a settlement in the federal action the state putative class members will have the opportunity to challenge it or opt-out of the proceeding.

Similarly, although Plaintiffs have expertly highlighted legal distinctions in claims and theories between the two actions, it is apparent that both the state and federal actions concern substantially the same subject-matter. Both are class actions seeking redress for the same type of alleged misrepresentations (although the federal action asserts additional Registration Act claims), and both rely on substantially the same factual allegations. Thus, the two actions exist with substantially the same parties, concerning substantially the same subject-matter, and both actions are pending in California. (*Caiafa, supra*, 15 Cal.App.4th at p. 804.)

Although the state actions were filed (prior to consolidation) before the federal action, the cases are at similar stages in their litigation. Without a stay, many of the same issues will be litigated in the different courts, posing the risk of unseemly conflicts. There is no reason to believe the federal court cannot fairly determine the rights of the parties and Plaintiffs will not be prejudiced while the federal action proceeds forward.

Thus, after balancing the appropriate factors in consideration of the arguments presented above and exercising its discretion, the court grants the requested stay in favor of the federal action.

Because the court has granted the stay, the demurrer and motion to strike are thus deferred pending the outcome of the federal action and a subsequent motion to lift the stay in this matter.

IT IS SO ORDERED.

Dated: **AUG 1 4 2020**

**STEPHEN P. FRECCERO**

Honorable Stephen P. Freccero
Judge of the Superior Court

8