**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SANDERS, Individually and on behalf of all others similarly situated, | Case No: 5:19-cv-07737-EJD |
| Plaintiff, | CLASS ACTION |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| THE REALREAL, INC., *et al.*, | |
| Defendants. | Hearing Date: July 28, 2022 Time: 9:00 a.m. Location: Courtroom 4 – 5th Floor Judge: Edward J. Davila |

1

## NOTICE OF MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

2

3      TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE

4 COUNSEL OF RECORD:

5      PLEASE TAKE NOTICE that, pursuant to Rule 23(e) of the Federal Rules of Civil

6 Procedure and the Court's Order Preliminarily Approving Settlement and Providing for Notice (Dkt.

7 No. 67) ("Preliminary Approval Order"), on July 28, 2022, at 9:00 a.m., or as soon thereafter as the

8 matter may be heard, Lead Plaintiff Michael Sanders and named plaintiffs Nubia Lorelle and Garth

9 Wakeford ("Plaintiffs") will hereby move the Honorable Edward J. Davila, District Judge, in

10 Courtroom 4 – 5th Floor, 280 South 1st Street, San Jose, CA 95113, for entry of the [Proposed]

11 Order and Final Judgment submitted herewith, which: (i) grants final approval of the proposed class

12 action settlement on the terms set forth in the Stipulation of Settlement and exhibits thereto, dated

13 November 5, 2021 (Dkt. No. 61-1) ("Stipulation"); (ii) grants final certification of the proposed

14 Settlement Class, appointing Plaintiffs as class representatives of the Settlement Class and Lead

15 Counsel as class counsel for the Settlement Class; and (iii) grants final approval of the proposed

16 Plan of Allocation for the Net Settlement Fund.[1]

17      In support of this Motion, Plaintiffs submit the following memorandum, the Declaration of

18 Joshua Baker ("Baker Decl.") filed concurrently herewith and exhibits thereto, all prior pleadings

19 and papers in this Action; and such additional information or argument as may be required by the

20 Court.

21      Defendants do not oppose this motion.

22

23

24

25

26

---

27 [1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the

28 Stipulation.

# <u>TABLE OF CONTENTS</u>

I.      PRELIMINARY STATEMENT ................................................................................1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT .....................................3

        A.      Procedural History .........................................................................................3

        B.      The Settlement ...............................................................................................4

III.    ARGUMENT ............................................................................................................5

        A.      Standards for Final Approval Under Rule 23(e) and Ninth Circuit Law ......................5

        B.      The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) and Ninth Circuit Factors ........................................................................................7

                1.      Plaintiffs and Lead Counsel Have Provided Adequate Representation ....................................................................... 7

                2.      The Settlement is the Result of Arm's-Length Negotiations Overseen by an Experienced Mediator .......................................... 8

                3.      The Settlement is a Favorable Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation ................................................................ 9

                        (a)     The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation ........... 10

                4.      The Remaining Rule 23(e)(2)(C) Factors Support Approval.................... 12

                        (a)     The Methods of Distributing Relief and Processing Claims ......... 13

                        (b)     Proposed Attorneys' Fees ............................................................. 14

                        (c)     Identification of Other Agreements ............................................... 14

                5.      The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Plaintiffs ........................................ 15

                6.      The Positive Reaction of the Settlement Class Favors Final Approval ...................................................................................................... 15

                7.      The Remaining *Hanlon* Factors Favor Final Approval ............................ 16

                        (a)     The Amount Offered in Settlement ............................................... 16

                        (b)     The Extent of Discovery and the Stage of Proceedings ................. 18

                        (c)     Recommendation of Experienced Counsel ................................... 20

                        (d)     The Presence of a Governmental Participant ................................ 20

        C.      The Plan of Allocation is Fair and Reasonable and Merits Final Approval .............. 20

|  |  | D. | The Court Should Grant Final Certification of the Settlement Class ......................... 22 |
| 1 |  | E. | The Notice Program Satisfied Rule 23, Due Process, and the PSLRA...................... 23 |
| 2 | IV. | CONCLUSION.................................................................................................................. 24 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Christine Asia Co. v. Yun Ma,*
No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................. 8

*Chun-Hoon v. McKee Foods Corp.,*
716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................................................................... 16

*Churchill Vill., L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004)................................................................................ 16

*Destefano v. Zynga, Inc.,*
No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)................................ 16, 18

*Eminence Cap., LLC v. Aspeon, Inc.,*
316 F.3d 1048 (9th Cir. 2003)................................................................................ 10

*Evans v. Jeff D.,*
475 U.S. 717 (1986) ........................................................................................... 5

*Garner v. State Farm Mut. Auto. Ins. Co.,*
No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................... 5

*Glass v. UBS Fin. Servs., Inc.,*
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ......................................... 20

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998).................................................................................. passim

*Hefler v. Wells Fargo & Co.,*
No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)................................. 14, 17

*Hefler v. Wells Fargo & Co.,*
No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)........................................ 6

*In re Am. Apparel, Inc. S'holder Litig..,*
No. CV1006352MMMJCGX, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ....................... 11

*In re Amgen Inc. Sec. Litig.,*
No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)........................... 20

*In re BankAtlantic Bancorp, Inc.,*
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................... 12

*In re Biolase, Inc. Sec. Litig.,*
No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .......................... 21

*In re Carrier IQ, Inc., Consumer Priv. Litig.*,
   No. 12-MD-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) .................................. 14

*In re Celera Corp. Sec. Litig.*,
   No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ............................ 9, 18

*In re Critical Path, Inc.*, No. C,
   01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) ............................................. 12

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ........................................ 21

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................. 11, 22

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................................ 10, 17, 18, 19

*In re NeoPharm, Inc. Sec. Litig.*,
   705 F. Supp. 2d 946 (N.D. Ill. 2010) .................................................................................... 11

*In re Netflix Priv. Litig.*,
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................. 8

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................... passim

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ................................................................................................ 11

*In re Puda Coal Sec. Inc., Litig.*,
   30 F. Supp. 3d 230 (S.D.N.Y. 2014) ..................................................................................... 11

*In re Rambus Inc. Derivative Litig.*,
   No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................................. 16

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................ 16

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................................................................ 5

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................ 17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ...................................................................................... 11

*In re Zynga Inc. Sec. Litig.*,
   No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................... 22

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ............................ 19

*Kamakana v. City & Cnty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ........................................................................ 14

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................ 8

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .......................................................................... 7

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ........................................................................ 19

*Mild v. PPG Indus., Inc.*,
    No. 218CV04231RGKJEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ...................... 7

*Moshogiannis v. Sec. Consultants Grp., Inc.*,
    No. 5:10-CV-05971 EJD, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012) ......................... 20

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 12, 20

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ........................................................... 7, 12, 16, 17

*Pace v. Quintanilla*,
    No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ...................... 7

*Rieckborn v. Velti PLC*,
    No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ......................... 19

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...................................................................... 12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................... 8, 23

*Rosenburg v. I.B.M.*,
    No. CV06-00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ......................... 21

*Satchell v. Fed. Express Corp.*,
    No. C  03 2878 SI,2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .............................. 9

*Schueneman v. Arena Pharms., Inc.*,
    No.: 3:10-cv-01959-CAB-(BLM),2020 WL 3129566 (S.D. Cal. June 12, 2020) ............ 22

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .......................................................................... 5

*Vinh Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................ 15

*Wong v. Arlo Techs., Inc.*,
   No. 5:19-CV-00372-BLF, 2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ............................. 8, 9

*Wong v. Arlo Techs., Inc.*,
   No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)............................... 6, 7

**Statutes**

15 U.S.C. § 78u-4(a)(7) .................................................................................................... 24

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... passim

Fed. R. Civ. P. 23(a) ...................................................................................................... 23

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 3, 22, 23

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 23

Fed. R. Civ. P. 23(e) .................................................................................................. passim

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................ 23

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 5, 6, 7, 16

Fed. R. Civ. P. 23(e)(2)(A) .......................................................................................... 7, 8

Fed. R. Civ. P. 23(e)(2)(B) .............................................................................................. 8

Fed. R. Civ. P. 23(e)(2)(C)(i) .......................................................................................... 9

Fed. R. Civ. P. 23(e)(2)(C)(ii) ...................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................................. 13, 14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ................................................................................. 13, 14

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................ 15

Fed. R. Civ. P. 23(e)(3) .................................................................................................... 6

Fed. R. Civ. P. 23(e)(4) .................................................................................................. 15

Fed. R. Civ. P. 23(e)(5) .................................................................................................. 15

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1.   Whether the Court should approve the proposed $11,000,000 cash Settlement of this Action as fair, reasonable, and adequate under Rule 23(e).

2.   Whether the Court should approve the Plan of Allocation as fair and reasonable.

3.   Whether the Court should grant final certification of the Action as a class action pursuant to Rules 23(a) and (b)(3) for settlement purposes only.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      PRELIMINARY STATEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs submit this memorandum in support of their motion for final approval of the Settlement of the above-captioned action ("Action") for $11,000,000 in cash ("Settlement Amount"), for approval of the Plan of Allocation, and for final certification of the Settlement Class for settlement purposes. The terms of the Settlement are set forth in the Stipulation (Dkt. No. 61-1), which the Court preliminarily approved on March 24, 2022. Dkt. No. 67.

The $11 million Settlement is procedurally fair, as it is the product of arm's-length negotiations overseen by an experienced and highly respected mediator, the Hon. Layn R. Phillips (Ret.), and was achieved only after nearly two years of hard-fought litigation against skilled defense counsel. The Settlement is also substantively reasonable, and adequate, considering the requirements of Rule 23 of the Federal Rules of Civil Procedure and the factors identified by the Ninth Circuit for assessing class action settlements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Prior to reaching the Settlement, Plaintiffs and Lead Counsel developed a thorough understanding of both the strengths and the weaknesses underlying the claims in this Action. Plaintiffs and Lead Counsel meaningfully assessed the risks of establishing liability and damages, including the immediate risk posed by a second motion to dismiss certain of Plaintiffs' claims under the heightened pleading standard imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), while Plaintiffs were prevented from pursuing discovery by the PSLRA's automatic discovery stay. Before Plaintiffs agreed to the Settlement, Lead Counsel, among other things: (i) conducted a comprehensive investigation prior to the filing of Plaintiffs' first amended complaint ("FAC"); (ii) opposed the motion to dismiss the FAC filed by Defendants The RealReal, Inc. ("TRR" or the "Company"), Julie Wainwright, Matt Gustke, Steve Lo, Chip Baird, Maha Ibrahim, Rob Krolik, Michael Kumin, Stefan Larsson, Niki Leondakis, and James Miller (together, "TRR Defendants"), which Defendants Credit Suisse Securities (USA) LLC, BofA Securities, Inc., UBS Securities LLC, KeyBanc Capital Markets Inc., Stifel, Nicolaus & Company, Cowen and Company,

LLC, and Raymond James & Associates, Inc. (together, "Underwriter Defendants") joined; (iii) reviewed the Court's order granting in part and denying in part the motion to dismiss the FAC; (iv) conducted further investigation and research in filing a second amended complaint ("SAC") in light of the Court's order; (v) in advance of a mediation session, prepared detailed mediation statements and responses outlining Plaintiffs' analyses of the claims and defenses in this case, including the new allegations of the SAC and the merits of the TRR Defendants' then-pending motion to dismiss portions of the SAC; and (vi) engaged in arm's-length negotiations with counsel for Defendants during an all-day mediation session, (vii) continued settlement negotiations for weeks before agreeing to a mediator's proposal to settle the Action in principle, contingent upon conducting informal discovery; and (viii) reviewed documents produced by the Company and conducted two interviews with knowledgeable members of the Company's management to confirm the adequacy of the Settlement. The Parties then negotiated and executed the Stipulation, and Plaintiffs sought and obtained preliminary approval of the Settlement from the Court. Based on this substantial work and Lead Counsel's experience, Plaintiffs and Lead Counsel believe that the Settlement—which eliminates the significant costs and risks of continuing litigation and provides a substantial and immediate cash recovery—is in the best interests of the Settlement Class.

While the deadline to file an objection has not yet passed, the reaction of the Settlement Class to date also strongly supports final approval. The Court-appointed claims administrator mailed approximately 31,000 copies of the Notice to potential Settlement Class Members and their nominees and to date, no objections have been received or filed and only one request for exclusion from a small shareholder has been received.

The Plan of Allocation also warrants final approval. Lead Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages expert and it reflects an assessment of the damages that Plaintiffs contend could have been recovered under the theories of liability and damages asserted in the Action. The Plan of Allocation ties each participating Settlement Class Member's recovery to when they bought or sold securities and is a fair and reasonable method for distributing the Net Settlement Fund.

Finally, the Court should grant final certification of the Settlement Class for settlement purposes. The Court preliminarily certified the Settlement Class after Plaintiffs fully briefed the requirements of Rules 23(a) and (b)(3). Nothing has changed to alter the certification analysis, and thus final certification is merited.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Procedural History

Michael Sanders filed the initial complaint with this Court on November 25, 2019. Dkt. No. 1. On February 12, 2020, the Court appointed Mr. Sanders as Lead Plaintiff and approved his selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Dkt. No. 27.

On March 31, 2020, Mr. Sanders, joined by the other named Plaintiffs, filed the FAC on behalf of a class consisting of all persons and entities who purchased TRR common stock from June 27, 2019 through November 20, 2019, both dates inclusive ("Settlement Class Period"), for alleged violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Dkt. No. 31. Among other things, the FAC alleged that Defendants made false and misleading statements regarding TRR's luxury goods authentication process in the offering documents issued in connection with TRR's June 27, 2019 initial public offering ("IPO"), and in additional public statements made after the IPO.

On May 15, 2020, the TRR Defendants filed a motion to dismiss the FAC, which the Underwriter Defendants joined. Dkt. Nos. 32 and 35. Defendants' motion was fully briefed by July 20, 2020. Dkt. Nos. 36, 40-41.

On March 31, 2021, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss, and granted Plaintiffs leave to amend. Dkt. No. 43. The Court granted the motion to dismiss with respect to the Exchange Act claims and some Securities Act claims, but denied the motion as to some of the Securities Act claims. *Id.* Plaintiffs filed the SAC on April 30, 2021, alleging renewed claims under both the Securities Act and the Exchange Act supported by new factual allegations. Dkt. No. 46. On June 14, 2021, TRR and the Individual Defendants filed a motion to dismiss the Exchange Act claims of the SAC. Dkt. No. 52.

1    On June 28, 2021, the Parties participated in an all-day private mediation with the Honorable

2  Layn R. Phillips (Ret.). Baker Decl. ¶12. Prior to the mediation, the Parties exchanged detailed

3  mediation statements and responses. *Id.* Although the Parties were unable to resolve the matter at

4  the mediation, they continued settlement discussions with Judge Phillips's guidance over the next

5  several weeks. *Id.* ¶13. Eventually, the Parties accepted a mediator's proposal from Judge Phillips

6  to resolve the Action. *Id.* The Parties reached an agreement in principle and executed a term sheet

7  on July 26, 2021. *Id.* As part of the Term Sheet, the Parties agreed to conduct informal discovery to

8  confirm the reasonableness and adequacy of the Settlement. *Id.* ¶16. On July 28, 2021, the Parties

9  filed a stipulation and proposed order, which the Court entered, notifying the Court of the settlement

10  in principle and staying the pending litigation deadlines while the Parties worked to formalize the

11  Settlement. Dkt. Nos. 55 and 56.

12    The Parties engaged in informal discovery beginning in August 2021. Baker Decl. ¶16.

13  Defendants produced, and Lead Counsel reviewed, over 1,000 pages of internal documents,

14  consisting of TRR Board meeting minutes, personnel policies, training materials, and other

15  documents concerning the Company's authentication process and the allegations in Plaintiffs' SAC.

16  *Id.* Lead Counsel also conducted two interviews with members of TRR's management team who

17  were knowledgeable on the subject matter of Plaintiffs' allegations. *Id.* ¶17. Based in part on the

18  information gleaned through this informal discovery process, the Parties confirmed their agreement

19  in principle to settle the Action upon the terms of the Stipulation. *Id.*

20    On November 5, 2021, the Parties executed the Stipulation and Plaintiffs filed a motion for

21  preliminary approval of the Settlement, attaching the Stipulation and its exhibits. Dkt. Nos. 60-61.

22  After holding a hearing on Plaintiffs' motion on March 24, 2022, the Court granted the motion and

23  entered the Preliminary Approval Order. Dkt. No. 67.

24    **B.    The Settlement**

25    The Settlement provides that TRR will pay or cause to be paid $11 million into an interest-

26  bearing escrow account for the Settlement Class. The Settlement Amount, plus accrued interest, and

27  after deduction of (i) the Fee and Expense Awards; (ii) Administrative Costs; (iii) Taxes and Tax

28  Expenses; and (iv) other fees and expenses authorized by the Court is the "Net Settlement Fund."

1  The Stipulation provides that the Net Settlement Fund will be distributed among Settlement Class

2  Members who submit valid a Proof of Claim in accordance with the proposed Plan of Allocation.

3       The Settlement Class is defined as all persons and entities who purchased TRR common

4  stock from June 27, 2019 through November 20, 2019, both dates inclusive, and were damaged

5  thereby. Stipulation ¶1.34. In exchange for the Settlement Amount, Settlement Class Members will

6  release the Released Claims defined in the Stipulation. *Id.* ¶1.29. The Settlement is non-

7  reversionary, it is not a claims-made settlement. *Id.* ¶9.4.

8  **III.    ARGUMENT**

9       **A.    Standards for Final Approval Under Rule 23(e) and Ninth Circuit Law**

10      Rule 23(e) requires judicial approval of any class action settlement, which must be "fair,

11 reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is within the "sound discretion of the district

12 courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*,

13 475 U.S. 717, 742 (1986).[2] In the Ninth Circuit and throughout the country, "there is a strong judicial

14 policy that favors settlements particularly where complex class action litigation is concerned." *In re*

15 *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Van Bronkhorst v. Safeco Corp.*,

16 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting

17 litigation," and this is "particularly true in class action suits."); *In re Omnivision Techs., Inc.*, 559 F.

18 Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's

19 policy favoring settlement, particularly in class action law suits."). Class actions readily lend

20 themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and

21 the typical length of litigation. The settlement of complex cases also conserves scarce judicial

22 resources. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010

23 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted

24 expenditure of resources and time would benefit all Parties and the Court.").

25      Rule 23(e)(2)—which governs final approval—requires courts to consider several factors in

26 determining whether a proposed settlement is fair, reasonable, and adequate, including whether:

27 ───────────────────

28 [2] Internal citations and quotations are omitted and emphasis is added unless otherwise noted.

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

    (i)      the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e), advisory committee notes to 2018 amendment, 324 F.R.D. 904, 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

"In the Ninth Circuit, courts traditionally use a multi-factor balancing test to analyze whether a given settlement is fair, adequate and reasonable." *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021). Those factors include:

> [1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Id.* (quoting *Hanlon*, 150 F.3d at 1026); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (same). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Here, each of the factors specified in Rule 23(e)(2) and the relevant *Hanlon* factors weigh in favor of granting final approval of the Settlement.

**B.**    **The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) and Ninth Circuit Factors**

**1.**    **Plaintiffs and Lead Counsel Have Provided Adequate Representation**

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Courts must resolve two questions to determine adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs and Lead Counsel have adequately represented the Settlement Class. Plaintiffs have no interests antagonistic to other Settlement Class Members and their interest in obtaining the largest possible recovery for TRR investors is aligned with the interests of other Settlement Class Members. *Mild v. PPG Indus., Inc.*, No. 218CV04231RGKJEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Plaintiffs worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for the Settlement Class.

Plaintiffs retained highly experienced securities litigation counsel with a successful track record of representing investors in similar cases. *See* Baker Decl., Ex. 3 (Declaration of Laurence M. Rosen) ("Rosen Fee Decl."). Rosen Law's firm resume is attached as Ex. A to the Rosen Fee Decl. Courts in this Circuit and around the country have recognized that Rosen Law "has the necessary skill and knowledge to effectively prosecute" securities class actions. *Pace v. Quintanilla*,

No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (approving the largest ever settlement in a case brought by investors in a Chinese company, finding that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case.").

In this Action, Lead Counsel prosecuted the Settlement Class's claims vigorously by, among other things: conducting a pre-complaint investigation; filing an initial complaint; conducting a further investigation and filing the FAC with additional Exchange Act claims; defeating in part Defendants' motion to dismiss the FAC; conducting further investigation and filing the SAC; drafting a mediation statement and reviewing and responding to Defendants' mediation statement; participating in the mediation; conducting informal discovery; negotiating the Settlement and Stipulation; selecting a claims administrator; formulating the Notice Plan and Plan of Allocation; moving for and obtaining preliminary approval of the Settlement; supervising the execution of the Notice Plan and responding to inquiries from potential Settlement Class Members; and filing the instant motion for final approval of the Settlement. Baker Decl. ¶50. Thus, Plaintiffs and Lead Counsel have adequately represented the Settlement Class throughout this Action.

### 2. The Settlement is the Result of Arm's-Length Negotiations Overseen by an Experienced Mediator

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (citing *Hanlon*, 150 F.3d at 1026). In the Ninth Circuit, courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *In re Netflix Priv. Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness

and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms-length negotiations conducted by capable and experienced counsel"). Further, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Lead Counsel engaged in rigorous settlement negotiations with counsel for Defendants, guided both during and after the mediation session by a well-respected mediator in Judge Phillips, who has years of experience mediating securities class actions such as this one. Baker Decl., Ex. 1 (Declaration of Layn R. Phillips) ¶¶3-4. Prior to the mediation session, the Parties exchanged mediation statements and responses. *Id.* ¶6. The mediation did not end in an agreement, but the Parties continued negotiations guided by Judge Phillips and eventually accepted a mediator's proposal. *Id.* ¶7. Judge Phillips' declaration attests to the integrity of the mediation process and recommends the Settlement as being in the best interests of the Settlement Class. *Id.* ¶¶8-9. His participation in the Settlement underscores that it is the product of non-collusive, arm's-length negotiations. *See In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) (Davila, J.) (preliminarily approving settlement mediated by Judge Phillips, finding "the mediation process must have assisted the parties to gain a better understanding of their respective strengths and weaknesses to litigate this case.").

### 3. The Settlement is a Favorable Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

The Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C)(i). Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of the plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor); and the risks of maintaining class action status through the trial (third factor). *Wong*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026). Each of these factors supports final approval of the Settlement.

1

2

      (a)      **The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation**

3

4

      In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court

5

must balance the continuing risks of litigation, including the strengths and weaknesses of the case,

6

and the complexity, expense, and likely duration of continued litigation, against the benefits

7

afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), *as amended* (June 19, 2000).

8

      The risks of continued litigation in this case were significant. In considering the Settlement,

9

Plaintiffs and Lead Counsel weighed the risks inherent in establishing all the elements of the claims,

10

as well as the likely further expense and duration of the Action. Here, the risks were immediately

11

present as the Court had already dismissed the Exchange Act claims in the FAC. Dkt. No. 43.

12

Although Plaintiffs believed the SAC cured the pleading deficiencies identified by the Court in the

13

FAC with respect to these claims, there was a significant risk that the Court would grant the TRR

14

Defendants' motion to dismiss, thereby eliminating the majority of potential damages. Baker Decl.

15

¶38. The PSLRA imposes heightened pleading burdens on securities fraud plaintiffs that are "not []

16

easy [] to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

17

      Even if Plaintiffs defeated the anticipated motion to dismiss the Exchange Act claims, they

18

would still need to undertake the complex and expensive task of obtaining certification of the

19

putative class. One of the more difficult elements of class certification to satisfy is showing that

20

class-wide issues, such as reliance on Defendants' misrepresentations (for the Exchange Act

21

claims), predominate over individualized issues. Plaintiffs would need to hire an expert economist

22

to conduct an event study showing the price reaction of TRR common stock to new, material

23

information, prepare a report, and testify at a deposition on the issue of market efficiency. Such

24

well-qualified experts are expensive. Baker Decl. ¶40. Defendants would likely present their own

25

expert report and testimony to oppose class certification. In addition to briefing the class certification

26

motion, Plaintiffs would need to produce and review documents, sit for a deposition, and take the

27

opposing expert's deposition. Even if Plaintiffs obtained class certification, they faced the risk that

28

they would not be able to sustain class certification through judgment. *Omnivision*, 559 F. Supp. 2d

at 1041 ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Due to the "risk that the court would not have certified a class in the first place had the parties not settled, and a further risk that, even if it did, that class might later have been decertified, this factor too weighs in favor of approving the settlement." *In re Am. Apparel, Inc. S'holder Litig..*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014).

Further litigation would also prove risky, complex, and expensive. Defendants deny any wrongdoing and would have presented a multi-pronged defense to Plaintiffs' claims, as previewed in their motions to dismiss. Plaintiffs would need to engage in formal fact discovery, requiring review of thousands of documents and taking depositions of Defendants, TRR employees, and non-parties. Baker Decl. ¶42. The Parties would then engage in expert discovery on the questions of loss causation and damages and other industry-specific issues. Defendants would likely present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drops, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other issues unrelated to the revelation of the fraud. All told, expert discovery and trial preparation would prove expensive and complex. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Plaintiffs would also risk losing at the summary judgment stage. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove material falsity or scienter). Plaintiffs might have an expert excluded, damaging their case. *See, e.g., In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiffs would also risk losing at trial, or the jury might reduce damages significantly. *See* Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict (reporting that according to defendants, plaintiffs won only 5% of the damages they requested); *available at* https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/. Plaintiffs might still lose their case even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor). Even if Plaintiffs survive summary judgment and motions to exclude their experts, win at trial, secure a verdict for their and the class's damages, and then defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million jury verdict).

By contrast, the $11 million Settlement provides a substantial and immediate recovery and eliminates the risk, delay, and expense of continued litigation. While continued litigation bears the theoretical possibility of generating a higher recovery, assessing the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all settling parties, as "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. Accordingly, the likely duration and expense of further litigation supports a finding that the Settlement is fair, reasonable, and adequate. *See In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing."); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

### 4.    The Remaining Rule 23(e)(2)(C) Factors Support Approval

Under Rule 23(e)(2)(C)(ii)-(iv), the Court must also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed

award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the Settlement's approval or is neutral, further demonstrating the adequacy of the Settlement.

(a)      <b>The Methods of Distributing Relief and Processing Claims</b>

Rule 23 requires that the Court consider the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the method for distributing relief and for processing Settlement Class Members' claims includes standard, well-established, and effective procedures. The Preliminary Approval Order established a plan to provide notice to potential Settlement Class Members, which the Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), duly implemented under Lead Counsel's supervision. As the Court directed in the Preliminary Approval Order, SCS mailed the Long Notice to all those who could be identified with reasonable effort and published the Summary Notice on GlobeNewswire and in Investor's Business Daily. Baker Decl., Ex. 2 (Declaration of Josephine Bravata) ("Bravata Decl.") ¶¶3-11. SCS also created and maintained a toll-free help line and Settlement-specific website (www.strategicclaims.net/TRR) hosting key documents including the Stipulation, Long Notice, Proof of Claim, and Preliminary Approval Order. Id. ¶¶12-13.

In order to participate in the distribution of the Net Settlement Fund, Settlement Class Members must complete a standard claim form that requests the information necessary to calculate claims pursuant to the Plan of Allocation. The Settlement website also allows Settlement Class Members to file their claims electronically. SCS will process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure any deficiencies or request the Court review a denial of their Claim(s), and upon the Court's approval, distribute to Authorized Claimants their pro rata share of the Net Settlement Fund pursuant to the Plan of Allocation. This proposed method of distribution is both effective and necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required to distribute the Net Settlement Fund without soliciting claim submissions.

1

**(b)     Proposed Attorneys' Fees**

2      Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing

3  of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The relief provided for the Settlement Class is also

4  adequate when considering the terms of the proposed award of attorneys' fees. The Long Notice

5  and Summary Notice each disclosed that Lead Counsel would seek an award of attorneys' fees of

6  up to 25% of the Settlement Fund, as well as reimbursement of up to $75,000 of litigation expenses.

7  *See* Bravata Decl., Ex. A (Long Notice). As detailed in the accompanying motion for attorneys'

8  fees, the proposed fee award of 22% of the Settlement Fund and reimbursement of $59,828.16 in

9  expenses is reasonable in light of the work performed by Lead Counsel and the results obtained for

10  the Settlement Class. Approval of the requested attorneys' fees is separate from approval of the

11  Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys'

12  fees. Stipulation ¶10.3.

13

**(c)     Identification of Other Agreements**

14      Rule 23 requires that any agreement made in connection with the proposed Settlement be

15  disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed in the Stipulation (¶5.4) and in

16  Plaintiffs' brief in support of preliminary approval (Dkt. No. 60 at 10), the Parties entered into a

17  Supplemental Agreement that gives TRR the right to terminate the Settlement if Settlement Class

18  Members holding more than a certain number of shares opt out. Only the agreement's exact terms—

19  specifically, the number of shares that trigger the right to terminate—have not been disclosed to

20  Settlement Class Members. This Supplemental Agreement poses no obstacle to final approval of the

21  Settlement. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Hefler v.*

22  *Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a

23  termination option triggered by the number of class members who opt out of the Settlement does

24  not by itself render the Settlement unfair."); *In re Carrier IQ, Inc., Consumer Priv. Litig.*, No. 12-

25  MD-02330-EMC, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval of

26  class action settlement and observing that such "opt-out deals are not uncommon as they are

27  designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

28  TRR did not exercise its termination option.

1

2

### 5.      The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Members, Including Plaintiffs

Courts must also evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member or any segment of the Settlement Class, including Plaintiffs. The Plan of Allocation provides for distribution of the Net Settlement Fund to Settlement Class Members who suffered losses on their TRR common stock transactions during the Settlement Class Period, based on when they purchased, acquired, and/or sold shares of TRR common stock. This ensures that Settlement Class Members' recoveries are based upon their relative losses and accounts for claimants who are entitled to recover under both sets of claims, or just the Exchange Act claims. *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

Plaintiffs will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation in the same manner as all other Settlement Class Members. Accordingly, this factor favors final approval of the Settlement.

### 6.      The Positive Reaction of the Settlement Class Favors Final Approval

The eighth Hanlon factor—the reaction of the Settlement Class—overlaps with Rules 23(e)(4) and (5), on the opportunity for exclusion and the opportunity to object. As required by Rules 23(e)(4) and (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. Bravata Decl., Ex. A (Long Notice at 9-10). SCS mailed approximately 31,000 copies of the Long Notice to potential Settlement Class Members and published the Summary Notice over the GlobeNewswire and in Investor's Business Daily. Bravata Decl. ¶¶6, 11. A nominee also informed the Claims Administrator that they had emailed nearly 9,000 customers to notify them of the Settlement, including links to the Notice and Claim Form on the settlement website. Id. ¶7. Here, the absence of any objections and the small number of requests

for exclusion supports final approval. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.

The deadline to file objections or request exclusion from the Settlement is July 7, 2022. Preliminary Approval Order ¶¶22, 26. To date, not one Settlement Class Member has objected to the Settlement, and only one (an investor who purchased just 16 shares of TRR stock) has opted out. Bravata Decl. ¶¶14-15, Ex. D. The absence of objections to a proposed class action settlement supports approval. *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Omnivision*, 559 F. Supp. 2d at 1043 (same). The small number of exclusion requests also supports the Settlement's approval. See *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 0.56% of eligible class members requesting exclusion); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request representing 4.86% of class supports settlements' approval.); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *14 (N.D. Cal. Feb. 11, 2016) (16 valid exclusion requests representing 0.176% of public shares, supported settlement approval).

### 7.   The Remaining *Hanlon* Factors Favor Final Approval

Certain of the *Hanlon* factors are not entirely coextensive with Rule 23(e)(2)'s requirements. These factors, viewed in light of Rule 23(e)(2)'s requirements, also support final approval.

### (a)   The Amount Offered in Settlement

"The determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *12 (S.D.N.Y. July 21, 2020). Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is

fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiffs must take less in a settlement than they might recover after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, this is no guarantee that Plaintiffs could secure or enforce a judgment at or near the full amount of the estimated class-wide damages.

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'" *Hefler*, 2018 WL 4207245, at *9 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). A settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *Mego*, 213 F.3d at 459.

The $11 million Settlement Amount is reasonable and warrants final approval. As noted in Plaintiffs' brief in support of preliminary approval, the estimated recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, is approximately $0.27 per damaged share. Dkt. No. 61 ¶23. The estimated Net Settlement Fund after deducting each of these costs (should the Court approve the requested amounts) is approximately $8.2 million, or $0.20 per damaged share. *Id.* ¶25; Baker Decl. ¶21. Given SCS's estimated claims rate of 33%, the estimated amount that Authorized Claimants will receive will be approximately $0.60 per share. *Id.*[3] Thus, approximately 74.5% of the Settlement Amount will be distributed to Settlement Class Members.

---

[3] A final tally of submitted claims is not available as of the date of this submission. Per the Preliminary Approval Order, the deadline for claims submissions is June 28, 2022. Dkt. No. 67 ¶20. Plaintiffs will provide the Court with an updated total of claims submitted at or prior to the Settlement Hearing.

1  Baker Decl. ¶21; *Celera*, 2015 WL 1482303, at *6 (that 73% of settlement fund would be distributed

2  to class members weighs in favor of approving the settlement).

3      The Settlement recovers approximately 10.5% of the estimated maximum damages of

4  $104.7 million potentially available under Plaintiffs' best-case scenario, which assumes: (i) the

5  Court certifies the same class period as the Settlement Class Period; (ii) Plaintiffs defeat Defendants'

6  motion to dismiss the Exchange Act claims of the SAC, succeed at summary judgment on all claims,

7  then prove liability to a jury; and (iii) the Court and jury accepted Plaintiffs' damages theory,

8  including proof of loss causation. Baker Decl. ¶21. Anything less than a complete victory would

9  decrease or potentially eliminate recoverable damages. Moreover, Plaintiffs' Exchange Act

10  claims—dismissed once already and facing a second pending motion to dismiss—accounted for

11  more than half of the maximum estimated damages. *Id.* ¶38.

12      Nonetheless, the Settlement's recovery percentage compares favorably to other securities

13  class action settlements with similar total damages. *See, e.g., Omnivision*, 559 F. Supp. 2d at 1042

14  (approving $13.75 million settlement recovering approximately 9% of maximum estimated

15  damages); *Zynga*, 2016 WL 537946, at *11 (granting final approval on a settlement fund of $23

16  million recovering approximately 14% of likely recoverable damages, with a per-share distribution

17  of $0.11 after deductions for attorneys' fees and costs). According to Cornerstone Research, in 2021

18  nearly 60% of securities class action settlements recovered less than $10 million, and between 2012-

19  2021, the median recovery in cases alleging claims under both Section 11 and Rule 10b-5 was

20  approximately 6.1% of estimated damages. Laarni T. Bulan, *et al.*, Securities Class Action

21  Settlements: 2021 Review and Analysis (Cornerstone Research), at 7, *available* at

22  https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-

23  2021-Review-and-Analysis.pdf. That the $11 million Settlement compares favorably to settlements

24  in similar cases further supports final approval.

25          **(b)      The Extent of Discovery and the Stage of Proceedings**

26      Courts also consider the stage of the proceedings and the amount of information available to

27  the parties to assess the strengths and weaknesses of their case in determining the fairness,

28  reasonableness, and adequacy of a settlement. *Mego*, 213 F.3d at 458. Importantly, "in the context

of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

During the PSLRA-mandated discovery stay, Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing TRR's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii)  reviewing public documents, reports, announcements, and news articles concerning TRR; (iii) reviewing research reports by securities analysts; (iv) retaining a private investigator to conduct interviews with dozens of former TRR employees; (v) reviewing over 1,000 pages of internal documents produced by TRR during informal discovery; (vi) conducting two video interviews with members of TRR management knowledgeable on the subject matter of the allegations of the SAC; and (viii) retaining an economic expert to conduct a damages analysis. Baker Decl. ¶50.

Through their investigation, as well as their review of Defendants' mediation statement, Lead Counsel determined the scope and strength of the claims Plaintiffs could bring on behalf of the putative class, including the appropriate class period, corrective disclosures, and the corresponding misrepresentations and/or omissions. *Id.* ¶47. Through these efforts, Plaintiffs and Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were expended on further litigation.

Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or before any discovery. *See, e.g., Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (before decision on motion to dismiss);

*Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-CV-05971 EJD, 2012 WL 423860, at *5 (N.D. Cal. Feb. 8, 2012) (Davila, J.) (finding proposed settlement was fair where it was "reached after the parties conducted a significant amount of informal discovery in the form of document exchange and interviews"). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

### (c)      Recommendation of Experienced Counsel

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *Omnivision*, 559 F. Supp. 2d at 1043 ("[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness"); *DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). Lead Counsel have extensive securities litigation experience and obtained a thorough understanding of the Action's merits and risks. Lead Counsel's support for the fairness and reasonableness of this Settlement supports final approval of the Settlement. Defendants are represented by skilled securities practitioners at King & Spalding LLP and Paul Hastings LLP. Baker Decl. ¶55. Defense Counsel are at least as well-informed regarding the case, and their representation of Defendants was no less vigorous than Lead Counsel's representation of the Settlement Class. *Id.*

### (d)      The Presence of a Governmental Participant

"Because no government entities are participants in this case, this factor is neutral." *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016).

### C.      The Plan of Allocation is Fair and Reasonable and Merits Final Approval

In its Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation, which was detailed in the Long Notice. Bravata Decl., Ex. A at 5-8. Plaintiffs now seek final approval of the Plan of Allocation for the purposes of administering the Settlement. Under Rule 23,

a plan of allocation in a class action settlement "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. The plan need only be "rationally related to the relative strengths and weakness of the case." *Rosenburg v. I.B.M.*, No. CV06-00430PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007).

The proposed Plan of Allocation has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold TRR common stock. Plaintiffs engaged a damages consultant to assist in developing a plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. Baker Decl. ¶29. The Plan of Allocation closely tracks the form of plans of allocation commonly approved in similar securities class action settlements. In securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common" because they tend to mirror the complaint's allegations. *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Biolase, Inc. Sec. Litig.*, No. SACV131300JLSFFMX, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awarded a *pro rata* share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds").

The Plan of Allocation allocates the Net Settlement Fund among Settlement Class Members who submit a valid Proof of Claim on a *pro rata* basis based on the amount of each Claimant's Recognized Loss. The formula for determining each Authorized Claimant's Recognized Loss is based on an out-of-pocket measure of damages consistent with Plaintiffs' allegations, and takes into consideration when each Claimant purchased and/or sold TRR stock, whether their purchases can be traced to the IPO, and the relative strength of the claims alleged—namely that the Exchange Act claims faced a pending motion to dismiss at the time of the Settlement and the Securities Act claims did not. "A plan which fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative

1    strengths and weaknesses of class members' individual claims and the timing of purchases of the

2    securities at issue should be approved as fair and reasonable." *Schueneman v. Arena Pharms., Inc.*,

3    No.: 3:10-cv-01959-CAB-(BLM), 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020).

4              If any funds remain after the initial distribution from the Net Settlement Fund to Authorized

5    Claimants, SCS will conduct a second distribution to Authorized Claimants who would receive at

6    least $10.00 from such a re-distribution as long as the second distribution is cost effective.

7    Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund

8    after such distribution(s). *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL

9    6471171, at *11 (N.D. Cal. Oct. 27, 2015). Any residual funds, if any, will be distributed to the

10   Investor Justice and Education Clinic ("IJEC") at Howard University School of Law as an

11   appropriate *cy pres* recipient of such funds. The IJEC provides law students with the opportunity to

12   represent clients in securities cases against securities broker-dealers. The IJEC also provides

13   investor education and outreach programs for underserved investing communities, providing

14   investment protection education, including a basic understanding of financial markets and

15   professionals and financial products, and the rights of investors. *See* Baker Decl. ¶32.

16             To date, no objections to the Plan of Allocation have been filed. Baker Decl. ¶24; Bravata

17   Decl. ¶15. Accordingly, the Court should approve the proposed Plan of Allocation. *See Heritage*

18   *Bond*, 2005 WL 1594403, at *12 ("In light of the lack of objectors to the plan of allocation at issue,

19   and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court

20   finds the plan of allocation as fair and adequate.").

21        **D.       The Court Should Grant Final Certification of the Settlement Class**

22             In its Preliminary Approval Order, the Court preliminarily certified the Settlement Class for

23   settlement purposes under Fed. R. Civ. P. 23(a) and (b)(3). Dkt. No. 67 ¶2. The Parties stipulated to

24   the certification of the Settlement Class for settlement purposes. Stipulation ¶6.1. The Settlement

25   Class conditionally certified in the Preliminary Approval Order includes "all persons and entities

26   who purchased TRR common stock from June 27, 2019 through November 20, 2019, both dates

27   inclusive, and were damaged thereby." Dkt. No. 67 ¶2. Excluded are: "(a) persons who suffered no

28   compensable losses; and (b) Defendants; the present and former officers and directors of the

Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time." *Id.*

No relevant circumstances have changed since the Court's preliminary certification of the Settlement Class. Thus, for the same reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Dkt. No. 60 at 14-19), Plaintiffs request that the Court affirm its determinations in the Preliminary Approval Order and grant final certification of the Settlement Class under Rules 23(a) and (b)(3).

**E.      The Notice Program Satisfied Rule 23, Due Process, and the PSLRA**

Rule 23(e) requires that notice of the proposed Settlement shall be given to Settlement Class Members in such manner as the Court directs. Fed. R. Civ. P. 23(e). For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs provided the Settlement Class with adequate notice of the Settlement, in the manner and form that the Court directed in the Preliminary Approval Order. The Claims Administrator mailed more than 30,000 copies of the Court-approved Long Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort. Bravata Decl. ¶6. In addition, one nominee sent nearly 9,000 email notifications to their customers, including direct links to the Notice and Claims form on the Settlement website. *Id.* ¶7. The Claims Administrator also published the Court-approved Summary Notice online in *GlobeNewswire* and in print in *Investor's Business Daily*. *Id.* ¶11. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.* ¶13. Thus, the notice plan executed here directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provided all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962. The Notice gave Settlement Class Members all

the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan of Allocation as described in the Notice. In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant final approval of the proposed Settlement and Plan of Allocation and grant final certification of the proposed Settlement Class.

Dated: June 23, 2022

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A**.

By: */s/ Laurence M. Rosen*
Laurence M. Rosen (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Phillip Kim (*pro hac vice*)
Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
          jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

On June 23, 2022, I electronically filed the foregoing PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record. Executed on June 23, 2022.

*/s/ Laurence M. Rosen*