**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SANDERS, Individually and on behalf of all others similarly situated, | Case No: 5:19-cv-07737-EJD |
| Plaintiff, | CLASS ACTION |
| v. | **DECLARATION OF JOSHUA BAKER IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| THE REALREAL, INC., *et al.*, | |
| Defendants. | |
| | Hearing Date: July 28, 2022 |
| | Time: 9:00 a.m. |
| | Location: Courtroom 4 – 5th Floor |
| | Judge: Edward J. Davila |

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

I, Joshua Baker, declare as follows:

1.      I am an attorney with The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Michael Sanders and named Plaintiffs Nubia Lorelle and Garth Wakeford ("Plaintiffs") in the above-captioned Action. I conducted the bulk of the day-to-day activities in this Action on behalf of Rosen Law. I am admitted *pro hac vice* before this Court. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      I submit this declaration in support of Plaintiffs' and Lead Counsel's motions for: (1) final approval of the proposed Settlement of this Action; and (2) an award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs, filed concurrently herewith.[1] This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Rosen Law's requests for attorneys' fees, reimbursement of expenses, and award to Plaintiffs are reasonable and should be approved by the Court.

3.      The Settlement creates a gross settlement fund of $11,000,000, plus accrued interest. After attorneys' fees, reimbursement of expenses, award to Plaintiff, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons and entities who purchased TRR common stock from June 27, 2019 through November 20, 2019, both dates inclusive ("Settlement Class Period"), and who were damaged thereby.[2]

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation of Settlement and exhibits thereto, dated November 5, 2021 (Dkt. No. 61-1) ("Stipulation").

[2] Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a majority ownership interest at any time.

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

4.      The memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), filed herewith, sets out a full narrative of this case. The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

## I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

5.      On November 25, 2019, Michael Sanders filed the initial complaint in this Action, alleging violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"). Dkt. No. 1.

6.      On January 24, 2020, Mr. Sanders filed a motion seeking to be appointed Lead Plaintiff and for his counsel, Rosen Law, to be appointed Lead Counsel. Dkt. No. 8. On February 12, 2020 the Court appointed Mr. Sanders as Lead Plaintiff and Rosen Law as Lead Counsel. Dkt. No. 27.

7.      Pursuant to the Court's order entering a scheduling stipulation regarding the filing of an amended complaint and responses thereto, Dkt. No. 29, Mr. Sanders, together with named Plaintiffs Nubia Lorelle and Garth Wakeford, filed the first amended complaint ("FAC"). The FAC alleged violations of the same sections of the Securities Act and added additional claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Dkt. No. 31. Among other things, the FAC alleged that Defendants made false and misleading statements in the offering documents issued in connection with TRR's June 27, 2019 initial public offering ("IPO"), and in additional public statements made after the IPO. *Id.*

8.      On May 15, 2020, the Defendants The RealReal, Inc. ("TRR" or the "Company"), Julie Wainwright, Matt Gustke, Steve Lo, Chip Baird, Maha Ibrahim, Rob Krolik, Michael Kumin, Stefan Larsson, Niki Leondakis, and James Miller (together, "TRR Defendants") filed a motion to dismiss the FAC, which Defendants Credit Suisse Securities (USA) LLC, BofA Securities, Inc., UBS Securities LLC, KeyBanc Capital Markets Inc., Stifel, Nicolaus & Company, Cowen and Company, LLC, and Raymond James & Associates, Inc. (together, "Underwriter Defendants") joined. Dkt. Nos. 32 and 35. Defendants' motion was fully briefed by July 20, 2020. Dkt. Nos. 36, 40-41.

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

9.      On March 31, 2021, the Court entered an Order granting in part and denying in part Defendants' motion to dismiss, and granting Plaintiffs leave to amend. Dkt. No. 43. The Court granted the motion to dismiss with respect to the Exchange Act claims and some Securities Act claims, but denied the motion as to some of the Securities Act claims. *Id.*

10.      Plaintiffs filed their second amended complaint ("SAC") on April 30, 2021, again alleging claims under both the Securities Act (as limited by the Court) and the Exchange Act, supplemented by new allegations. Dkt. No. 46.

11.      On June 14, 2021, TRR and the Individual Defendants filed a motion to dismiss the Exchange Act claims of the SAC. Dkt. No. 52.

## II.      OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

12.      On June 28, 2021, the Parties participated in an all-day private mediation with the Honorable Layn R. Phillips (Ret.). Prior to the mediation, the Parties exchanged detailed mediation statements and responses.

13.      Although the Parties were unable to resolve the matter at the mediation, they continued settlement discussions with Judge Phillips's guidance over the next several weeks. Eventually, the Parties accepted a mediator's proposal from Judge Phillips to resolve the Action. The Parties reached an agreement in principle and executed a term sheet on July 26, 2021.

14.      Judge Phillips observed that the discussions between counsel for the Parties "demonstrated their deep understanding of the factual and legal issues in this Action, the relative strengths and weaknesses of their positions, and the significant risks of continued litigation. The negotiations were at arms'-length, conducted in good faith, and each Parties' interests were skillfully represented. The mediation of this Action was hard fought on both sides." Declaration of Layn R. Phillips, attached hereto as **Exhibit 1,** ¶8. In Judge Phillips' opinion, "the terms of the Settlement are fair, adequate, reasonable and in the best interests of the Class." *Id*. ¶9.

15.      On July 28, 2021, the Parties filed a stipulation and proposed order, which the Court entered, notifying the Court of the settlement in principle and staying the pending litigation deadlines while the Parties worked to formalize the Settlement. Dkt. Nos. 55 and 56.

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

16.     As part of the Term Sheet, the Parties agreed to conduct informal discovery to confirm the reasonableness and adequacy of the Settlement. The Parties engaged in informal discovery beginning in August 2021. Defendants produced, and Lead Counsel reviewed, over 1,000 pages of internal documents, consisting of TRR Board meeting minutes, personnel policies, training materials, and other documents concerning the Company's authentication process and the allegations in Plaintiffs' SAC.

17.     Lead Counsel also conducted two interviews with members of TRR's management team who were knowledgeable on the subject matter of Plaintiffs' allegations. Based in part on the information gleaned through this informal discovery process, the Parties confirmed their agreement in principle to settle the Action upon the terms of the Stipulation.

18.     On November 5, 2021, the Parties executed the Stipulation. That same day, Plaintiffs filed a motion for preliminary approval of the Settlement, attaching the Stipulation and its exhibits. Dkt. Nos. 60-61.

19.     After holding a hearing on Plaintiffs' motion on March 24, 2022, the Court granted the motion and entered the Preliminary Approval Order. Dkt. No. 67.

## III.     TERMS OF THE SETTLEMENT

20.     In the opinion of the team of lawyers at my firm who worked on this case, including myself, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a significant benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

21.     As set forth herein and in the Final Approval Brief, the Settlement represents approximately 10.5% of the maximum estimated damages of $104.7 million under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. This maximum estimated amount could only be recovered if: all the claims alleged survive to trial; a class matching the Settlement Class was certified; a jury adopt Plaintiffs' expert's damages model; Plaintiffs defeat any appeals; and

Defendants have the ability to pay such a judgment. The $11 million Settlement Amount is reasonable and warrants final approval. As noted in Plaintiffs' brief in support of preliminary approval, the estimated recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, is approximately $0.27 per damaged share. Dkt. No. 61 ¶23. The estimated Net Settlement Fund after deducting each of these costs (should the Court approve the requested amounts) is approximately $8.2 million, or $0.20 per damaged share. *See id.* ¶25. Given SCS's estimated claims rate of 33%, the estimated amount that Authorized Claimants will receive will be approximately $0.60 per share. *See id*. If the Court approves all of the requested amounts of fees and expenses, approximately 74.5% of the Settlement Amount will be distributed to Settlement Class Members.

22.    A lump sum cash settlement in the face of these challenges is a favorable outcome. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

## IV.    LEAD COUNSEL'S FEE REQUEST

23.    For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of 22% of the Settlement Fund, or $2,420,000, plus interest earned thereon, and reimbursement of 59,828.16 in litigation expenses incurred in prosecuting this Action. This fee request is within the reasonable range of percentages typically awarded to class counsel in securities class actions in the Ninth Circuit.

## V.    REACTION OF THE SETTLEMENT CLASS

24.    The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. Pursuant to the Notice[3], objections to the

---

[3] "Notice" collectively refers to the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), and the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice").

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Settlement must be received by July 7, 2022. To date, there have been no objections to the Settlement. *See* Declaration of Josephine Bravata Concerning: (A) Mailing of The Notice and Claim Form; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Bravata Decl.") ¶15. A true and correct copy of the Bravata Declaration is attached hereto as **Exhibit 2**. If Rosen Law or the Claims Administrator receive any objections, Plaintiffs will address them in their reply papers in support of final approval, due July 14, 2022.

25.    Pursuant to the Notice, requests for exclusion from the Settlement must be received by July 7, 2022. To date the Claims Administrator, Strategic Claims Services ("SCS"), has received only one request for exclusion, from a Settlement Class Member who purchased just 16 shares of TRR common stock. Bravata Decl. ¶14, Ex. D.

**VI.    NOTICE PROCEDURES**

26.    At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, on May 2, 2022, SCS published the Summary Notice electronically on *GlobeNewswire* and in print in *Investor's Business Daily*. Bravata Decl. ¶11, Ex. C. SCS also published the Long Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website (www.strategicclaims.net/TRR) on March 20, 2022. *Id.* ¶13. SCS also maintained a toll-free phone line for Settlement Class Members to obtain information about the Settlement. *Id.* ¶12.

27.    To date, SCS has mailed 30,775 copies of the Long Notice and Claim Form to potential Settlement Class Members. *Id.* ¶6. In addition, SCS was notified by a nominee that they emailed 8,580 of their clients to notify them of this settlement and provide a direct link to the Notice and Claim Form on the settlement webpage. *Id.* ¶7. Thus, a total of 39,667 potential Settlement Class Members were notified of the Settlement by mailed Long Notice or by emailed link to the Settlement website with the Long Notice and Claim Form. *Id.* ¶8.

28.    In accordance with this District's Procedural Guidance for Class Action Settlements, the Bravata Declaration includes information about the number of undeliverable class notices and claim packets. *Id.* ¶10.

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## IV.    PLAN OF ALLOCATION

29.    Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation preliminarily approved by the Court. Bravata Decl., Ex. A (Long Notice) at 5-8. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages estimate Plaintiffs used to estimate their maximum recoverable damages, and it closely tracks Plaintiffs' theory of the case.

30.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each authorized claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. The formula for determining each Authorized Claimant's Recognized Loss is based on an out-of-pocket measure of damages consistent with Plaintiffs' allegations, and takes into consideration when each Claimant purchased and/or sold TRR common stock, whether their purchases can be traced to the IPO, and the relative strength of the claims alleged—namely that the Exchange Act claims faced a pending motion to dismiss at the time of the Settlement and the Securities Act claims did not. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

31.    If any funds remain after the initial distribution from the Net Settlement Fund to Authorized Claimants, SCS will conduct a second distribution to Authorized Claimants who would receive at least $10.00 from such a re-distribution as long as the second distribution is cost effective. Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund after such distribution(s).

32.    Any residual funds, if any, will be distributed to the Investor Justice and Education Clinic ("IJEC") at Howard University School of Law as an appropriate *cy pres* recipient of such

7

funds. The IJEC provides law students with the opportunity to represent clients in securities cases against securities broker-dealers. The IJEC also provides investor education and outreach programs for underserved investing communities, providing investment protection education, including a basic understanding of financial markets and professionals and financial products, and the rights of investors.

33.     The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## VII.    THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

34.     The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Lead Counsel had thoroughly investigated the claims and consulted with a damages expert. The investigation consisted of an independent review of public documents, SEC filings, and statements regarding and from TRR, news and analyst reports, and the retention of an investigator who interviewed dozens of former TRR employees and third parties.

35.     That investigation resulted in the filing of the FAC, which added new claims under the Exchange Act and significantly expanded the liability and damages at issue in the case. Lead Counsel and Plaintiffs gained a better understanding of the strengths and weaknesses of the case after briefing the TRR Defendants' motion to dismiss the FAC, and the Underwriter Defendants' joinder, and reviewing the Court's decision granting in part and denying in part the motion to dismiss.

36.     After reviewing the Court's order, which granted Plaintiffs leave to amend their complaint, Lead Counsel renewed its investigation, with its investigator speaking to additional former TRR employees and obtaining more detailed allegations from key witnesses. After this additional investigation, Plaintiffs filed the SAC, which maintained the Securities Act claims that survived the motion to dismiss and alleged new facts supporting the Exchange Act allegations in response to the deficiencies identified by the Court in the FAC. Lead Counsel then reviewed the

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

TRR Defendants' motion to dismiss the SAC's Exchange Act claims, filed prior to the Parties' mediation.

37.     Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case (and all its claims) surviving the pleadings stage, at summary judgment, at the class certification stage, and at trial. Plaintiffs faced multiple procedural hurdles and significant merit-based risks involved with this potentially protracted litigation. Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

38.     Although Lead Counsel believe Plaintiffs' claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat the TRR Defendants' pending motion to dismiss. The TRR Defendants challenged whether Plaintiffs had adequately alleged the elements of falsity, scienter, and loss causation with respect to the Exchange Act claims. The risk of dismissal of the Exchange Act claims was particularly significant because the Exchange Act claims represented a majority (roughly 60%) of Plaintiffs' maximum estimated damages.

39.     Plaintiffs faced the risk that the Court may have found that the challenged statements were not actionably false or misleading. Plaintiffs also faced the risk that the Court would find it had not adequately pleaded a strong inference of scienter with sufficient particularity, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Plaintiffs also faced the risk that the Court would find the alleged theory of loss causation was unavailing, or that the Court would limit Plaintiffs' loss causation arguments, and therefore the available damages Plaintiffs could recover.

40.     Plaintiffs also faced the challenge of obtaining class certification and (for the Exchange Act claims) establishing market efficiency. Achieving class certification would have involved a "battle of the experts" and was fraught with uncertainty and risk, as Plaintiffs could not be assured that the fact finder would credit the testimony of Plaintiffs' expert over Defendants' expert. Based on Lead Counsel's experience, a market efficiency expert would likely cost between $70,000 and $100,000. If the Court did not certify the class, it is unlikely that any individual

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

investor or group of investors would have filed individual claims to recover their damages from purchasing TRR common stock as it would be uneconomical for them to bring individual cases.

41.    Plaintiffs also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Plaintiffs' expert calculated that damages were $104.7 million assuming Plaintiffs prevailed on all their claims and each allegation of loss causation. Based on Lead Counsel's experience, retaining an expert to opine and testify as to loss causation and damages would cost at least several hundred thousand dollars.

42.    Discovery would also be costly and time consuming. Plaintiffs would likely need to review thousands of documents and take several depositions of Defendants, TRR employees, and third parties. Further, since the Class Period began in 2019 and depositions would not start until at least 2023, it is possible that evidence could be lost because as time passes memories fade and it would be a challenge to obtain usable deposition or in-person testimony.

43.    Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiffs would still have to enforce the judgment and defeat any applicable appeals.

## VIII.    THE FEE APPLICATION IS FAIR AND REASONABLE

44.    The Long Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund, or $2,750,000 plus interest, and for reimbursement of Lead Counsel's litigation expenses in an amount not to exceed $75,000. Bravata Decl., Ex. A. As set forth in the memorandum in support of Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and awards to Plaintiffs, filed herewith ("Fee Brief"), Plaintiffs' request for 22% of the common fund that counsel's efforts created is less than the benchmark award in the Ninth Circuit, falls in line with similar awards that courts in this circuit have granted, and is merited here.

45.    Lead Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Lead Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement

Class's claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

***Lead Counsel's Work and Expertise***

46. Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation without a successful result, which would only be realized after significant amounts of time, effort and expense had been expended.

47. During the PSLRA-mandated discovery stay, Lead Counsel reviewed TRR's public filings and statements during the alleged Settlement Class Period, as well as other news reports and public information relating to TRR. Lead Counsel also retained an investigator to interview dozens of former TRR employees and third parties. Through its investigation, Lead Counsel determined the scope and strength of the claims Plaintiffs could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions.

48. Lead Counsel also reviewed and opposed the TRR Defendants' motion to dismiss the FAC (and the Underwriter Defendants' joinder). Lead Counsel reviewed the Court's order on the motion to dismiss, and used the Court's opinion to guide its renewed investigation that resulted in the filing of the SAC. Lead Counsel also reviewed the TRR Defendants' motion to dismiss the Exchange Act claims of the SAC.

49. In connection with the mediation, Lead Counsel reviewed and responded to Defendants' mediation statement, and then reviewed Defendants' response to Plaintiffs' mediation statement. As a result of these efforts, Plaintiffs and Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to enter the proposed Settlement.

50. A true and correct copy of the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.") is attached hereto as **Exhibit 3**. In connection with the prosecution of this Action, Rosen Law: (a) conducted an extensive factual investigation, which included the review of publicly available documents about The RealReal, Inc. ("TRR") and the individual defendants; (b) filed the initial complaint; (c) filed a motion for appointment of lead plaintiff and lead counsel; (d) consulted with a private investigator relating to the allegations in this Action; (e) consulted with a damages expert; (f) researched, drafted and filed the Amended

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Class Action Complaint for Violations of the Federal Securities Laws ("FAC"); (g) reviewed and opposed the TRR Defendants' motion to dismiss the FAC and the Underwriter Defendants' joinder; (h) reviewed the Court's opinion and order granting in part and denying in part the motion to dismiss; (i) supervised the investigator in conducting further factual investigation in light of the Court's opinion; (j) drafted and filed the Second Amended Class Action Complaint for Violation of the Federal Securities Laws ("SAC"); (k) reviewed the TRR Defendants' motion to dismiss certain claims in the SAC; (l) participated in a mediation with the Hon. Layn R. Phillips (Ret.), including drafting a detailed mediation statement, responding to Defendants' mediation statement, and reviewing Defendants' response; (m) continued settlement negotiations after the mediation session failed to produce a settlement; (n) negotiated an agreement on the terms of a settlement; (o) reviewed over 1,000 pages of internal documents produced by TRR; (p) conducted two interviews with members of TRR's management team knowledgeable about Plaintiffs' allegations; (q) negotiated the written settlement documents; (r) presented those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement; (s) filed the accompanying motion for final approval of the Settlement; and (t) oversaw the dissemination of Notice to the proposed settlement class and monitored the work of the Claims Administrator

51.     The total amount of time expended by attorneys and professional staff employed by Lead Counsel is 667.12 hours. Rosen Fee Decl. ¶6. This number is derived from the time records Rosen Law regularly maintained. A listing of the professionals at Rosen Law who worked on this matter, the number of hours spent by each such professional broken down by category, and their hourly rates is set forth in detail in the Rosen Fee Decl. ¶5. The total value of the services performed in this case by Rosen Law, based upon our current rates, is $491,522. *Id.* ¶6.

52.     If Lead Counsel's request of 22% of the Settlement as attorneys' fees is granted, Lead Counsel would receive a fee of $2,420,000. This fee award would represent a lodestar multiplier of approximately 4.92. As explained in the Fee Brief, this multiplier is within the range of multipliers that courts in this Circuit have awarded in securities class actions.

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

53.     As reflected in the firm's resume (Rosen Fee Decl., Ex. A), Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases.

54.     Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.

***The Caliber of Opposing Counsel***

55.     Defendants' counsel, King & Spalding LLP and Paul Hastings LLP, vigorously represented their clients. Both firms are highly respected defense firms with substantial securities litigation experience and resources. Defense Counsel are at least as well-informed regarding the case, and their representation of Defendants was no less vigorous than Lead Counsel's representation of the Settlement Class. In the face of this opposition, Plaintiffs and Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that were favorable to the Class.

***The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases***

56.     Lead Counsel undertook this class action on a contingency fee basis. I summarize above and Plaintiffs further describes in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

57.     Those risks are also relevant to an award of attorneys' fees. I describe in detail above and Plaintiffs further describes in the Fee Brief the risks Lead Counsel assumed and the time and expenses they incurred without any payment.

58.     From the outset, Lead Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Lead Counsel has received no compensation during the course of this litigation, pending for over two and a half years, since November 2019, before the Covid-19 pandemic had even reached our shores.

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

59.     The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels. Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. For example, in *Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen Law spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment.

60.     As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Lead Counsels' efforts and the favorable result achieved, I believe that a 22% fee is reasonable and that the Court should approve it.

***The Reaction of the Class to the Requested Fee***

61.     As noted above, nearly 40,000 potential Settlement Class Members received notice of the Settlement. Bravata Decl. ¶8.

62.     The deadline for objections is July 7, 2022. To date, neither Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees. Bravata Decl. ¶15.

63.     The deadline to request exclusion from the Settlement is July 7, 2022. As discussed above, SCS received only one request for exclusion, from the purchaser of just 16 shares. *Id*. ¶14, Ex. D.

***Fee Awards Granted in Similar Cases***

64.     This case closely resembles the settlement in *In re Blue Apron Sec. Litig.*, No. 17-cv-04846-NGG-PK, 2021 WL 1902475 (E.D.N.Y. May 10, 2021), where the court awarded attorneys' fees of 25% of the $13.25 million settlement, representing a 4.02 lodestar multiplier. In *Blue Apron*, the early settlement recovered 7.1% of estimated maximum damages, and was achieved shortly after the plaintiffs' Securities Act claims survived the pleading stage, saving the parties' and the court's resources before significant further litigation had commenced.

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## IX.   THE REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

65.   Lead Counsel have incurred $59,828.16 in litigation expenses in connection with the prosecution of the Action. These expenses were reasonable and necessary for the prosecution of the Action.

66.   From the outset, Lead Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

67.   A listing of the expenses Rosen Law incurred, compiled from the firm's regularly maintained records, are set forth in the Rosen Fee Declaration, ¶7. The expenses incurred pertaining to this case are reflected in Rosen Law's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court. *Id.* ¶8.

68.   Litigation expenses for which Lead Counsel seeks reimbursement included expert consultant fees, private investigator fees, travel expenses, legal research fees, document retrieval fees, mediation fees, and filing fees. Each of these expenses was reasonable and necessary for the successful prosecution of this case.

69.   The largest expense was for the retention of a private investigation firm, costing approximately $24,000. Other substantial costs related to: (i) Lead Counsel's retention of experts in the fields of financial analysis and damages, in the amount of $4,737; and (ii) Plaintiffs' share of the mediation fees charged by mediator Judge Layn R. Phillips, (Ret.) of Phillips ADR, in the amount of $21,280. Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

70.     In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 23rd day of June 2022, at Jenkintown, Pennsylvania.


*/s/Joshua Baker*

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

On June 23, 2022, I electronically filed the foregoing DECLARATION OF JOSHUA BAKER IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 23, 2022.

*/s/ Laurence M. Rosen*

DECLARATION OF JOSHUA BAKER IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES